**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 1
----------------------------------------------------------x

In Re: NEW YORK CITY ASBESTOS LITIGATION,

THE FOLLOWING PLAINTIFFS FROM THE
NOVEMBER 2004 NYCAL *IN EXTREMIS*
CLUSTERS:

INDEX NOS.: 104333/04 *et al.*

**DECISION AND ORDER**

| | |
|---|---|
| ALIYE D. AK | (Index No. 104333/04) |
| JENNIE BAHR | (Index No. 104580/04) |
| HON. JOHN S. LOCKMAN | (Index No. 104156/04) |
| JOHN MAGARINO | (Index No. 102272/04) |
| PATRICIA MALEK | (Index No. 106547/04) |
| JOHN A. O'NEILL | (Index No. 103962/04) |
| RICHARD PEYREK | (Index No. 104155/04) |
| DONALD PORTUES | (Index No. 101675/04) |

Plaintiffs,

-against-

AQUA-CHEM, INC., *et al.*,

Defendants
----------------------------------------------------------x

Hon. Martin Shulman, J.:

The eight captioned matters, part of a November, 2004 *In extremis* cluster of asbestos cases (collectively, "Plaintiffs"), have been referred to this Court for trial. Four out of the eight named Plaintiffs are deceased. Pursuant to CPLR §602(a), Plaintiffs' counsel moves by order to show cause ("OSC") to consolidate these eight personal injury/wrongful death actions for joint trial claiming the existence of common questions of law and fact. Three of the co-defendants; *viz.*, Kentile Floors, Inc. ("Kentile") Keyspan Generation, LLC ("Keyspan") and Burnham Holdings, Inc. ("Burnham"), oppose the OSC, each contending that these cases' dissimilarities

outweigh their commonalities.[1]

### Relevant Factual Background

Plaintiffs are jointly represented by Belluck & Fox, LLP. All eight Plaintiffs were/are afflicted with an asbestos-induced cancer or disease (six contracted mesothelioma, one contracted and died from severe asbestosis and one non-smoker is suffering from asbestosis and lung cancer). Four Plaintiffs died from their disease and the four living plaintiffs are terminally ill. Admittedly, the Plaintiffs were not exposed to identical asbestos containing products and materials ("ACM") at one common work site, but rather were exposed to similar types of ACM at similar work sites (such as ships and ship yards and construction sites [2]). Plaintiffs became exposed to ACM (i.e., gaskets, boilers, pumps, turbines, brakes, floor tiles, roofing materials, joint compounds and other similar products and materials) either as end-users and bystanders or via second hand exposure from family members who worked with these types of ACM or in proximity thereof. While Plaintiffs' discrete exposure periods range from the 1940s to the 1980s, however, it is expected that the proof as to the manner and type of their ACM exposures will overlap for the Plaintiffs.

### Discussion

CPLR §602(a) permits a court to consolidate two or more actions for joint trials if

---

[1] Among these eight actions, Kentile is a defendant in only one case initiated by decedent-plaintiff, Alye D. Ak (Kentile Opp. Aff. at ¶4), Keyspan is a named defendant in only one case initiated by decedent-plaintiff, John Magarino (Keyspan Opp. Aff. at ¶3) and Burnham is a named defendant in the Ak and Magarino actions as well as four other actions (Burnham Opp. Aff. at ¶3).

[2] Two Plaintiffs claim exposure to ACM at residential sites as well.

-2-

they involve common questions of law and fact. "Consolidation is appropriate where it will avoid unnecessary duplication of trials, save unnecessary costs and expense and prevent the injustice which would result from divergent decisions based on the same facts. . ." Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 474 N.Y.S.2d 673 (1st Dept., 1984). Joint trials will also foster judicial economy, quicken the disposition of cases (Matter of City of Rochester v. Levin, 57 A.D.2d 700, 395 N.Y.S.2d 773 [4th Dept., 1977]) and potentially encourage settlements ( Matter of New York City Asbestos Litigation [Brooklyn Naval Shipyard Cases], 188 A.D.2d 214, 225, 593 N.Y.S.2d 43, 50 [1st Dept., 1993]).

With this cluster of eight asbestos actions, Burnham, Keyspan and Kentile urge the court to consider certain suggested factors in determining whether joint trials here are appropriate, to wit: "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs are living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs are represented by the same counsel; and (8) type of cancer alleged." Malcolm v. National Gypsum Co., 995 F.2d 346, 351-352 (2nd Cir., 1993).

Plaintiffs are represented by the same counsel, Bullock & Fox. While four of the plaintiffs have died from asbestos-causing diseases, their deaths will not prejudice the jury against the defendants , vis-a-vis, the living plaintiffs as the latter are all terminally ill and will unfortunately suffer the same fate. Moreover, these three defendants' opposition affirmations to Plaintiffs' consolidation OSC do not probatively contend that any Plaintiff's alleged smoking habit, where applicable, constitutes an additional

-3-

substantial factor in any of the Plaintiffs' cases. Without this significant factor, asbestosis, lung cancer and mesothelioma otherwise share a comparable etiology and pathology. Nor did these affirmations convincingly show any one defendant seriously lagging behind the Case Management Order's discovery schedule so as not to be ready for the March 14, 2005 trial date and with this Court's assistance, any discovery "loose ends" can easily be resolved during this pre-trial period. In addition, the state of the art testimony and other expert testimony will be substantially common to all Plaintiffs. And most of the remaining defendants are named in two or more actions comprising this *in extremis* cluster.

This Court recognizes that the alleged periods and nature of ACM exposure among the eight plaintiffs do not present precise commonalities meeting all of the Malcolm factors; still, there exist sufficient similarities to support a joint trial. Nor are these factors solely controlling as to the court's exercise of discretion whether or not to grant Plaintiffs' OSC for joint trials. Consideration can be had of other commonalities such as the existence of bankrupt, absentee tortfeasors which will arguably overlap in all of these actions and defendants' anticipated game plan to establish these tortfeasors' liability and mitigate their own liability under CPLR Article 16. See, Tancredi v. A.C.&S., Inc. (In re N.Y.City Abestos Litigation), 6 A.D.2d 352, 775 N.Y.S.2d 520 (1st Dept., 2004).

Trying these eight cases at the same time will be difficult, but not insurmountable. The use of suggested jury innovations such as juror note-taking and notebooks, extensive preliminary instructions, attorneys' interim commentary (short summations at

-4-

**EXHIBIT D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 1
————————————————————————x
In Re: NEW YORK CITY ASBESTOS LITIGATION,    :

                                             :

                                             Index Nos.:102034/05 et al.
                                             :
THE FOLLOWING PLAINTIFFS FROM THE
NOVEMBER 2005 NYCAL IN EXTREMIS              :    **Decision and Order**
CLUSTERS
                                             :
PHILIP ALTHOLZ,           Index No: 102034-05    :
MARION CZYS (DEC.)        Index No: 106990-05
CURTIS EBERHARDT, JR.     Index No: 102909-05    :
DAVID HUNTER (DEC.)       Index No: 102027-05
EUGENE LIGHT (DEC.)       Index No: 102032-05    :
WILLIAM MCCARTHY          Index No: 102910-05
SAMMY PAEZ (DEC.)         Index No: 103663-05    :
JOHN QUINN                Index No: 103664-05
NOEL STEININGER           Index No: 102675-05    :

                 Plaintiffs,                 :

              -against-                       :

AMERICAN STANDARD, INC., et al.,             :

                 Defendants.                 :
————————————————————————x

Hon. Martin Shulman:

        The nine (9) captioned matters, part of a November 2005 in extremis cluster of

asbestos cases (collectively, "Plaintiffs") have been referred to this Court for trial. Four (4)

out of the nine (9) Plaintiffs are deceased. Pursuant to CPLR §602(a), Plaintiffs' counsel

moves by Order to Show Cause ("OSC") to consolidate these nine (9) personal

injury/wrongful death actions for joint trial claiming the existence of common questions of

law and fact (*e.g.*, eight out of nine Plaintiffs contracted mesothelioma from asbestos exposure [one still surviving plaintiff, Steininger, has stage IV lung cancer], plaintiffs had similar occupations, times of exposure and types of worksites, all nine Plaintiffs were/are terminally ill, and there are common defendants in some of the cases and/or overlapping bankrupt tortfeasors in all of the cases, etc.).

Approximately forty-three defendants submitted opposition papers[1] contending the following differences which purportedly predominate over the common factors: (1) Plaintiffs did not share a common work site or even a common type of work site; (2) all nine Plaintiffs did not share a common occupation; (3) Plaintiffs' alleged asbestos exposure occurred over a period spanning fifty years (1940's -1990's) but none were exposed during an identically discrete time period; (4) because Steininger was the only plaintiff to contract lung cancer, joining his case with the other eight cases will unduly lengthen the trial as the pathology and etiology of lung cancer and mesothelioma are substantively different; (5) defendants in cases involving decedent Plaintiffs will be prejudiced by evidence of pain and suffering presented from the Living Plaintiffs; (6) there is outstanding discovery which will be impeded if the joint trials were to go forward; and (7) there are no asbestos containing products which Plaintiffs claim exposure to that are common to all nine Plaintiffs and there is no commonality in the manner of Plaintiffs' alleged asbestos exposure.

---

[1] Although the court was apprized of certain alleged differences which are unique to a particular plaintiff, nonetheless, most of Defendants' opposition papers uniformly contain the same arguments and cite to the same case law for the proposition that joint trials of all nine plaintiffs would be inappropriate. In this context, a number of defendants submitted letters adopting the facts and legal arguments of their co-defendants in opposition to plaintiffs' OSC seeking joint trials of all nine plaintiffs.

## Discussion

CPLR §602(a) permits a court to consolidate two or more actions for joint trials if they involve common questions of law or fact. "Consolidation is appropriate where it will avoid unnecessary duplication of trials, save unnecessary costs and expense and prevent the injustice which would result from divergent decisions based on the same facts. . ." Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 474 N.Y.S.2d 673 (1st Dept., 1984). Joint trials will also foster judicial economy, quicken the disposition of cases ( Matter of City of Rochester v. Levin, 57 A.D.2d 700, 395 N.Y.2d 773 [4th Dept., 1977]) and potentially encourage settlements ( Matter of New York City Asbestos Litigation [Brooklyn Naval Shipyard Cases], 188 A.D.2d 214, 225, 593 N.Y.S.2d 43, 50 [1st Dept., 1993]). On the other hand, "where individual issues predominate, concerning particular circumstances applicable to each plaintiff. . ." (Bender v. Underwood, 93 A.D.2d 747, 748, 461 N.Y.S.2d 301, 302 [1st Dept., 1983]) and one or more of t... defendants, then joint trials would be ill-advised.

In determining the merits of Plaintiffs' OSC, this Court must consider certain suggested factors delineated in Malcolm v. National Gypsum Co., 995 F.2d 346, 351-352 (2nd Cir., 1993) such as: "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether Plaintiffs are living or deceased; (6) status of discovery in each case; (7) whether all Plaintiffs are represented by the same counsel; and (8) type of cancer alleged."

A review of the dueling papers revealsl that certain commonalities do exist and certain issues defendants collectively claim predominate over the commonalities will not defeat Plaintiffs' application for joint trials generally. First, Plaintiffs are represented by the same law firm. Second, while four of the Plaintiffs have died from asbestos causing disease, their deaths will not prejudice the jury against the defendants, *vis-a-vis*, the living Plaintiffs as the latter are all terminally ill and will unfortunately suffer the same fate. Third, since eight out of nine Plaintiffs suffered from mesothelioma, there is overwhelming commonality as to this type of disease so that the inclusion of a case involving a plaintiff suffering from lung cancer for joint trials, generally, will not cause undue delay or confuse the jury as these diseases do share a comparable etiology and pathology. Fourth, this Court is not convinced that extensive discovery still remains to either warrant denying the OSC entirely or delaying the trial date. To the extent certain discovery remains extant as to any of the parties, this Court will be responsive to any reasonable request and will tailor the trial sessions to avoid any prejudice or due process concerns. Fifth, the *Malcolm* factors do not compel the Plaintiffs to share a *common* occupation or *common* time of exposure. Thus, this Court finds there are similarities in the manner in which Plaintiffs performed different tasks which exposed them to asbestos containing material or products during overlapping periods of time from the 1940's to the 1990's. Sixth, against this backdrop, the state of the art testimony and other expert testimony in a general way will be substantially common to all Plaintiffs. Finally, consideration can be had of other commonalities such as the existence of bankrupt, absentee tortfeasors which will arguably overlap in all of these actions and defendants' anticipated game plan to establish these tortfeasors' liability and

–4–

exposure from dust brought home from decedent's husband who worked at various

shipments [sic]. . ." (Sapon Opp. Aff. at ¶ 3). On the record before the court at this juncture,

it remains unclear whether a claim of damages for this proven type of exposure remains

viable as a matter of law (*see* Court of Appeals decision in *The Matter of New York City*

*Asbestos Litigation [Holdampf, et al. v. Port Authority, et al.]*, 2005 N.Y. LEXIS 2720;

2005 N.Y. Slip. Op. 7863). It is further noted that among the approximately eighteen

defendants in the *Czys* case (and for that matter among all forty-three remaining

defendants), defendant Trump Management Inc. is  the only premises owner. Therefore,

this Court is persuaded that evidence of liability on the part of manufacturers, contractors

and product distributers could easily "splash" on this defendant and unduly prejudice this

defendant's right to have a fair and impartial trial.

Having reviewed McCarthy's work history on a chart (denominated "Chart A,

Jobsite-Specific Exposure History") attached to plaintiff's responses to certain amended

interrogatories (*e.g.*, Exhibit M to Orenstein Opp. Aff.), it is readily apparent that

McCarthy's alleged exposure occurred as a merchant marine, *inter alia*,  performing

mechanical/engineering functions on ships at sea. Evidently, "McCarthy's work sites are

comprised of commercial ships upon which he sailed as a merchant seaman or boarded

as a maritime consultant. No other plaintiff. . .alleges asbestos exposure as an employee

aboard a commercial ship [at sea]. . ." (Koczko Opp. Aff. at ¶12). Although this issue has

not been fully briefed by the parties, this Court reasonably surmises that the federal

maritime law is implicated. This Court  shares defense counsel's concern that it could

prove to be confusing for the jury to sort out the varying elements of liability and damages

governed by New York's negligence and product liability laws and those under federal maritime law (the latter is argued to be controlling in the *McCarthy* matter). The possibility for such confusion could greatly prejudice the Farrell Lines Incorporated and American President Lines, Ltd., defendant shipowners, and therefore this case should also be severed for a separate trial.

As stated by this Court in prior decisions, trying these six cases at the same time will be difficult, but not insurmountable. The use of suggested jury innovations such as juror note-taking and notebooks, extensive preliminary instructions, attorneys' interim commentary (short summations at different stages during the trial), juror questions, written copies of the special verdict sheets for jury use during summations and a written copy of the court's charge to the deliberating jury should avoid any confusion for the jury in sorting out the respective liabilities and damages attributable to each of the six Plaintiffs.

This constitutes the Decision and Order of this Court. Courtesy copies of same have been furnished to counsel for the parties.

Dated: New York, New York
      January 19, 2006

                                s/_____
                              HON. MARTIN SHULMAN, J.S.C.

**EXHIBIT E**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Robert Lippmann_
                                    _Justice_                              PART _2_

_Joseph Tortorella_          INDEX NO. _100257/02_

                                                MOTION DATE _1/14/05_
                    - v -
                                                MOTION SEQ. NO. _____
_A . C . & S_
                                                MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

FOR THE FOLLOWING REASON(S):

Cross-Motion: ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

Plaintiff's motion to consolidate the lung cancer cases with the meso thelioma cases for trial is granted. There have been no reversals on that ground by the First Department

Dated: _4/14/05_                          RDC
                                                          J.S.C.

                        NOV 14 2005   HON. ROBERT D. LIPPMANN
                                                          J.S.C.

Check one: ☐ FINAL DISPOSITION  ☐ NON-FINAL DISPOSITION

**EXHIBIT F**

1

2    SUPREME COURT OF THE STATE OF NEW YORK

3    COUNTY OF NEW YORK:   TRIAL TERM PART 54

4    - - - - - - - - - - - - - - - - - - - - X

5    CRAIG GILBERT, et al,

6                                Plaintiffs,

7                        - against -

8    ARMSTRONG CONTRACTING & SUPPLY, et al,

9                                Defendants.

10   - - - - - - - - - - - - - - - - - - - - X
     Index Nos. 104699/01, 104981/01, 110435/01, 110741/01

11   August 19, 2002

12                        111 Centre Street
                          New York, New York 10007

13
     B E F O R E:   THE HONORABLE SHIRLEY WERNER KORNREICH,
14                                Justice,

15   A P P E A R A N C E S

16   Messrs. Weitz & Luxenberg
     Attorneys for Plaintiffs
17   By:  James C. Long, Jr., Esq., of Counsel

18   Messrs. Ross & Hardies
     Attorneys for American Standard, Inc.
19   BY:  Yvette Harmon, Esq., of Counsel
          Ted McCullough, Esq. of Counsel

20
     Messrs. O'Melveny & Myers
21   Attorneys for Treadwell Corp. and Courter & Co.
     By:  John L. Altieri, Jr., Esq., of Counsel
22        Thomas G. Carruthers, Esq. Counsel

23   Messrs. Cerussi & Spring
     Attorneys for 3M
24   By:  Michael A. Cerussi, Esq. of Counsel

25                                Evelyn Mysch, C.S.R.
                                  Official Court Reporter

26

71

1                                    Proceedings

2    with this prior to trial and see what he wants to

3    present and make argument and make a decision.

4                    MR. McCULLOUGH:    I think that's fine.

5                    MR. LEONARD:    Can I just -- are we getting

6    all of the documents, medical literature that the

7    plaintiffs' expert is going to rely on, is that the

8    deal?

9                    THE COURT:    I am going to have to make

10   rulings on that.  I would like to make rulings prior to

11   trial.

12                   MR. LEONARD:    We are going to be afforded

13   that?

14                   THE COURT:    What do you mean, afforded that?

15                   MR. LEONARD:    When you make a particular

16   ruling on whether that particular document is

17   admissible or not, are we going to get copies?

18                   THE COURT:    You can get it yourself.  Why

19   should they have to provide it for you?

20                   MR. LEONARD:    Yes.

21                   MR. CERUSSI:  Michael Cerussi.  I represent

22   Minnesota Mining and Manufacturing.

23                   THE COURT:    3M.

24                   MR. CERUSSI:  We were first before you

25   May 20th, was the first time you brought counsel

26   together on this case when you discussed the idea that

72

Proceedings

1

2    you were going to consolidate these four cases.

3            THE COURT:    I remember.

4            MR. CERUSSI:    I raised an objection and

5    asked for the opportunity to --

6            THE COURT:    And there was a decision.

7            MR. CERUSSI:    There was?

8            THE COURT:    I don't know what happened to

9    it.

10           THE CLERK:    I got it back.  They want it on

11   separate gray sheets.

12           THE COURT:    You can take a look at the

13   decision.

14           MR. CERUSSI:    There is a decision?

15           THE COURT:    Yes.  Apparently I put it on one

16   gray sheet instead of many gray sheets and it was

17   rejected by the clerk's office.

18           MR. CERUSSI:    That decision probably adheres

19   to the original impression to consolidate these cases,

20   surprise, surprise.

21           I just wanted to point out, your Honor, that

22   what this gentleman -- what Mr. McCullough raised with

23   respect to state of the art, this presents another

24   wrinkle in the problems with consolidating these cases

25   for trial.

26           I represent a client that's in one case, the

73

Proceedings

1
2   Marzigliano case.  I have exposures that alleges to

3   have occurred 1955 and 1962.  The state of the art

4   documents that the plaintiff relies on, in putting in

5   the state of the art case in these type of cases, has

6   documents, has treatises, scientific studies which have

7   varying dates of authorship.  They did not go back to

8   late 19th century, much of them succeed 1960.  They

9   come into 1970.  You are going to have to make a

10   decision in front of the same jury what documents are

11   relevant or not, what documents may be admitted or are

12   not admitted for notice purposes against the different

13   defendants in this case, depending upon what you admit

14   and when the date of authorship on creation is.

15       THE COURT:   I don't think that's as

16   complicated as that.  There are going to be notebooks

17   in the case.  As I have said earlier, we have to sit

18   down.  That's another thing that has to be done.  Lead

19   counsel and perhaps any other attorney who wants to be

20   there, we are going to create notebooks.  The notebooks

21   will have the four plaintiffs, they will have each of

22   the defendants under each of the plaintiffs.  They will

23   have the product manufactured and we will decide, I

24   assume, we can have a portion that says state of the

25   art, and the jury can take notes.  There will be dates.

26   The jury is going to have to decide.  These are all

74

Proceedings

1

2   factual issues which will be before the jury and take

3   notes on each of these things.  They will keep it

4   straight.

5       MR. CERUSSI:  While I share your optimistic

6   view of the intelligence of the jury as we convene,

7   people think we are separate and distinct.  I would ask

8   you to be sensitive to this fact.  This is another

9   issue that you are going to have to deal with which, in

10  my opinion as counsel, is complicating and prejudicing

11  3M in our defending the one case with one plaintiff

12  over a minimal period of time that there's alleged to

13  be exposure.  I continue to object.  I continue to

14  oppose the consolidated trial of these cases.

15      THE COURT:  I understand, and again, I am

16  not going to do what you asked me to do.  I am not even

17  severing out the counterclaims.  I think it would be a

18  tremendously costly proceeding were we to sever these

19  cases for the -- for the plaintiffs, for the Court, for

20  the whole judicial system.  There are seven defendants

21  that appear in every single case.  There are other

22  defendants that appear in two or three cases.  We are

23  talking about mesothelioma, which all plaintiffs and

24  the -- and claim they have, the medicine is the same

25  for all of this.  A lot of the proof is the same.  They

26  are staying together.

75

Proceedings

1    

2    MR. CERUSSI:    With all due respect, and

3    continue to disagree with the decision that you have

4    made in the case.    With all due respect to the judicial

5    system in this county, in this state, in this country,

6    that does not mean that just because there should be

7    multiple trials which do cost money, that does not mean

8    the rights of the individual defendants should be swept

9    away to celebrate judicial economy can me.

10    THE COURT:    I hope I'm not sweeping them

11    away.

12    MR. CERUSSI:    I understand the pressure that

13    you are under.    I believe the First Department law is

14    that these cases should not be consolidated because a

15    sufficient disparity among questions of fact and issues

16    of law are here, but --

17    THE COURT:    I understand what your position,

18    is.    You have an exception.

19    MR. CERUSSI:    I don't need an exception.    I

20    need an order.

21    THE COURT:    You have an order.

22    Unfortunately the order never got filed for procedure

23    reasons.    You can take a copy of the order, look at it

24    and appeal it, as far as I'm concerned.    That is my

25    order, that is my decision, and I believe that the

26    rights of all of the defendants can be protected in

76

Proceedings

1
2    this case and it will be a fair tri--

3        MR. LONG:   Just one ... g that you just

4    touched on.  In the past, ... have been appeals to

5    the first Department ... to consolidation orders

6    and in ... those appeals have ... the tri-l,

7    so I want to le- you know this is a possibility, if any

8    of the defendants appeal and that's something we have

9    to factor in with respect to the trial.

10        THE COURT:   I understand that.  I usually

11    send my opinions out, I almost always do.  In this

12    case, given the amount of defendants, I didn't.

13        MS. HARMON:   Is it possible we can set a

14    date for the Frye hearing because both -- Mr. Long is

15    going to have available some -- his experts and ours, I

16    know it's going to be hard to do some scheduling on

17    that.

18        THE COURT:   I would like to set dates for

19    the Frye hearing, the issue of the relevant articles,

20    you know which articles are relevant and which aren't.

21    Both of those we need dates on.  And we are going to be

22    doing EBTs during this period as well.

23        MR. LONG:   Not for the Frye.  We have to

24    finish Dr. Bolster's examination.  I don't know if

25    Greenhagen(ph.) --

26        MR. McCULLOUGH:   It doesn't apply.

93

1                          Proceedings

2      remaining defendants' list that are no longer

3      defendants in this case.  Dana, Certainty and I wanted

4      them removed before they get into any --

5                THE COURT:    What happened?

6                MR. ROBERTS:    They have been settled out of

7      the case months ago.

8                THE COURT:    What about Amchem and Union

9      Carbide.

10               MR. CASIMIR:    We are discussing that.

11

12                    C E R T I F I C A T E

13          I, Evelyn Mysch, C.S.R., an official court

14     reporter of the State of New York, do hereby certify that

15     the foregoing is a true and accurate transcript of my

16     stenographic notes.

17

18     _____
       Evelyn Mysch, C.S.R.,
19     Official Court Reporter.

20

21

22

23

24

25

26

**EXHIBIT G**

1

2  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK:   CIVIL TERM: PART 54
3  - - - - - - - - - - - - - - - - - - - - - X
   NEW YORK CITY ASBESTOS LITIGATION
4  IN RE:

5  ALEX RENOW, RONALD SPINELLI, FRANK CAMPA,
   JOHN N. KEARNS, MARVIN ZATZ, JOHN SMITH
6
                         Plaintiffs,
7
   - - - - - - - - - - - - - - - - - - - - - X
8
                         111 Centre Street
9                        New York, New York
                         July 8, 2004
10
   B E F O R E :
11
           HON. SHIRLEY WERNER KORNREICH, Justice
12
   A P P E A R A N C E S
13
           WEITZ & LUXENBERG
14         Appearing on Behalf of the Plaintiffs
           180 Madison Avenue
15         New York, New York
           BY: JERRY KRISTAL, ESQ.
16
           SPEZIALI, GREENWALD & HAWKINS
17         Appearing on Behalf of General Electric
           1081 Winslow Road, Box 1086
18         New York, New York 08094
           BY: DAVID SPEZIALI, ESQ.
19
           SEDGWICK, DETERT, MORAN & ARNOLD
20         Appearing on Behalf of General Electric
           Three Gateway Center 12th Floor
21         Newark, New Jersey 07102
           BY: MICHAEL A. TANENBAUM, ESQ.
22
           MAIMONE & ASSOCIATES, PLLC
23         Appearing on Behalf of Mack Trucks, Incorporated
           170 Old Country Road
24         Mineola, New York 11501
           BY: THOMAS J. MAIMONE, ESQ.
25

26

           Adam H. Alweis - Senior Court Reporter

2

2  APPEARANCES (Continued):

3          O'MELVENY & MYERS, LLP
           Appearing on Behalf of Treadwell Corporation
4          Times Square Tower, 7 Times Square
           New York, New York 10036
5          BY: THOMAS G. CARRUTHERS, ESQ.
               MATTHEW G. DINEEN, ESQ.
6
           GREENBERG TRAURIG, LLP
7          Appearing on Behalf of Robert A. Keabey Company
           885 Third Avenue
8          New York, New York 10022
           BY: LORING I. FENTON, ESQ.
9
           BIVONA & COHEN, P.C.
10         Appearing on Behalf of O'Connor Construction,
           Incorporated
11         Wall Street Plaza
           New York, New York 10005
12         BY: ANDREW SAPON, ESQ.

13         CULLEN, DYKMAN, BLEAKLEY & PLATT, LLP
           Appearing on Behalf of Goulds Keyspan
14         177 Montague Street
           Brooklyn, New York 11201
15         BY: RAGHU N. BANDLAMUDI, ESQ.
               JOHN BURBADGE, ESQ.
16
           MARSHALL, CONWAY & WRIGHT, P.C.
17         Appearing on Behalf of Slant/Fin Coporation
           116 John Street
18         New York, New York 10038
           BY: NORMAN J. GOLUB, ESQ.
19
           AARONSON, RAPPAPORT, FEINSTEIN & DEUTSCH, LLP
20         775 Third Avenue
           New York, New York 10017
21         BY: SUSAN ETRA, ESQ.

22         BARRY, McTIERNAN & MOORE
           2 Rector Street
23         New York, New York 10006
           BY: SUZANNE M. HALBARDIER, ESQ.

24

25                      Adam H. Alweis
                        Senior Court Reporter
26

        Adam H. Alweis - Senior Court Reporter

15

1                    Proceedings

2          MS. ETRA:  Just -- I'm sorry, just when would

3    you like the Frey motion made?

4          THE COURT:  The in limine motion, you can do

5    it by, I guess, by the 19th.

6          MS. ETRA:  Can we have a separate date for

7    the Frey motion?  It is not necessarily a standard

8    motion in this case.

9          THE COURT:  It isn't?

10         MS. ETRA:  Frey motion.

11         MR. KRISTAL:  Your Honor, may we have a clue

12   as to what it involves?

13         MS. ETRA:  I don't profess to know all of the

14   legal applications.  It has to do with a claim that the

15   lung cancer, anticipated testimony of your experts with

16   respect to the causes of this patients' lung cancer is

17   not supported by the medical literature.

18             I also want to note for the record, Your

19   Honor, that prior to the time that our firm got

20   involved with the defense of these defendants,

21   apparently, these cases were consolidated, the Smith

22   and the Kearns case.

23         THE COURT:  Yes.

24         MS. ETRA:  I think it is important, on the

25   record, on behalf of my clients, to document that, in

26   fact, we don't believe this is a proper consolidation

              Adam H. Alweis - Senior Court Reporter

16

1        Proceedings

2    at all because the issues are completely different wit

3    respect to medical issues in the case.

4           THE COURT:  The original Kearns and Smith

5    case were supposed to be tried with nine other cases.

6    I decided to, at least, separate those two out because

7    they were lung cancer cases rather than meso cases.

8           So, originally, they were in the same cluste:

9    as the meso cases, and the decision was made that they

10   be tried separately over protest.

11          And that decision stands, and you have an

12   exception.

13          MS. ETRA:  I just need a date for the Frey

14   motion.

15          THE COURT:  If anything, it is not the same.

16   It's not going to be later, because then we are going

17   to need to op for those.  The rest of the in limine

18   motion, I don't care if the op gets served on the 21st

19   A couple of days probably would be sufficient.  I

20   assume for the op, for most of the in limine motions,

21   the Frey is going to require more time.

22          MR. KRISTAL:  Motions in limine, other than

23   Frey, are supposed to be served on July 19th?

24          THE COURT:  Right, by noon.

25          MR. KRISTAL:  If they are motions that have

26   been made before, two days is not difficult, but I have

Adam H. Alweis - Senior Court Reporter

25

1            Proceedings

2      tried to continue Mr. Spinelli's deposition on the 6th

3      and 7th.  Mr. Long informed us as -- that as a result

4      of his reaction to his latest chemo., that he would not

5      be available in the week of July 26th, at the earliest.

6      We don't know where it is going to lead.

7              THE COURT:  Let me ask you this.  As a result

8      of these boxes of materials and these suppliers, are

9      you thinking of third-partying in anybody?

10             MR. FENTON:  No.  We are thinking of, you

11     know, proceeding under the Tangresti decision and

12     putting these folks on the verdict sheet and allocating

13     them -- to them.

14             MR. KRISTAL:  So, we are talking first week

15     of September.

16             THE COURT:  Let me ask you this.  Are any --

17     are the other three alive still, the other three

18     mesothelioma people?

19             MR. TANENBAUM:  No, Your Honor.

20             MR. KRISTAL:  No, Your Honor.  They passed

21     away.

22             THE COURT:  So, Spinelli is still around,

23     only one still around?

24             MR. KRISTAL:  From what I'm hearing and from

25     my conversation with Mr. Long, I think we need to

26     try -- we would suggest trying the three other mesos

            Adam H. Alweis - Senior Court Reporter

26

Proceedings

1

2    sooner than Spinelli.

3            MR. FENTON:  Your Honor, in that regard,

4    separate and apart from the logistics and the

5    discovery, you had recognized earlier in the motion to

6    consolidate that Spinelli was different.  It was a

7    power house case.

8            THE COURT:  I understand all of that.  I just

9    hate to separate it out.  But, you know what, they have

10   to go.  So -- and it doesn't sound like Spinelli is

11   going to be ready by September.  It really doesn't.

12   The other three, when can we try them, if we were going

13   to try them in September?

14           MR. KRISTAL:  Well, we currently have the

15   Joseph Roth case pending in front of Justice Evans,

16   where G.E. is the remaining Defendant.  Justice Evans

17   gave us a trial date of September 7th.  She had been

18   under the impression when she set the trial date,

19   either the week of August 23rd or the week of August

20   30th, or perhaps both, there were not going to be any

21   jurors because the convention was in town.  We are

22   trying to find out if that's correct and which week, if

23   either one, if that's correct for.  If jurors are

24   available, parties would like to go back to Justice

25   Evans to move the trial forward.

26           THE COURT:  Well, that is only going to be a

             Adam H. Alweis - Senior Court Reporter

27

```
 1                      Proceedings
 2       one Defendant -- one Plaintiff case, am I correct?
 3                 MR. KRISTAL:  That's correct.
 4                 MR. TANENBAUM:  Yes, Your Honor.
 5                 THE COURT:  It should be a little shorter as
 6       a result.
 7                 MR. KRISTAL:  Two weeks.
 8                 MR. SPEZIALI:  Two weeks.  It will go quick.
 9                 MR. KRISTAL:  Right.  If we were going to
10       keep the September 7th date with Justice Evans,
11       sometime the last week in September, perhaps September
12       27th or 28th.
13                 THE COURT:  I'm looking.  If you do the
14       September 7th date, you'll be finished with the trial
15       by the 23rd, 24th, something like that?
16                 MR. TANENBAUM:  Yes, Your Honor.
17                 MR. KRISTAL:  Assuming we get a jury that
18       first week and open that first week, that is probably
19       correct.
20                 THE COURT:  Why not?
21                 MR. KRISTAL:  I'm just saying if -- we should
22       be done.
23                 THE COURT:  How about putting the case down
24       for jury selection?
25                 MR. KRISTAL:  For jury selection?
26                 THE COURT:  To select these three cases.
              Adam H. Alweis - Senior Court Reporter
```

28

1                          Proceedings

2              MR. BANDLAMUDI:  Was that September 27th?

3         THE COURT:  September 27th.

4              MR. BANDLAMUDI:  We have a group of cases.

5         THE COURT:  You are?

6              MR. BANDLAMUDI:  Raghu Bandlamudi.  We have

7    cases before Judge York that we are supposed to start

8    trial on, September the 9th.  That is a firm trial

9    date.

10             THE COURT:  How long do you think that case

11   is going to go?

12             MR. BANDLAMUDI:  There are eight cases in

13   that group.  Probably a couple of weeks, not a month.

14             THE COURT:  You're starting September 9th?

15             MR. BANDLAMUDI:  9th, Your Honor.

16             THE COURT:  That is jury selection or the

17   trial itself?

18             MR. BANDLAMUDI:  That is jury selection.

19             THE COURT:  You know what, let's put it down

20   for October 11th.  October 11th.  And, perhaps, if

21   Spinelli is ready, we'll go forward with Spinelli as

22   well.  We'll do all four.  And let's try to get

23   Spinelli ready by that date.

24             So, it is October 11th for the meso cases,

25   and I'd like an update on all of the remaining

26   Defendants.

             Adam H. Alweis - Senior Court Reporter

29

1                          Proceedings

2              MR. KRISTAL:  I hope to have -- I will have

3    that to the Court tomorrow.

4              THE COURT:  Tomorrow or Monday, it doesn't

5    make a difference.

6              MR. TANENBAUM:  Thank you, Your Honor.

7              MR. SPEZIALI:  Thank you.

8              THE COURT:  One question, in any motions,

9    that doesn't only go for the Defendants, it went for

10   the Plaintiffs as well in the lung cancer cases?

11             MR. KRISTAL:  Yes.

12             THE COURT:  Thank you.

13                    * * * * * * * * *

14             IT IS HEREBY CERTIFIED that the

15   foregoing is a true and correct transcript of the

16   proceedings had therein.

17

18

19                    Adam H. Alweis

20                  Senior Court Reporter

21

22

23

24

25

26

              Adam H. Alweis - Senior Court Reporter

**EXHIBIT H**

JIM LONG

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **SHIRLEY WERNER KORNREICH**
Justice **J.S.C.**                                    PART 14

Travis D'Amore

INDEX NO. 107873/04

-v-                                MOTION DATE _____

A.C. & S.                          MOTION SEQ. NO. 025

MOTION CAL. NO. _____

The following papers, numbered 1 to 12a were read on this motion to/for a joint trial.

|                                                                | PAPERS NUMBERED |
|----------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits … | 1               |
| Answering Affidavits — Exhibits _____ | 2,3,4,5,6,7,8,9,10, |
| Replying Affidavits _____ |                 |

Cross-Motion: ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion to try four the following case for trial, is granted: D'Amore (Index 107873/04), DeNave (Index # 104217/04), Klopsis (Index # 107416/04), Sammaritano (Index # 105382/04), Sauvan (Ind # 104053/04) and Thompson (Index # 107791/04). These cases all involve the same disease- mesotheleum - caused by exposure to asbestos. The plaintiffs all are living and in extremis, and discovery in each case is nearly complete. Moreover, the cases involve overlapping periods of exposure to overlapping products and during overlapping time periods. Nearly of the same experts will be called to testify as to the med.

Dated: _____              _____
                                                 J.S.C.

Check one: ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION
Check if appropriate: ☐ DO NOT POST   ☐ REFERENCE

FOR THE FOLLOWING REASON(S):

and state-of-the art common questions of law and fact, as well as judicial economy, militate in favor of a joint trial.

The Court is aware that the *Klopsis* case also involves the issue of plaintiff's renal cancer. Nonetheless, the Court believes common questions of law and fact outweigh the need for a separate trial in *Klopsis*.

This shall constitute the decision and order of the Court.

SHIRLEY WERNER KORNREICH
J.S.C.

6/22/05

Trial July 18/05

**EXHIBIT I**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:                          IAS PART 2

------------------------------------------------x
In Re: New York City Asbestos Litigation
------------------------------------------------x
RICHARD BRETTON, ET AL,

                Plaintiffs,        Index No. 111000/02

      -against-

                                 DECISION AND ORDER
AC & S, INC., ET AL,

                Defendants.
------------------------------------------------x
LOUIS B. YORK, J.:

    Before this Court are personal injury cases which have been assigned to the undersigned justice for trial. They are part of the November 2002 and May 2003 accelerated (In Extremis) Trial Clusters assigned to this Court. All plaintiffs suffer from the disease mesothelioma, which has been caused by asbestos exposure. Defendants move to sever on the ground that these cases have not been appropri···ly joined for ····, and that individual questions predominate over common questions of law and fact. For the reasons discussed *infra*, the Court orders joint trials for all defendants, except Cummings and Gubitosi.

    While the other defendants' exposure overlapped in the 1960's, Cummings and Gubitosi's exposures occurred substantially later than that. They are being severed not because of prejudice to them, but rather the potential prejudice to the other defendants. The state of the art on the later dates they were exposed, tends to be more advanced than that of the other defendants' earlier exposures.

    Defendants claim that the Court jumped the gun, first by ordering joint trials on its own motion and then allowing plaintiff to make an oral motion. Defendants claim that this

violates Section 602(a) of the CPLR. The Court disagrees. CPLR 602(a) is vague. Unlike other sections of the CPLR, such as for example a 3211 motion to dismiss which states that "A party may move for ..." or a 3212 motion for summary judgment, which states the same, 602(a) merely states that "the Court upon motion ...". While the weight of authority seems to be that this section requires a motion by one of the parties, it is understandable that the Court wishing to move this case speedily along would grant this relief on its own motion. Nevertheless, the plaintiff moved orally for joint trials and the defendants did not cite any statutory or case law, that it was an improvident exercise of the Court's discretion to allow the motion to be made this way. Moreover, there was no due process violation since the Court allowed the defendants to submit opposition in writing, which they now have done.

The memorandum of one of the defendants stating that I had refused to allow them to put their opposition on the record is a misstatement of what occurred an.' also a misuse of the memorandum of law. Facts should be asserted in a sworn affidavit. To set the record straight, I was asked by one of the defendants, after we had been discussing the case for some time, for a court reporter. I stated that since I was about to begin conferencing a jury trial that was to begin that day, there was not enough time to call for a court reporter, but I explained that a court reporter would be made available at the next meeting on October 23rd and he could put all of his objections on the record then. A perusal of the record for that meeting will show he did. I did not only say that the only thing in common was that all the plaintiffs suffered from mesothelioma from asbestos, I also emphasized state of the art

2

evidence - what was known about this common disease and when - would be common to all and the medical testimony regarding asbestos exposure and mesothelioma was also common. Moreover, the evidence involved in these cases is extensive and, requiring their repetition in the incredibly large volume of cases before this Court would mean either these cases could not be tried or the myriad other non-related actions could not be tried. As the Second Circuit Court of Appeals has stated:

> It requires little imagination to recognize that without consolidation, the Courts are simply incapable of handling litigation of such volume. The waste of time and expense involved in empaneling separate juries to decide the same sorts of questions over and over again is staggering. This is all the more true when one recognizes that each successive jury must be educated by expert witnesses to understand the toxicity of asbestos fibers, the etiology of asbestos-induced diseases, the state of the art regarding the industry's knowledge of these dangers through the years, and the economic issues involving loss of services and future income that recur so frequently in these cases.

(Consorti v Armstrong World Industries, 72F3rd 1003, 1006 (2d Cir. 1995) vacated on other grounds 518US.1031[1996])

The defendants argue that Seventh Judicial District Asbestos Litigation, 191 Misc2d 625, 744 NYS2d 304 (Supreme Ct. Monroe Cty. 2002) requires that the cases where plaintiffs are still alive should be separated from plaintiffs who have died, the rational being that the sympathy for the deceased plaintiffs will spill over to the plaintiffs who have not died. But in Seventh Judicial District, the cases consisted of plaintiffs with mesothelioma, a fatal disease and other plaintiffs with a non-fatal disease. In that circumstance, it is

3

understood that there might be undue prejudice to the defendants in cases with plaintiffs who had non-fatal diseases from asbestos. But here, all of the plaintiffs have the fatal disease of mesothelioma, thus minimizing any prejudice to defendants who are litigating against still alive plaintiffs.

The branch of the motions to sever those deceased plaintiffs for whom representatives of the estate has not been appointed appears to be moot. However, in the event that no such administrator is appointed by the time of trial, the Court will entertain a motion to sever.

This case was sent here for trial. Before that, discovery was to be completed before Justice Freedman and the special master. All discovery issues should be sent to them. The Court understands that the Case Management Order contemplates that discovery should be complete when the matter is assigned to a justice for trial. The discovery issues raised in Henry is particularly troublesome. The issue raised there is that discovery has to be completed by cumbersome diplomatic procedures, which will take at least a year. Yet, there is not a single sentence indicating that any such procedures have yet been initiated. This case lay dormant for over two months when it was assigned to another justice before being re-assigned to this Court, over a month ago. The Court wonders what this defendant was doing in those three months, knowing that these were expedited cases. The Court also wonders what working in South American sugar fields has anything to do with Henry's illness. Other than the generalized statement that this should justify severance, the defendants offer no explanation.

The Court is informed that the three defendants for whom a federal court stay was issued have settled with plaintiffs. Therefore, the request that the Torwald case should be severed and only tried after the stay is lifted is now denied as moot.

As to the other defendants who claim that their insurance companies are in a various stages of liquidation, the Court will honor any stay that has been granted when adequate proof is presented to it. So far, no such evidence has been presented.

The similarity of issues and facts in the remaining six cases which are that all the plaintiffs are represented by the same parties, their exposures overlap, the state of the art applies to all of them and most of these defendants are litigants in more than one case, and the expert testimony as to how exposure to asbestos causes mesothelioma and the details of the disease applies to all of them. Moreover, joint trials will alleviate the crushing caseloads that these mass torts impose upon the courts.

While trying multiple cases at the same time is a formidable challenge, it has been successfully met by this Court and others. Note taking in trial notebooks in which plaintiffs in each case are separated out from each other, together with curative and clarifying instructions by the Court, should remove defendants' objections that joint trials are too confusing for the jury.

The Court finds it disappointing that none of the submissions on severance takes account of the need for speedy adjudication of those cases involving dying plaintiffs or the

great inconvenience to the litigants and the courts that will result in trying these and other mass tort cases one-by-one.

This constitutes the Decision and Order of the Court.

Dated:  10/29/03

Louis B. York, J.S.C.