**EXHIBIT J**

## SUMMARY STATEMENT ON APPLICATION FOR EXPEDITED SERVICE AND/OR INTERIM RELIEF
### (SUBMITTED BY MOVING PARTY)

Date ___November 10, 2003___

Title of Matter  Richard L. Bretton, et al., Plaintiffs-Respondents v. A.C.&S., et al., Defendants-Appellants

Index/Indict # ___111600/02___

Appeal by _Defendants_ from ⟨order⟩ judgment decree of ⟨Supreme⟩ Surrogate's Family

County  New York

Court entered on _11/7_, 2003

Name of Judge  ___Hon. Louis B. York___

Notice of Appeal filed on  _November 7_, 2003

If from administrative determination, state agency: _____

Nature of action or proceeding  New York County Asbestos Litigation; six asbestos bodily injury and wrongful death actions joined for trial commencing November 13, 2003

Provisions of ⟨order⟩ judgment decree appealed from  October 17, 2003 oral Order (reflected and reiterated in written October 29, 2003 Decision and Order) sua sponte directing joint trials of these six actions (and two others), and October 29, 2003 written Decision and Order reiterating oral order of October 17 2003 and refusing to sever these six actions from joint trial scheduled for 11/

This application by ⟨appellant⟩ respondent is for impending 11/13/03 joint trial of these action pending Pursuant to CPLR 5519(c), for [1] an interim stay of t the hearing and determination of this motion; (2) an expedited briefing and hearing schedule on Defendants-Respondents' appeal of the aforementioned Orders directing a joint trial of these six actions; and (3) a pendent y of the November 13, 2003 joint trial pending the determination of this appeal

If applying for a stay, state reason why requested  Joint trial scheduled to begin 11/13/03; in absence of stay pending determination of appeal from orders joining cases for trial, Defendants-Respondents will be prejudiced and relief sought on appeal (reversal of orders directing joint trial) may be rendered academic

Has any undertaking been posted  No _____  If "yes", state amount and type _____

_____

_____

Has application been made to court below for this relief  No

If yes, state Disposition _____

Has there been any prior application herein in this court  No

If "yes", state dates and nature _____

_____

_____

Has adversary been advised _____

Attorney for Movant

See Rider A, attached.

:me _____

:dress _____

_____

_____

. No. _____

:pearing by   See Rider A, attached

_____

_____

_____

_____

Attorney   Opposition

Weitz & Luxenberg, P.C.

Attorneys for Plaintffs

180 Maiden Lane

New York, New York 10058

(212) 552-5500

_____

_____

_____

_____

_____

(Do not write below this line)

:POSITION

*Application for interim*
*stay is denied*

_____

_____

_____

_____

_____

_____

_____

A.M.M        11/10/03
Justice        Date

:n Date  11/19/03  Opposition  11/17  Reply  11/16

:DITE _____  PHONE ATTORNEYS _____  DECISION BY

PAPERS TO BE SERVED PERSONALLY.

Law Assistant

**EXHIBIT K**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:              IAS PART 2
-------------------------------------------------------------------x
In Re: New York City Asbestos Litigation
This Decision Relates To:

| | Index Nos. |
|---|---|
| **EDWIN DE JESUS** | 116431/04 |
| **ALFRED D'ULISSE** | 113838/04 |
| **WILLIAM EICHNER** | 106095/04 |
| **CHARLES HAUCK** | 112713/04 |
| **JESSE LEVINE** | 113396/04 |
| **JAMES NORMANLY** | 113839/04 |
| **DONALD PIEPER** | 116451/04 |
| **GERARD ROSATO** | 111735/04 |
| **DESMOND SMYTH** | 104860/03 |

                              Plaintiffs,

              -against-

A.C.& S., ET AL,

                                        Defendants.
-------------------------------------------------------------------x

LOUIS B. YORK, J.:

<u>Introduction</u>

      These actions were assigned to me for trial. They are part of the November 2004 and

May 2005 accelerated trial cluster of asbestos cases.

      Plaintiffs originally moved for joint trials in all of these cases. Subsequently,

plaintiffs' counsel informed the Court by letter that he did not wish to proceed at this time

with the Gerard Rosato matter. Accordingly, the Court will not join Rosato with the other

cases for joint trial.

      Plaintiffs move for joint trials in the remaining eight cases on the ground that there

are common questions of law and fact. The defendants oppose, arguing that individual

differences predominate over common ones. For the reasons that follow, the Court joins the

following actions. Joint trials are granted for DeJesus, D'Ulisse, Normanly, Hauck, and Smyth. Thus, out of the original nine cases, five are joined for trial.

## Discovery

Some of the defendants have complained about discovery not having been completed. Under the Court's Case Management Order, all discovery, and in fact, all pre-trial motions are to be brought before the Special Master and Justice Freedman, who coordinates the trials of these matters before the undersigned judges in the asbestos group.

There are now approximately 30,000 asbestos cases that are assigned to this court. Every six months in May and November 200 of them are put on the extremis docket to be tried as quickly as possible with a schedule set for the following six months. The extremis docket consists of the most dire cases - those where the plaintiffs have died or suffer from an asbestos disease that is fatal. These cases came out of the November, 2004 and May, 2005 extremis docket; meaning that when they came to me, all discovery and other pretrial activities were to be concluded. My job was to try the case and deal with trial issues such as scheduling trial, deciding motions in limine and dealing with trial matters. Since discovery is not one of them, I will not entertain any discovery matters. I remind the litigants that it is now nearly approximately two months since these cases have been assigned to me. One would expect that given the exigency of the situations, whatever discovery was left would have been concluded by now and the parties would be preparing for trial, not dealing with discovery. Only if Justice Freedman or Ms. Pacheco, the Special Master, were inclined to

2

ask the Court for a delay, however, to complete discovery, would I give an adjournment that serious consideration.

## Facts

The remaining eight plaintiffs were exposed at different sites. They are all represented by Weitz & Luxemberg. They all suffer from the same fatal disease - mesothelioma - derived from asbestos exposure. Many of their exposures overlap while some don't. DeJesus, D'Ulisse, Hauck, and Smyth shared exposure in the '60's. Only Levine and Normanly were not exposed in the '60's. Levine was exposed in the early '40's to middle '40's. Normanly was exposed in the late '80's. DeJesus, Smyth and Normanly were exposed in the '70's. DeJesus, Hauck and Smyth are dead. D'Ulisse and Levine are alive.

## Discussion

The Eichner and Pieper matters have not been joined because they involve exposure at sea. That brings into play the maritime law with its own rules of liability, damages and evidence. In a joint trial, two completely independent sets of such standards would be too cumbersome for the jury to cope with. Levine is not being joined because his early exposure in the 1940's was not shared by any other plaintiffs. The state-of-the-art evidence reaching all the way to the 1980's could result in prejudice to Levine as the jury could fail to disassociate all of the knowledge that was accumulated from the '40's to the '80's.

3

CPLR 602 provides that whenever there are common questions of law and fact in actions before the Court, it may order joint trials in order to avoid "unnessary costs or delay." In mass torts cases such as this, the Court of Appeals has stated:

> It requires little imagination to recognize that without consolidation, the Courts are simply incapable of handling litigation of such volume. The waste of time and expense involved in empaneling separate juries to decide the same sorts of questions over and over again is staggering. This is all the more true when one recognizes that each successive jury must be educated by expert witnesses to understand the toxicity of asbestos fibers, the etiology of asbestos - induced diseases, the state-of-the-art regarding the industry's knowledge of these dangers through the years, and the economic issues involving loss of services and future income that recur so frequently in these cases.

*Consorti v Armstrong World Industries*, 72 F3rd 1003, 1006 (2d Cir 1995), vacated on other grounds 518 US 1031 (1996) Some of the defendants have argued that cases where plaintiffs have died should not be combined with trials where plaintiffs are still alive because of the prejudice that results from combining deceased plaintiffs with ones still living. First, the Court can see no reason that the plaintiffs are prejudiced because some of them have already died. Here, all the plaintiffs have mesothelioma, thereby minimizing any potential prejudice since all the plaintiffs' symptoms are similar and the same fate - death, awaits the plaintiffs still living. In *Malcolm v National Gypsum*, 995 F2d 346, 161 USLW 2735, a case cited by both plaintiffs and defendants, the magnitude of 48 cases that were tried together resulted in reversal. Here, only a mere five cases are being tried together.

4

Workable guidelines to adjudicate these types of cases with no factor being more important than any others was set forth in *Malcolm* at 995 F2d 350-351. They were (1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease, whether plaintiffs are living or deceased; (5) status of discovery; (6) whether all plaintiffs were represented by the same counsel and; (7) type of cancer.

The Court has already shown that the disease and type of cancer are the same, and all plaintiffs were represented by the same attorneys. Whether plaintiffs are living or dead is not a factor here, as it may have been in *Malcolm*, since here, unlike *Malcolm*, all the plaintiffs suffered from the same fate and discovery is substantially concluded for most and should have been concluded by the others.

Much time can be saved by all sides and the Court by trying these cases together. For instance, the experts needed to describe the state-of-the-art during plaintiffs' exposures can be greatly diminished by having that testimony accomplished in one trial than by having it repeated over and over in multiple trials. The same is true for pathology and etiology testimony as well as savings in the use of economists and other experts.

The crushing burden that would be placed on the Court by trying these cases one at a time should be avoided where possible. While trying multiple cases at the same time is a formidable challenge, it has been met by this Court and others. Note taking in trial notebooks in which plaintiffs in each case are separated out from each other, together with curative and clarifying instructions by the Court should remove defendant's objections that joint trials are

too confusing for the jury. It may not be easy, but it can be done.

The Court has considered other arguments raised by defendants and finds them to be without merit.

This constitutes the Order and Decision of the Court.

Dated: January 9, 2006

_____

Louis B. York, J.S.C.

6

**EXHIBIT L**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 44

------------------------------------------------- X

THOMAS CULLEN

                      Plaintiff,                Index No.:    120249/2003

         - against-

A. O. SMITH WATER PRODUCTS CO., et al.,
                    Defendants.

------------------------------------------------- X

ANTHONY GRGAS and VEDRANA GRGAS
                     Plaintiffs,           Index No.:    111828/2003

         - against-

A. O. SMITH WATER PRODUCTS CO., et al,
                    Defendants.

------------------------------------------------- X

THOMAS M. KERRANE and JULIA KERRANE
                     Plaintiffs,           Index No.:    117548/2003

         - against-

AMCHEM PRODUCTS, INC. N/K/A RHONE
POULENC AG, et al.,
                    Defendants.

------------------------------------------------- X

WILLIAM F. MAMMES and ALEXANDRA
MAMMES
                     Plaintiffs,           Index No.:    116650/2003

         - against-

A. O. SMITH WATER PRODUCTS CO., et al.,
                    Defendants.

------------------------------------------------- X

EDWARD C. MARTIN and BONITA V. MARTIN,
                     Plaintiffs,           Index No.:    100016/1999

                                    - against-

A.C. AND S, INC., et al.,
                    Defendants.

------------------------------------------------- X

      May, 2004 Extremis Group

------------------------------------------------- X

PRESENT: KAREN S. SMITH, J.S.C.:

After oral argument held on January 13, 2005, the court grants plaintiffs' motion for a joint trial solely to the extent of consolidating all of the above actions for joint trial except for the action commenced by plaintiffs Edward C. Martin and Bonita V. Martin (Index No. 100016/99).

Originally, plaintiffs sought an order pursuant to CPLR § 602 for a joint trial in Cullen (Index No. 129249/03), Grgas (Index No. 111828/03), Kerrane (Index No. 117548/03), and Martin (Index No. 100016/99); and a separate trial in Mammes (Index No. 116650/03) and McKie (Index No. 119048/02). Subsequent to serving and filing the instant motion, defendants in the McKie action moved to remove McKie from the extremis group. Justice Helen Freedman granted the motion.

As a result of this ruling, the plaintiffs amended their motion requesting that all of the remaining cases be consolidated for trial. Defendants in all the actions oppose plaintiff's motion, arguing that the facts so differ as to the type and history of exposure for each plaintiff, that to consolidate them would be prejudicial to the defendants. Defendants Daimler/Chrysler, Ford, and General Motors argue that Mammes's claim is unique because it includes "friction exposure" from work on automobile brakes which involves specific evidentiary issues and defenses not applicable to the other remaining plaintiffs who claim exposure only through construction work and asbestos-containing construction materials. Defendants in the Martin action argue that the Martin case should be kept separate as Martin suffers from a different disease, lung cancer and was a heavy smoker for many years prior to his diagnosis, giving rise to causation issues unique to his claim.

The court concludes that the Martin case shall be tried separately but that the Mammes case shall be consolidated for joint trial with the other cases. Mammes's claim is not limited to "friction exposure". It includes substantial exposure through construction work. Moreover, Mammes has the same type of cancer as the other remaining plaintiffs, and is represented by the same counsel, all relevant factors in deciding to consolidate cases of this type for joint trial. (*Malcolm v. National Gypsum*, 995 F2d 346, 350-351 [2nd Cir., 1993]). Curative and clarifying instructions from the court, juror notebooks, and special verdict forms should suffice to prevent confusion among the jurors and prejudice to the defendants. Thus all remaining cases in this cluster except Martin are consolidated for purposes of joint trial.

This constitutes the decision and order of the court.

Dated: January 19, 2005

Karen S. Smith, J.S.C.

**EXHIBIT M**

Westlaw.

188 A.D.2d 214                                                      Page 1

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

H

In the Matter of New York City Asbestos Litigation
(Brooklyn Naval Shipyard
Cases).

Supreme Court, Appellate Division, First
Department, New York

February 9, 1993
### SUMMARY
Cross-appeals from (1) 22 judgments of the Supreme Court (Helen Freedman, J.), variously entered in New York County, on May 21, 1991, May 22, 1991, May 24, 1991, May 28, 1991, June 20, 1991, June 22, 1991, July 26, 1991, and December 11, 1991, comprising all of the judgments in the instant litigation except *Galen, Osher,* and *Silver,* which, after a three-part joint jury trial, awarded damages in favor of each of 22 individual plaintiffs in various amounts; (2) a judgment of the same court, entered May 21, 1991, in *Silver,* which, after the same joint jury trial, held defendants Owens-Illinois and Keene jointly and severally liable to that plaintiff in the amount of $1,673,187; (3) judgments of the same court, entered May 21, 1991 in *Osher* and July 26, 1991 in *Galen,* and (4) judgments of the same court entered May 21, 1991, in *Chierico, Demaria, Lyon, Raia,* and *Sufian,* May 22, 1991 in *Scorzelli,* June 22, 1991 in *Carrano,* and July 26, 1991 in *Ancewicz* and *Montgoris.*

Matter of New York City Asbestos Litig., 151 Misc 2d 1, modified.

### HEADNOTES
Release—Effect on Other Tortfeasors—Offsets Credited to Nonsettling Asbestos Defendants
(1) For purposes of calculating offsets to be credited to nonsettling asbestos defendants under General Obligations Law § 15-108 in a consolidated trial arising out of exposure to asbestos-containing products in which the jury, in a reverse bifurcation format, first rendered a verdict on damages totaling over $73,000,000, the trial court erred in not aggregating the settlements but instead crediting the nonsettling defendants with the greater of the statutory value of each release obtained from the respective plaintiffs or the proportion of fault with respect to each individual settlement, a method that results in undercompensation. The verdict obtained must first be reduced by the amount of the pretrial settlements before calculating the equitable share attributable to those defendants who proceeded to trial. In this case where the jury apportioned fault among all tortfeasors, the "equitable share" attributable to a defendant is the percentage of fault allocated to each defendant (adjusted, where necessary, for the fault attributable to bankrupt defendants). The "aggregation method" should then be used to calculate offsets by adding up the statutory value of all releases obtained from the plaintiffs and then comparing this figure to the equitable share attributable to all settling tortfeasors for the purpose of determining the *215 higher figure to be applied to offset the total verdict for the benefit of the nonsettling defendants. General Obligations Law § 15-108 should be uniformly applied to yield equitable results consonant with the preeminent statutory objective of promoting settlement in tort litigation. Aggregation of settlements furthers such statutory objective by holding the nonsettling defendant fully liable for his proportionate share of the verdict while allowing the other defendants to reach a compromise settlement for less than their proportionate share. The statutory reference to "tortfeasor", in the singular, when determining the credit to be applied, merely represents conformance with the grammatical rule of parallel structure and is not an expression of legislative intent requiring that the setoff for settlements be calculated individually on a defendant-by-defendant basis.

Release—Effect on Other Tortfeasors—Offsets

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214                                                                          Page 2

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

Credited to Nonsettling Asbestos Defendants—Allocation of Shares of Bankrupt Defendants
(2) For purposes of calculating offsets to be credited to nonsettling asbestos defendants under General Obligations Law § 15-108 in a consolidated trial arising out of exposure to asbestos-containing products in which the jury, in a "reverse bifurcation" format, first rendered a verdict on damages totaling over $73,000,000 and then apportioned fault among all potentially liable parties, including certain defendants protected by the bankruptcy statutes, the trial court erred in allocating shares of liability attributed to bankrupt defendants among both settling and nonsettling tortfeasors in proportion to their respective shares of liability. Rather, the share of damages attributable to bankrupt defendants should be allocated only among the nonsettling defendants, who appear on this appeal. General Obligations Law § 15-108 expressly provides that contribution may not be obtained by or from a settling tortfeasor and allocation of a bankrupt party's share among settling defendants places that amount beyond a plaintiff's reach. In addition, those plaintiffs who agreed to accept deferred payment of a portion of the stipulated settlement amount from one defendant may not have the deferred portion of each settlement discounted for the purpose of determining its value as a setoff since the statute unambiguously places the risk of recovery on the settling plaintiff and leaves no room for judicial construction.

Trial—Joint and Separate Trials—"Reverse Bifurcation" Format in Consolidated Asbestos Actions—Liability of Asbestos Defendants
(3) The joint trial of actions against asbestos defendants in the "reverse bifurcation" format in which damages are determined first was appropriate and not an abuse of discretion since the joint trial format has the potential to reduce the cost of litigation, make more economical use of the trial court's time, and speed the disposition of cases as well as to encourage settlements. Plaintiffs are not required to show precise causes of their respective damages and, in 22 of the nonsettled cases, plaintiffs showed facts and conditions from which

defendants' liability may be reasonably inferred. However, since the crucial evidence linking the decedent in one case to the asbestos products of a particular defendant was inadmissible hearsay testimony, the $1,673,187 judgment in this case should be reversed as to such defendant and the complaint dismissed.

Interest—Prejudgment Interest—Wrongful Death
(4) Plaintiffs are not entitled to prejudgment interest on future losses in a consolidated trial against asbestos defendants in which the jury rendered *216 damages totaling over $73,000,000, since prejudgment interest on future losses is no longer available under New York law. In regard to wrongful death actions, the calculation of interest from the date of death based upon the net verdict (as reduced for settlements pursuant to General Obligations Law § 15- 108) is consistent with the language of EPTL 5-4.3 that interest be awarded "upon the principal sum recovered by the plaintiff".

TOTAL CLIENT SERVICE LIBRARY REFERENCES
Am Jur 2d, Damages, § 667; Death, § 537; Release, §§ 37, 41.

Carmody-Wait 2d, Separate and Joint Trials § 52:17; Judgments § 63:86; Actions Against Persons Jointly Liable § 123:53; Action for Wrongful Death § 130:95.

EPTL 5-4.3; General Obligations Law § 15-108.

NY Jur 2d, Compromise, Accord, and Release, § 91; Death, §§309-313.

ANNOTATION REFERENCES
Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release. 6 ALR5th 883.

Recovery of prejudgment interest on wrongful death damages. 96 ALR2d 1104.

Contribution between joint tortfeasors as affected by settlement with one or both by person injured or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

damaged. 8 ALR2d 196.

## APPEARANCES OF COUNSEL

*Steven J. Phillips* of counsel (*Diane Paolicelli, Robert I. Komitor, Alani Golanski, Moshe Maimon* and *Jerry Kristal* with him on the brief), *Levy Phillips & Konigsberg* and *Greitzer & Locks* for plaintiffs-appellants.

*Robert H. Riley* of counsel (*Schiff Hardin & Waite*, attorneys), for Owens-Illinois, Inc., defendant-appellant-respondent.

*Andrew T. Berry* of counsel (*McCarter & English*, attorneys), for Keene Corporation, and *Richard P. O'Leary* of counsel, with him on the brief (*Gordon & Silber*, attorneys), for Manville Corporation Asbestos Disease Compensation Fund, defendants-appellants-respondents.*217

## OPINION OF THE COURT

Rubin, J.

This action involves approximately 600 cases arising out of exposure to asbestos at the Brooklyn Navy Yard. The asbestos was contained in products manufactured and distributed by some 40 named defendants. Trial was conducted utilizing the reverse bifurcation format and proceeded first on the question of damages, resulting in a jury verdict in excess of $73,000,000. A determination was then made as to which products contributed to injuries sustained by the individual plaintiffs and liability apportioned accordingly among the responsible defendants.

(1) The main issue raised by this appeal is the credit to be given to the nonsettling defendants for settlement agreements reached by other tortfeasors pursuant to General Obligations Law § 15-108. The statute provides: "(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury

or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest."

Defendants argue that "the statute speaks in the singular", requiring that the setoff for settlements be calculated individually, that is, on a defendant-by-defendant basis, allocating to each the greater of the dollar amount of the settlement or "the amount of the released tortfeasor's equitable share of the damages" pursuant to CPLR article 14. Thus, defendants argue that the "aggregation method" of calculating offsets, advanced by plaintiffs, is inappropriate and that Supreme Court was entirely correct in refusing to apply it.

General Obligations Law § 15-108 is elegant in its conciseness of expression, reducing a potentially complex mathematical calculation to a few words. The shortcoming in the statute is that it expressly addresses the situation where a release "is given to one of two or more persons" (emphasis added) who are potentially liable to the plaintiff. It does not address the *218 situation where the plaintiff settles with two or more tortfeasors (*Williams v Niske*, 181 AD2d 307, 312, lv granted 186 AD2d 1099). In view of the statutory omission, the courts are left to fashion an interpretation which is consistent with the object of the statute (McKinney's Cons Laws of NY, Book 1, Statutes § 96), while avoiding an absurd result (McKinney's Cons Law of NY, Book 1, Statutes § 145). The particular outcome which the cases have attempted to avoid is the reduction of a nonsettling defendant's liability to an amount which represents far less than his proportionate share of fault as determined by the trier of fact, in some cases "virtually exonerating the nonsettling defendant" (*Williams v Niske, supra*, at 309).

As this Court recently noted in *Williams v Niske (supra.* at 311), the preeminent object of the statute is to encourage settlement. Therefore, a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

construction which places a nonsettling defendant in an advantageous position vis-a-vis settling tortfeasors is to be avoided. The purpose of allowing a nonsettling defendant credit for releases obtained by settling defendants is merely to ensure that a tortfeasor who proceeds to verdict is not held responsible for more than his equitable share of the plaintiff's damages *(Williams v Niske, supra,* at 310) subject, of course, to the doctrine of joint and several liability. At the same time, the credit to be given to a nonsettling defendant should not be derived by a method which tends to undercompensate the plaintiff. That is, the plaintiff should receive the amount of his verdict reduced only insofar as the plaintiff has agreed to accept less in settlement than the share of damages attributable to the settling tortfeasors. A nonsettling defendant, however, should generally be required to contribute the full amount of his proportionate share of the damages, reduced only insofar as is required to preclude recovery by a plaintiff of more than the amount of the verdict.

Before analyzing the statute in light of these principles, two observations are in order. First, I proceed from the presumption that General Obligations Law § 15-108 can and should be uniformly applied to avoid inconsistent results ( McKinney's Cons Laws of NY, Book 1, Statute. 98) and to "yield equitable results consonant with the statute's purpose of promoting settlement" *(Williams v Niske, supra,* at 312). To this end, the plaintiff must be free from the misapprehension that settlement will be disadvantageous, and the defendant must be free from any illusion that, by proceeding to trial, exposure to liability may be greatly reduced. Second, although the parties *219 in *Williams* apparently presented the issue as whether to credit the nonsettling defendant with the statutory value of settlements individually (defendant by defendant) or in the aggregate *(supra)*, the method proposed by the defendant in that case is entirely inconsistent with the statute, whichever formulation is advocated. The result obtained in *Williams* should be the same whether reached by aggregating the settlements or applying them individually to the credit of the nonsettling defendant.

Cases involving verdict reduction calculations pursuant to General Obligations Law § 15-108 can be divided into two general categories, those in which the jury has allocated fault among all tortfeasors and those, such as *Williams (supra),* in which the jury has apportioned fault only among certain nonsettling defendants. The determination of what constitutes a settling defendant's "equitable share" of the verdict within the contemplation of the statute is somewhat more involved in the latter instance, and care must be taken to avoid the pitfall into which the plaintiff in *Williams* became entrapped by the nonsettling defendant at the trial level.

In *Williams (supra),* four tortfeasors settled with the plaintiff prior to trial for a total of $900,000. While the jury was deliberating, two additional settlements were reached, one for $100,000 and the other on a high/low basis for $100,000 up to $400,000 to ensure a combined recovery of at least $500,000 against that defendant and the remaining (nonsettling) defendant, Billy the Kid, Inc. The jury returned a verdict of $2,600,000, apportioning fault only among the three defendants who proceeded to trial and finding the nonsettling defendant Billy the Kid, Inc. 35% liable and the other two defendants 65% liable. Billy the Kid, Inc., taking liberty with both mathematical and legal theory, contended that its statutory liability was a mere $10,000. It proposed that the total verdict ($2,600,000) should first be reduced by 65%, representing the "equitable share" attributable to the settling tortfeasors ($1,690,000), to yield a remaining liability of $910,000 to be borne by the three defendants who proceeded to trial. It then proposed that the remaining liability be reduced by the amount of the pretrial settlements ($900,000) to arrive at its own asserted liability for damages of $10,000. The argument has a superficial plausibility, and Billy the Kid, Inc. was successful in limiting the judgment entered against it to this nominal amount.

The fault in this reasoning is that it seeks to offset against *220 liability determined on the basis of the net verdict (the verdict less the amount of pretrial settlements) a credit calculated on the basis of the gross verdict. It seeks to obtain credit for 65% of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$2.6 million while liability is determined as 35% of only $1.7 million. This methodology is both illogical and mathematically indefensible. Inherent in the concept of percentage is the requirement that the total (100%) add up to a single figure of which the percentages each comprise a part. Obviously, 65% of $2,600,000 (the gross verdict) for which Billy the Kid, Inc. sought credit, when added to 35% of $1,700,000 (its equitable share of the verdict as ultimately determined by the jury) does not add up to either figure (the actual result is $2,285,000). To yield a valid result, the defendant's liability for damages and the credit received for that portion of damages contributed by settling tortfeasors must be calculated using the same principal sum.

Nor is the methodology advocated by Billy the Kid, Inc. consistent with the plain language of the statute. An amount given for a release "reduces the *claim* of the releasor against the *other tortfeasors*" ( General Obligations Law § 15-108 [a]; emphasis added). Where, as in *Williams (supra)*, pretrial settlements are reached with some tortfeasors, the fault to be apportioned among nonsettling defendants is comprised of the total amount of the plaintiff's damages (the gross verdict) reduced by the value of pretrial settlements. The value of a settlement is, by statute, the greater of the amount stated in the release or the amount of consideration actually paid for it. The amount recited in a stipulation of settlement may be a purely nominal sum. By the same token, the amount ultimately received by a plaintiff, due to such factors as insolvency, may be considerably less than the amount anticipated by the parties when the release was executed.

Clearly, if the *claim* of a plaintiff is reduced by an amount offered in settlement in exchange for the plaintiff's release, the equitable share of damages attributable to the nonsettling defendants is likewise reduced. The $900,000 paid in settlement prior to trial by four of the tortfeasors in *Williams v Niske (supra)* reduces the claim of the plaintiff against those defendants who proceeded to trial, and the damages attributable to those defendants are calculated on the basis of the reduced claim in

accordance with the apportionment of fault by the jury. Therefore, the verdict obtained is first reduced by the amount of the pretrial settlements before calculating the *223 equitable share attributable to those defendants who proceeded to trial.

This is precisely the methodology applied by this Court on appeal in *Williams* (181 AD2d, *supra*, at 311). The remaining liability of $1,700,000, apportioned 35% to the nonsettling defendant Billy the Kid, Inc. and 65% to the defendants who settled with the plaintiff during the course of deliberations, provides the basis for determining the credit to be applied under the statute. The credit is the greater of the monetary value of the settlements reached by two of the three remaining defendants during jury deliberations or the equitable share of the liability attributable to those two settling defendants. In the case of either such defendant, the monetary value of the settlement ($100,000 in each instance) is considerably less than the 30% and 35% share, respectively, of the remaining $1,700,000 liability apportioned to them by the jury. Therefore, whether the nonsettling defendant received credit for the settlements individually or in the aggregate, the setoff amounts to 65% of the claim remaining to be satisfied ($1,700,000) or $1,105,000. The share of the damages for which Billy the Kid, Inc. is liable, therefore, is $595,000 (*Williams v Niske*, *supra*, at 311).

Where, as in the matter under review, the jury apportions fault among all tortfeasors, the situation is less complicated because the question of what constitutes the "equitable share" attributable to a defendant does not arise. In this instance, the equitable share is simply the percentage fault allocated to each defendant (adjusted, where necessary, for the fault attributable to bankrupt defendants). The issue which has proved troublesome under these circumstances is whether or not to aggregate settlements, that is, to add up the statutory value of all releases obtained from the plaintiff and compare this figure to the equitable share attributable to all settling tortfeasors for the purpose of determining the higher figure to be applied to offset the total verdict for the benefit of the nonsettling defendants.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

In the case at bar, the court did not aggregate settlements but credited the nonsettling defendants with the greater of the statutory value or the proportion of fault with respect to each individual settlement *(Matter of New York City Asbestos Litig.,* 151 Misc 2d 1, 6). Plaintiffs complain that this method results in undercompensation and contend that the alternative aggregation method suffices to ensure that no nonsettling defendant will be required to pay more than its proportionate *222 share of the damages (subject to the principle of joint and several liability). Plaintiffs provide actual calculations for two representative plaintiffs to illustrate the point, but a simplified hypothetical will suffice by way of example.

Suppose a jury returns a verdict of $500,000 against five defendants, four of whom have entered into settlements with the plaintiff, apportioning fault against all five as shown in the following table.

| Defendant | Settlement Value | Apportioned Fault | Equitable Share |
|---|---|---|---|
| A | 0 | 15% | 75,000 |
| B | 150,000 | 25% | 125,000 |
| C | 200,000 | 30% | 150,000 |
| D | 25,000 | 0% | 0 |
| E | Nonsettling Defendant | 30% | 150,000 |

Assigning the nonsettling defendant credit for each settlement individually, $75,000 for defendant A's equitable share and $375,000 for the value of the releases obtained by defendants B, C and D, results in a total offset of $450,000, thereby reducing the liability of the nonsettling defendant to a mere $50,000. Plaintiff is undercompensated in his recovery of damages by $75,000, receiving only $425,000 out of a total verdict of $500,000. Most benefited is defendant E who, by forcing the case to trial, has achieved the highly desirable result (from his perspective) of avoiding $100,000 of his $150,000 equitable share of the damages, as determined by the jury's apportionment of fault. As Presiding Justice Murphy emphasized in *Williams v Niske* (181 AD2d 307, 310, *supra),* this construction of General Obligations Law § 15-108 (a) operates "to reward a tortfeasor's insistence that

the claim against him be reduced to judgment." Such an outcome hardly advances the statutory objective of promoting settlement in tort litigation.

Aggregation of settlements produces a far more desirable result. Under the facts hypothecated, the total value of settlements of $375,000 exceeds the equitable share of the judgment attributable to the settling defendants by $25,000 and, thus, the nonsettling defendant receives credit for $375,000. The judgment against defendant E is therefore $125,000. In these circumstances, defendant E still pays less than his equitable share of $150,000 but plaintiff is fully compensated, receiving in total the full amount of the verdict returned by the jury.

It bears emphasis that the aggregation method does not *223 always result in a plaintiff's receiving the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214                                                          Page 7

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

full amount of the verdict. Where the amounts received in settlement are less than the equitable share collectively attributable to the settling tortfeasors, the plaintiff will be undercompensated to the same extent. Thus, if the plaintiff in the above example had accepted only $250,000 from the four settling defendants who were determined to be accountable for 70% of the damages, the nonsettling defendant would be entitled to a credit in the amount of their equitable share of $350,000 making his liability $150,000 (which, under the hypothetical facts presented, is simply his own equitable share of the verdict). The plaintiff is then undercompensated by $100,000; however, this is entirely attributable to the plaintiff's willingness to compromise for less than the full amount of liability ultimately assessed by the jury against the settling defendants and is not the result of any windfall received by the nonsettling defendant by virtue of the method of computation employed. Furthermore, this outcome encourages settlement by holding the nonsettling defendant fully liable for his proportionate share of the verdict while allowing the other defendants to reach a compromise settlement for less than their proportionate share.

Construction of the statute to require aggregation of settlements applies the same methodology to a number of settling tortfeasors, in the aggregate, as the statute expressly applies to "one of two or more persons liable or claimed to be liable" for the injury sustained (General Obligations Law § 15-108 [a]). Defendants nevertheless contend that the statute must be given its literal interpretation. Their argument relies on the statutory reference to "tortfeasor", in the singular, when determining the credit to be applied either for the value of a release "or in the amount of the released tortfeasor's [singular] equitable share of the damages". However, defendants fail to appreciate that the statute, as written, addresses only a single release given to "one of two or more persons". Therefore, the use of the word "tortfeasor's", in the singular, merely represents ·· conformance with the grammatical rule of parallel structure and is not an expression of legislative intent. In sum, aggregation of settlements advances the purpose of General Obligations Law § 15-108 to promote settlements

while adhering to its express provisions and may be uniformly applied to achieve an equitable result.

(2) The discussion of allocation of damages is not complete without consideration of the treatment to be accorded to fault apportioned by the jury to bankrupt defendants. In this action, *224 the jury apportioned fault among all potentially liable parties, including certain defendants protected by the bankruptcy statutes. Supreme Court allocated the bankrupt defendants' shares of liability among both settling and nonsettling defendants. However, nothing in General Obligations Law § 15-108 suggests that it was intended to compromise the principle of joint and several liability in tort. The statute expressly provides that contribution may not be obtained by or from a settling tortfeasor (General Obligations Law § 15-108 [b], [c]) and allocation of a bankrupt party's share among settling defendants places that amount beyond a plaintiff's reach. As stated in the companion Federal litigation, "The plaintiff does not impliedly agree, or expect as a natural consequence of entering into a settlement, that he or she will be forced to absorb portions of causal fault attributable to nonsettling tort-feasors who are either insolvent or statutorily immune from suit" (In re Eastern & S. Dists. Asbestos Litig., 772 F Supp 1380, 1402, affd in relevant part sub nom. In re Brooklyn Navy Yard ·· 'estos Litig., 971 F2d 831). In affirming this ruling, the Second Circuit Court of Appeals noted, "Under article 14 of the C.P.L.R., non-settling defendants who pay more than their equitable share retain the right to pursue reimbursement from bankrupt or absent joint tortfeasors". (971 F2d, supra, at 845, citing CPLR 1401-1403). Therefore, the share of damages attributable to bankrupt defendants should be allocated only among nonsettling defendants.

As previously noted, the statutory value placed on a settlement is either the amount of consideration paid for the plaintiff's release or the amount stated therein, whichever is greater. (General Obligations Law § 15-108 [a]). Certain plaintiffs who settled with defendant Fibreboard Corporation agreed to accept deferred payment of a portion of the stipulated amount, a payment designated by the parties as "Fibrebucks". On appeal, these plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

argue that, for the purpose of determining its value as a setoff, the deferred portion of each settlement should be discounted to reflect that Fibrebucks represent "a contingent and uncertain obligation whose present value is problematic or slight". The statute, however, is unambiguous in placing the risk of recovery on the settling plaintiff *In re Joint S. & E. Dist. Asbestos Litig. [Gallin v Owens-Illinois, Inc.], 760 F Supp 33, 34-35), and leaves no room for judicial construction (McKinney's Cons Laws of NY, Book 1, Statutes § 76).

(3) The joint trial of the actions of these 25 plaintiffs, and *225 nine others, in the "reverse bifurcation" format was "entirely appropriate *(see, Jenkins v Raymark Indus., 782 F2d 468, 473, n 8, reh denied 785 F2d 1034). The joint trial format has the potential to reduce the cost of litigation, make more economical use of the trial court's time, and speed the disposition of cases *(see, Matter of City of Rochester v Levin, 57 AD2d 700, 701) as well as to encourage settlements *(see, In re Joint E. & S. Dist. Asbestos Litig. [Findley v Blinken], 129 Bankr 710, 815), and Supreme Court's resort to its use in this matter was not an abuse of discretion.

In 22 of the nonsettled cases, it does not plainly appear that the evidence so preponderates in favor of defendants that _ : verdict for the respective plaintiffs could not have been reached under any fair interpretation of the evidence *(see, Martin v McLaughlin, 162 AD2d 181, 184), nor can it be said that causation "is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does" *(Smith v Squire Homes, 38 AD2d 879, 880). Plaintiffs are not required to show precise causes of their respective damages and, in 22 of the nonsettled cases, plaintiffs showed facts and conditions from which defendants' liability may be reasonably inferred *(Juiditta v Bethlehem Steel Corp., 75 AD2d 126, 137).

In the *Silver* case, however, it is not disputed that crucial evidence linking the decedent to the asbestos products of defendant Owens-Illinois was hearsay testimony. Neither the trial court in its ruling nor plaintiffs in their briefs have propounded any

applicable exception to the prohibition of such hearsay, and its receipt on this critical point was reversible error *(see, Echeverria v City of New York, 166 AD2d 409, 410).

(4) As plaintiffs do not dispute, prejudgment interest on future losses is no longer available under New York law *(Milbrandt v Green Refractories Co., 79 NY2d 26). In regard to wrongful death actions, the calculation of interest from the date of death based upon the net verdict (as reduced for settlements pursuant to General Obligations Law § 15-108) is entirely consistent with the language of EPTL 5-4.3 (a) that interest be awarded "upon the principal sum recovered by the plaintiff".

Defendant Owens-Illinois, at trial, argued against admission of a document known as the Hemeon Report *(see, George v Celotex Corp., 914 F2d 26, 29-30) on the ground that the report *226 was irrelevant to it. Only now does Owens-Illinois argue that the report is hearsay, an objection that cannot be raised for the first time on appeal *(Schiaroli v Village of Ellenville, 111 AD2d 947, 948, n).

This Court has reviewed all of the remaining arguments presented by the parties and finds each of them to be without merit. In any event, all judgments in nonsettled cases must be remanded and resettled to reflect defendant Keene's settlement with plaintiffs in 12 cases during the pendency of this appeal.

Accordingly, 22 judgments of the Supreme Court, New York County (Helen Freedman, J.), five entered May 21, 1991, one May 22, 1991, two May 24, 1991, four May 28, 1991, five June 20, 1991, one June 22, 1991, three July 26, 1991, and one December 11, 1991, comprising all of the judgments in the instant litigation except *Galen, Osher, and Silver* which, after a three-part joint jury trial, awarded damages in favor of each of 22 individual plaintiffs in various amounts, should be modified, on the law, to the extent of deleting the component of each representing prejudgment interest on future losses, reallocating that portion of each representing allocation of the bankrupt defendants' shares only among the nonsettling

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

188 A.D.2d 214

188 A.D.2d 214, 593 N.Y.S.2d 43

(Cite as: 188 A.D.2d 214)

defendants who appear on this appeal, and calculating the offsets pursuant to General Obligations Law § 15-108 as the greater of an aggregation of the total amount received from the settling defendants or an aggregation of the total percentage of liability attributable to the settling defendants, and each of the 22 judgments remanded for resettlement in accordance with the foregoing, taking into account as well the August 1992 settlements between defendant Keene and plaintiffs in 12 cases and, except as so modified, affirmed, without costs.

Judgment of the same court and Justice, entered May 21, 1991, in Silver, which, after the same joint jury trial, held defendants Owens-Illinois and Keene jointly and severally liable to that plaintiff in the amount of $1,673,187, should be reversed, insofar as defendant Owens-Illinois appeals, and the clerk directed to enter judgment in favor of Owens-Illinois dismissing the complaint in Silver as against it, without costs.

Appeals and cross appeals from judgments of the same court and Justice, entered May 21, 1991 in Osher and July 26, 1991 in Galen, and appeals of defendant Keene and cross appeals of plaintiffs as against Keene from judgments of the same court *227 _ . _  ustice entered May 21, 1991 in Ch.. in, Demaria, Lyon, Raia, and Sufian, May 22, 1991 in Scorzelli, June 22, 1991 in Carrano, and July 26, 1991 in Ancewicz and Montgoris, should be dismissed as academic, without costs.

Sullivan, J. P., Milonas and Kupferman, JJ., concur.

Twenty-two judgments of the Supreme Court, New York County, five entered May 21, 1991, one May 22, 1991, two May 24, 1991, four May 28, 1991, five June 20, 1991, one June 22, 1991, three July 26, 1991, and one December 11, 1991, comprising all of the judgments in the instant litigation except Galen, Osher, and Silver which, after a three-part joint jury trial, awarded damages in favor of each of 22 individual plaintiffs in various amounts, are modified, on the law, to the extent of deleting the component of each representing prejudgment interest on future losses, reallocating that portion of

each representing allocation of the bankrupt defendants' shares only among the nonsettling defendants who appear on this appeal, and calculating the offsets pursuant to General Obligations Law § 15-108 as the greater of an aggregation of the total amount received from the settling defendants or an aggregation of the total percentage of liability attributable to the settling defendants, and each of the 22 judgments remanded for resettlement in accordance with the foregoing, taking into account as well the August 1992 settlements between defendant Keene and plaintiffs in 12 cases and, except as so modified, affirmed, without costs.

Judgment of the same court and Justice, entered May 21, 1991, in Silver, which, after the same joint jury trial, held defendants Owens-Illinois and Keene jointly and severally liable to that plaintiff in the amount of $1,673,187, is reversed, insofar as defendant Owens-Illinois appeals, and the clerk directed to enter judgment in favor of Owens-Illinois dismissing the complaint in Silver as against it, without costs.

Appeals and cross appeals from judgments of the same court and Justice, entered May 21, 1991 in Osher and July 26, 1991 in Galen, and appeals of defendant Keene and cross appeals of plaintiffs as against Keene from judgments of the same court and Justice entered May 21, 1991 in Chierico, Demaria, Lyon, Raia, and Sufian, May 22, 1991 in Scorzelli, June 22, 1991 in Carrano, and July 26, 1991 in Ancewicz and Montgoris, are dismissed as academic, without costs.*228

Copr. (c) 2005, Randy A. Daniels, Secretary of State, State of New York.

N.Y.A.D.,1993.

NY CITY ASBESTOS LITIG.

END OF DOCUMENT

**EXHIBIT N**

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN THE CITY OF NEW YORK

-------------------------------------------------------x

IN RE: NEW YORK CITY
ASBESTOS LITIGATION

-------------------------------------------------------x

This Document Relates To:

    All Cases

-------------------------------------------------------x

New York City
Asbestos Litigation
(NYCAL)

Index No. 40000/88

AMENDED CASE
MANAGEMENT ORDER

September 20, 1996,
Amended as of February 19, 2003

## I.  Applicability of This Order

This Order applies to all pretrial procedures involving all asbestos personal injury and wrongful death cases now or hereafter assigned to the undersigned, except as otherwise directed by the Court upon motion and for cause shown by the party seeking to have this Order declared inapplicable, and supersedes all previous case management orders and amendments thereto entered in the asbestos litigation previously pending in all counties in the City of New York, Supreme Court.

## II.  Objectives

It is the objective of the Court to encourage and bring about the fair, expeditious, and inexpensive resolution of these cases. In an effort to achieve this goal, a case management plan ("CMP"), drafted by a steering committee including the Special Master, plaintiffs' and defendants' counsel, and supplemented by Order of this Court, is established to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens in order to permit the parties to evaluate the cases, reach early settlements, and prepare unsettled cases for trial. The essential components of the CMP include, to the extent feasible:

the Special Master and the parties that the failure to list a particular case on a particular firm's inventory filed with this Order was due to inadvertence, mistake, or other good cause.

XIV.    Accelerated Trial Clusters

A.    The Court, having in mind the directions of, and its discretion under, the provisions of CPLR 3407, will assign for trial on the first Monday in May and the first Monday in November of each calendar year a special Accelerated Trial Cluster of living plaintiffs. The Accelerated Trial Cluster will be designated on the first Thursday of the preceding December (for May cluster) and June (for November cluster). Letter applications for assignment to the Accelerated Trial Cluster shall be provided to the Court, the Special Master and defendants (by fax or FedEx) by no earlier than the third Thursday of the preceding September (for May cluster) and March (for November cluster), and no later than ten (10) days before the designation date. Such letter application will be accompanied by a statement that the plaintiff is terminally ill, the nature of the illness, and the plaintiff's life expectancy, if known. To be eligible for inclusion in an Accelerated Trial Cluster, a plaintiff must be alive and have a pending lawsuit at the time of application. Unless plaintiffs' counsel seeks an extension of time from the Special Master, counsel must provide to defendants the following information at the time the letter application for assignment to the Accelerated Trial Cluster is made:

1.    answers to interrogatories in the form approved by the Special Master;

2.    responses to standard request for production; and

3.   signed authorizations for medical, employment, social security, disability, workers compensation, union, military and tax records to a mutually agreed upon records retrieval service.

Defendants shall file any objections with the Court and the Special Master, and serve upon plaintiffs (by fax or FedEx) by the first Wednesday of each December and June.

B.   Any plaintiff who has failed to file an application and supporting materials for inclusion in a particular Accelerated Trial Cluster within the time periods specified above may make special application to the Special Master for an exception to the provisions of this section in the interest of justice and for good cause shown. The presumption, however, shall be that no cases shall be approved for a given Accelerated Trial Cluster if timely application has not been made, as provided herein. Upon a finding of exceptional circumstances, the Special Master may make recommendations to the Court for inclusion of additional *in extremis* cases in a given Accelerated Trial Cluster.

C.   The method of trial of cases assigned to the May and November Accelerated Trial Clusters will be determined by the Court in light of all applicable legal considerations.

D.   Each case in an Accelerated Trial Cluster will be prepared strictly in accordance with the discovery order entered for those cases. The discovery order applicable to each particular Accelerated Trial Cluster will be based upon the time line set forth in the model schedule annexed hereto as Exhibit "G." The particular discovery order applicable to a specific Accelerated Trial Cluster will be published by the Special Master together with the list of cases to be included in the cluster.

As of 6/12/07

## May 2007 Defendants Rider

NANCY MCDONALD, ESQ.
McELROY, DEUTCH & MULVANEY
1300 MOUNT KEMBEL AVENUE
MORRISTOWN, NJ 07962-2075
PHONE # (973) 993-8100/ 8703
FAX # (973) 425-0161
NMCDONALD@MDMC-LAW.COM
COUNSEL FOR A.O. SMITH WATER PRODUCTS CO.

LAWRENCE MCGIVNEY, ESQ.
MONAKEE GRIFFIN, ESQ.
MCGIVNEY& KLUGER, P.C.
80 BROAD ST., 23RD FLOOR
NEW YORK, NY 10004
PHONE 212 509-3456
FAX 212 509-4420
LMCGIVNEY@MCGIVNEYANDKLUGER.COM
COUNSEL FOR ALGOMA HARDWOODS, INC., individually and
as successor in interest to ALGOMA PLYWOOD & VENEER CO.,
HERCULES CHEMICAL COMPANY INC.

THUY T. BUI, ESQ.
TIMOTHY FRASER, ESQ.
DRINKLE BIDDLE & REATH, LLP
140 BROADWAY, 39TH FLOOR
NEW YORK, NY 10005
PHONE # (212) 248-3140
FAX # (212) 248-3141
THUY.BUI@DBR.COM
COUNSEL FOR BAXTER HEALTHCARE CORPORATION, individually
and as successor in interest to AMERICAN SUPPLY CORP. and HOSPITAL SUPPLY CORP.
and AMERICAN SCIENTIFIC PRODUCTS., BAXTER INTERNATIONAL INC., individually
and as successor in interest to AMERICAN HOSPITAL SUPPLY CORP., and
AMERICAN SCIENTIFIC PRODUCTS., AND VWR INTERNATIONAL, INC.

YVETTE HARMON, ESQ.
PHILIP GOLDSTEIN, ESQ.
MCGUIRE WOODS LLP
1345 AVENUE OF THE AMERICAS, 7TH FLOOR
NEW YORK, NY 10105
PHONE # (212) 548-2100
FAX # (212) 715-2315
YHARMON@MCGUIREWOODS.COM
COUNSEL FOR AMERICAN STANDARD, INC., AND BELL & GOSSETT CO.

JUDITH YAVITZ, ESQ.
ANDERSON, KILL, OLICK & OSHINSKY
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020-1000
PHONE # (212) 278-1000
FAX # (212) 278-1733
JYAVITZ@ANDERSONKILL.COM
COUNSEL FOR AMCHEM PRODUCTS, INC., n/k/a RHONE POULENC AG CO.,
n/k/a BAYER CROPSCIENCE INC., CERTAINTEED CORPORATION, and UNION CARBIDE CORP.

ARTHUR G. COHEN, ESQ.
GORDON & SILBER, P.C.
355 LEXINGTON AVENUE
NEW YORK, NY 10017
PHONE # (212) 834-0600
FAX# (212) 490-0035
ACOHEN@GORDON-SILBER.COM
COUNSEL FOR AMERICAN BILTRITE COMPANY, AMERICAN BILTRITE, INC., individually
and as successor to AMTICO FLOORS AND AMTICO, a division of AMERICAN BILTRITE

JULIE EVANS, ESQ.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
150 EAST 42ND STREET
NEW YORK, NY 10017-5639
PHONE # (212) 490-3000
FAX # (212) 490-3038
JULIE.EVANS@WILSONELSER.COM
COUNSEL FOR A.W. CHESTERTON CO.

As of 6/12/07

SUZANNE HALBARDIER, ESQ.
ROBERT GORIS, ESQ.
BARRY, MCTIERNAN & MOORE
2 RECTOR STREET, 14TH FLOOR
NEW YORK, NY 10006
PHONE # (212) 608-8999
FAX # (212) 608-8902
SHALBARDIER@BMMFIRM.COM
COUNSEL FOR BLACKMAN PLUMBING SUPPLY COMPANY, INC.,
DOMCO PRODUCTS TEXAS, LP, individually and as successor to AZROCK INDUSTRIES, INC.

ANNA DILONARDO, ESQ.
WEINER LESNIAK, LLP
888 VETERAN'S MEMORIAL HIGHWAY, SUITE 540
HAUPPAUGE, NY 11788
PHONE # (631) 232-6130
FAX # (631) 232-6184
ADILONARDO@WEINERLESNIAK.COM
COUNSEL FOR BORG-WARNER CORP., n/k/a BURNS INTERNATIONAL SERVICES CORP.

JOHN J. FANNING, ESQ.
ROSA LEE, ESQ.
CULLEN & DYKMAN
177 MONTAGUE STREET
BROOKLYN, NY 11201
PHONE # (718) 855-9000
FAX # (718) 935-1509
JFANNING@CULLENANDDYKMAN.COM
COUNSEL FOR BURNHAM CORPORATION and GOULDS PUMP, INC.

FRANK A CECERE, ESQ.
AHMUTY, DEMERS & MCMANUS
200 I.U. WILLETS ROAD
ALBERTSON, NY 11507
PHONE # (516) 294-5433
FAX # (516) 625-4712
FRANK.CECERE@ADMLAW.COM
COUNSEL FOR CARRIER CORP., as successor in interest to BRYANT HEATING & COOLING SYSTEMS

GREG A. DADIKA, ESQ.
REED SMITH LLP
136 MAIN STREET, SUITE 250
PRINCETON FORRESTAL VILLAGE
PRINCETON, NJ 08540
PHONE (609) 987-0050
FAX # (609) 951-0824
GDADIKA@REEDSMITH.COM
COUNSEL FOR CENTRAL SCIENTIFIC COMPANY, a division of CENCO INCORPORATED;
CENTRAL SCIENTIFIC COMPANY, a division of CENCO INSTRUMENTS CORPORATION

CORI L. LEAVITT, ESQ.
WILLIAM BRADLEY, ESQ.
JOSEPH CARLISLE, ESQ.
MARY ELLEN CONNOR, ESQ.
MALABY, CARLISLE & BRADLEY LLC
150 BROADWAY
NEW YORK, NY 10038
PHONE # (212) 791-0285
FAX # (212) 791-0286
WBRADLEY@MCBLLC.ORG
COUNSEL FOR CBS CORPORATION, a Delaware Corp., f/k/a/ VIACOM INC., successor by
merger to CBS CORPORATION, a Pennsylvania Corp., f/k/a WESTINGHOUSE ELECTRIC CORP.,
CLEAVER BROOKS CO., MORSE/DIESEL, INC., SUPERIOR BOILER WORKS, INC., and WEIL-MCLAIN,
a division of THE MARLEY CO.

ANDREW CZEREPAK, ESQ.
CONSOLIDATED EDISON
FOUR IRVING PLACE
NEW YORK, NY 10003
PHONE # (212) 460-2164/ 2158
FAX # (212) 780-6483
CZEREPARK@CONED.COM
COUNSEL FOR CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.

As of 6/12/07

ANGELA DiGIGLIO, ESQ.
KIRSTEN A. KNEIS, ESQ.
MICHAEL WALLER, ESQ.
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLPONE NEWARK CENTER,
10TH FLOORNEWARK, NJ 07102PHONE # (973) 848-4000FAX # (973) 848-4001
KIRSTEN.KNEIS@KLGATES.COM
COUNSEL FOR CRANE CO., AND SQUARE D

JAMES P. CONNORS, ESQ.
JONES HIRSCH CONNORS & BULL P.C.
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NY 10004
PHONE # (212) 527-1350
FAX # (212) 527-1680
JCONNORS@JHCB.COM
COUNSEL FOR ECR INTERNATIONAL CORP., f/k/a DUNKIRK RADIATOR CORP.

LAWRENCE MCGIVNEY, ESQ.
MONAKEE GRIFFIN, ESQ.
MCGIVNEY& KLUGER, P.C.
80 BROAD ST., 23RD FLOOR
NEW YORK, NY 10004
PHONE  212 509-3456
FAX  212 509-4420
LMCGIVNEY@MCGIVNEYANDKLUGER.COM
COUNSEL FOR THE FAIRBANKS CO., SID HARVEY INDUSTRIES, INC., Individually
and as successor to or f/k/a/ SID HARVEY SALES CO., AND ERIE CITY/ZURN INDUSTRIES, INC.

KEN ROBERTS, ESQ.
WOLF, BLOCK, SCHORR & SOLIS-COHEN, LLP
250 PARK AVENUE
NEW YORK, NY 10177
PHONE # (212) 986-1116
FAX # (212) 986-0604
KROBERTS@WOLFBLOCK.COM
COUNSEL OF FEDERAL PUMP CORPORATION

MARC S. GAFFREY, ESQ.
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS
40 PATTERSON STREET
P.O. BOX 480
NEW BRUNSWICK, NJ  08903
PHONE # (732) 545-4717
FAX # (732) 545-4579
MGAFFREY@HOAGLANDLONGO.COM
COUNSEL FOR FISCHER SCIENTIFIC INTERNATIONAL INC., MANNINGTON MILLS, INC.,
and MANNINGTON CARPETS, INC.

GREGG BORRI, ESQ.
LAW OFFICES OF GREGG J. BORRI, ESQ.
61 BROADWAY, SUITE 2125
NEW YORK, NY 10006
PHONE # (212) 980-8866
FAX # (212) 208-0969
GBORRI@BORRI.COM
COUNSEL FOR GEORGIA PACIFIC CO.

PATRICK J. DWYER, ESQ.
SMITH, STRATTON, WISE, HEHER & BRENNAN
2 RESEARCH WAY
PRINCETON, NEW JERSEY 08540
PHONE # (609) 924-6000 or 6683FAX # (609) 987-6651
PDWYER@SMITHSTRATTON.COM
COUNSEL FOR GOODRICH CORPORATION, f/k/a a THE B.F. GOODRICH COMPANY, Individually,
and as successor in interest to THE CLEVELAND PNEUMATIC COMPANY, a Division of the
PNEUMO ABEX CORP., a wholly owned subsidiary of ABEX, INC.

SCOTT R. EMERY, ESQ.
LYNCH DASKAL EMERY LLP
264 WEST 40TH STREET
NEW YORK, NEW YORK 10018
PHONE # (212) 302-2400
FAX # (212) 302-2210
EMERY@LAWLYNCH.COM
COUNSEL FOR GOODYEAR CANADA, INC., AND GOODYEAR TIRE & RUBBER CO.

As of 6/12/07

DANIEL J. MCNAMARE, ESQ.
DeCICCO, GIBBONS & McNAMARA, P.C.
14 EAST 38TH STREET, 5TH FLOOR
NEW YORK, NY 10016
PHONE # (212) 447-1222
FAX # (212) 689-0153
DMCNAMARE@DGMLAW.COM
COUNSEL FOR KAISER GYPSUM COMPANY, INC.

CYNTHIA WEISS ANTONUCCI, ESQ.
HARRIS, BEACH LLP
100 WALL STREET
NEW YORK, NY 10005
PHONE # (212) 687-0100
FAX # (212) 687-0659
CANTONUCCI@HARRISBEACH.COM
COUNSEL FOR KENTILE FLOORS, INC.

ELISA M. PUGLIESE, ESQ
KEYSPAN
LEGAL DEPARTMENT
175 EAST OLD COUNTRY ROAD
HICKVILLE, NEW YORK 11801
PHONE # (516) 545-4161
FAX # (516) 545-5029
EPUGLIESE@KEYSPANENERGY.COM
COUNSEL FOR KEYSPAN GENERATION LLC, f/k/a LONG ISLAND POWER AUTHORITY

KEVIN L. KELLY, ESQ.
BRADLEY J. LEVIEN, ESQ.
MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS
39 BROADWAY, SUITE 950
NEW YORK, NY 10006
PHONE # (212) 968-8300
FAX # (212) 968-9840
BLEVIEN@DEFENSECOUNSEL.COM
COUNSEL FOR MANSFIELD PLUMBING PRODUCTS, LLC.

FRANCIS F. QUINN, ESQ.
TIM McHUGH, ESQ.
LAVIN, O'NEIL RICCI, CEDRONE & DiSIPIO
420 LEXINGTON AVENUE, SUITE 2900
GRAYBAR BUILDING
NEW YORK, NY 10170
PHONE # (212) 319-6898
FAX # (212) 319-6932
TMCHUGH@LAVIN-LAW.COM
COUNSEL FOR 3M

MICHAEL A. CERUSSI, ESQ.
THOMAS M. CRISPI, ESQ.
CERUSSI & SPRING
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NY 10601
PHONE # (914) 948-1200
FAX # (914-948-1579
MCERUSSI@CERUSSILAW.COM
CO-COUNSEL FOR 3M

ART BROMBERG, ESQ.
WEINER LESNIAK LLP
629 PARSIPPANY ROAD
P.O. BOX 438
PARSIPPANY, NJ 07054-0438
PHONE # (973) 403-1100
FAX # (973) 403-0010
ABROMBERG@WEINERLESNIAK.COM
COUNSEL FOR PEERLESS INDUSTRIES, INC.

ANNA DILONARDO, ESQ.
WEINER LESNIAK, LLP
888 VETERAN'S MEMORIAL HIGHWAY, SUITE 540
HAUPPAUGE, NY 11788
PHONE # (631) 232-6130
FAX # (631) 232-6184
ADILONARDO@WEINERLESNIAK.COM
COUNSEL FOR ROBERT A. KEASBEY CO.

As of 6/12/07

LORING FENTON, ESQ.
GREENBERG TRAURIG, LLP
MET LIFE BUILDING
200 PARK AVENUE
NEW YORK, NY 10166
PHONE # (212) 801-9200
FAX # (212) 801-6400
FENTONL@GTLAW.COM
TRIAL COUNSEL FOR ROBERT A. KEASBEY CO.

ZACHARY W. CARTER, ESQ.
DORSEY & WHITNEY LLP
250 PARK AVENUE
NEW YORK, NY 10177-1500
PHONE # (212) 415-9345
FAX # (212) 953-7201
CARTER.ZACHARY@DORSEY.COM
TRIAL COUNSEL FOR ROBERT A. KEASBEY CO.

JENNIFER DARGER, ESQ.
VINCENT A. ERRANTE, JR., ESQ.
DARGER & ERRANTE LLP
116 EAST 27TH STREET, 12TH FLOOR
NEW YORK, NY 10016
PHONE # (212) 452-5300/5303
FAX # (212) 452-5301
JDARGER@DARGERRANTE.COM
COUNSEL FOR PHILIPS ELECTRONICS NORTH AMERICA CORP.,
Individually and as successor-in-interest to T H AGRICULTURE & NUTRITION, L.L.C.,
and TH AGRICULTURE and NUTRITION COMPANY

MARC S. GAFFREY, ESQ.
HOAGLAND, LONGO, MORAN, DNST & DOUKAS
46 PATTERSON STREET
P.O. BOX 480
NEW BRUNSWICK, NJ 08903
PHONE #(732) 545-4717
FAX # (732) 545-4579
MGAFFREY@HOAGLANDANDLONGO.COM
COUNSEL FOR YORK INTERNATIONAL CORP.

DRESSER-RAND COMPANY, as successor in interest to MURRAY TURBINES
1200 WEST SAM HOUSTON PKWY. N.
HOUSTON, TX 77043
PHONE # (713) 467-2221
FAX # (713) 935-3490

HEIDELBERG USA, INC., as successor in interest TO HARRIS CORPORATION,
and as successor to HARRIS-SEYBOLD-POTTER COMPANY and
PREMIER-POTTER COMPANY
3391 TOWN POINT DRIVE
SUITE 400
KENNESAW, GA 30144

YORK INTERNATIONAL CORP.
631 SOUTH RICHLAND AVENUE
YORK, PENNSYLVANIA 17403
PHONE # (414) 524-1200
FAX # (414) 524-5520

ALL-STATE LEGAL®
07181-BF - 07182-BL - 07183-GY - 07184-WH
800.272.0510 www.aslegal.com

*Index No.*    **115546**        *Year 20*06

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

### IN RE: NEW YORK CITY ASBESTOS LITIGATION

**This Document Relates To:**

**FRANK BIANCO, et al.,**

**Plaintiffs,**

**- against -**

**A.C. and S., et al.,**

**Defendants.**

**PLAINTIFFS' ORDER TO SHOW CAUSE, MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A JOINT TRIAL and
AFFIRMATION IN SUPPORT OF PLAINTIFFS' MOTION FOR A JOINT TRIAL**

### WEITZ & LUXENBERG, P.C.

*Attorneys for*    **Plaintiffs**

*180 Maiden Lane
New York, NY 10038
(212) 558-5500*

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:*...........................        Signature.........................................................................

                                        Print Signer's Name.....................................................

*Service of a copy of the within*                                        *is hereby admitted.*

*Dated:*

......................................................................

*Attorney(s) for*

## PLEASE TAKE NOTICE

Check Applicable Box

[ ]  NOTICE OF ENTRY    *that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on*        *20*

[ ]  NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the
Hon.                                one of the judges of the within named Court,
at
on*                        *20*        *, at*                *M.*

*Dated:*

### WEITZ & LUXENBERG, P.C.

*Attorneys for*

*180 Maiden Lane
New York, NY 10038*

*To:*