SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x
                                                             :
In Re: NEW YORK CITY ASBESTOS LITIGATION                     :   Hon. Joan Madden
                                                             :   (Part 11)
------------------------------------------------------------ x
                                                             :
This Document Relates To:                                    :
                                                             :
THE FOLLOWING PLAINTIFFS FROM THE WEITZ                      :
& LUXENBERG MAY 2007 NYCAL IN EXTREMIS                       :
CLUSTER:                                                     :
                                                             :
FRANK BIANCO (Index No. 11546-06)                            :
JAMES DIRECTOR (Index No. 115923-06)                         :
KARL FELTEN (Index No. 114005-06)                            :
HARVEY HELFAND (Index No. 117176-06)                         :
CHRISTIAN HOLINKA (Index No. 114120-06)                      :
JACK NACHT (Index No. 114274-06)                             :
FREDERICK RITZER (Index No. 11328-06)                        :
JOSEPH SACCOMANO (Index No. 113299-06)                       :
ROBERT SHEPPARD (Index No. 117513-06)                        :
                                                             :
------------------------------------------------------------ x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A JOINT TRIAL

Defendants ManorCare Health Services, Inc. (alleged to be a successor in interest to Central Scientific Company, a division of Cenco, Inc.) ("ManorCare"), Fisher Scientific International Inc. ("Fisher"), Baxter Healthcare Corporation (alleged to be a successor in interest to American Hospital Supply Corp. and American Scientific Products) ("Baxter") and VWR International, Inc. ("VWR") and Univar USA Inc. ("Univar") (collectively, the "Lab Supply Defendants") respectfully submit this memorandum of law in opposition to plaintiffs' motion, pursuant to CPLR 602(a), for a joint trial of the *Bianco, Director, Felten, Helfand, Holinka, Nacht, Ritzer, Saccomano* and *Sheppard* cases. In the alternative, the Lab Supply Defendants maintain that the Court should sever the *Holinka* case entirely from the group.

## PRELIMINARY STATEMENT

Plaintiffs' motion for a joint trial should be denied. In the alternative, the Court should sever the *Holinka* case from the other eight cases in the group.

*Holinka* is unlike any of the other cases in Weitz & Luxenberg's proposed trial group before this Court and should not be consolidated for at least three reasons: (i) unlike the other eight cases, the defendants in this case are the alleged suppliers – not manufacturers – of the products plaintiff claims caused his injuries; (ii) the products at issue are unlike any others involved in this cluster, and indeed in the NYCAL in general, in that they are Bunsen burner pads and heat-resistant mittens used in a laboratory research-based setting; and (iii) plaintiff's alleged exposure occurred in medical research laboratories, which by their very nature, are unlike any of the construction based sites where the other eight plaintiffs allegedly were exposed to asbestos products.

A joint trial of all nine cases is inappropriate because there are few questions of fact in common. Despite plaintiffs' transparent attempts to portray a modicum of similarity among these cases, the only legitimate similarities among these varying and divergent cases are that plaintiffs are represented by the same law firm (Weitz & Luxenberg) and were diagnosed with the same disease. Those sole commonalities, however, do not even come close to satisfying the legal standard necessary for this Court to determine that a joint trial is appropriate. Those two commonalities are far outweighed by the numerous factual differences between these cases. To be sure, the factual differences between these cases are not *de minimus*; they go directly to the fundamental facts at issue such as unique products, varying types of asbestos exposures, myriad exposure sites covering different decades, and numerous different occupations. Lastly, discovery in *Holinka* is not as far along in the other eight cases.

Importantly, the varying differences in the individualized proofs applicable to each

2

plaintiff's case will overwhelm any joint trial, inevitably leading to jury confusion and prejudice to the Lab Supply Defendants. A joint trial will also create an undue hardship for potential jurors. As plaintiffs' counsel acknowledged to the Court during the June 15 status conference, a joint trial of these disparate cases would continue for "months;" this would preclude a large number of potential jurors from sitting on the jury for these cases and deprive the Lab Supply Defendants of a representative jury. The Lab Supply Defendants will be substantially prejudiced in their right to have the *Holinka* case -- the *only* case in which the Lab Supply Defendants are named -- heard by a separate, fair, and impartial jury. For these reasons, and for the reasons set forth herein, this Court should find that it is inappropriate to have a joint trial of these nine actions. In the alternative, the Court should sever the *Holinka* case from all other cases so the Lab Supply Defendants are afforded a full and fair trial.

## PROCEDURAL BACKGROUND

The cases at issue here are separately-filed, unrelated asbestos actions brought by nine different plaintiffs suffering from mesothelioma. These cases are part of the May 2007 *In Extremis* trial group, created pursuant to the Case Management Order for the New York City Asbestos Litigation. They have been retained by this Court to be listed for trial.

Since then, plaintiffs moved this Court for a joint trial of these cases. As demonstrated below, there is no factual basis for a joint trial. Indeed, these nine cases have nothing in common but for the fact that the law firm of Weitz & Luxenberg represents the plaintiffs, each of whom suffers or suffered from mesothelioma. Plaintiffs cannot meet their burden for obtaining a joint trial. Accordingly, the Lab Supply Defendants respectfully request that this Court deny plaintiffs' motion for a joint trial and sever the *Holinka* case for an individual trial.

## STATEMENT OF FACTS

Defendants VWR, Univar, Fisher Scientific, Baxter and ManorCare respectfully refer this Court to the accompanying Affirmation of Greg Dadika, Esq. ("Dadika Aff.") dated July 16, 2007 and the exhibits annexed thereto, for a recitation of all relevant facts herein.

## ARGUMENT

### I. THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A JOINT TRIAL IN ITS ENTIRETY

This Court should deny plaintiffs' motion for a joint trial because the applicable standard for a joint trial – *i.e.*, a commonality of facts and law, as defined by certain factors – is not met in these nine cases. Weighing all of the relevant factors, as required, demonstrates that there is no factual or legal basis for these nine cases to be tried jointly. Furthermore, this Court should also deny plaintiffs' motion for a joint trial because plaintiffs are making claims based on negligence, which New York case law clearly demonstrates renders a joint trial especially inappropriate.

As an initial matter, plaintiffs' moving papers do not accurately represent the factors considered or the standard applied by New York courts and followed by the First Department when determining whether consolidation of asbestos cases is appropriate. In New York, the general rule governing joint trials, section 602(a) of the CPLR, provides:

> (a) Generally. When actions involving a *common question of law or fact* are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. CPLR 602(a)

(Emphasis supplied). Under that standard, the party seeking a joint trial bears the "burden of demonstrating that the cases contain common issues of fact" making a joint trial appropriate. *Humiston v. Grose*, 144 A.D.2d 907, 908, 534 N.Y.S.2d 604, 605 (4th Dep't 1988). The mere presence of *some* common questions of fact is not enough. In fact, a joint trial is not appropriate

4

when "individual issues predominate." *Bender v. Underwood*, 93 A.D.2d 747, 748, 461 N.Y.S.2d 301, 302 (1st Dep't 1983).

The Courts of New York have a well-developed standard for determining if a joint trial is appropriate in a given group of asbestos cases. The factors to be considered include (1) whether the plaintiffs shared a common worksite; (2) similar occupations; (3) similar times of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged. *See Aikman v. Atex, Inc.*, 224 A.D.2d 180, 180, 637 N.Y.S.2d 123, 123 (1st Dep't 1996); *see also Ballard v. Armstrong World Indus., Inc.*, 191 Misc. 2d 625, 628 744 N.Y.S.2d 304 (Monroe Cty. 2004); *accord Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350-51 (2d Cir. 1993).

Consolidation should not be granted, however, at the expense of a litigant's constitutional rights to due process and a fair trial. *See Malcolm*, 995 F.2d at 350. Indeed, as noted by the Second Circuit, "[t]he systematic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's – and defendant's – cause not be lost in the shadow of a towering mass of litigation." *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) ("Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.").

Here, plaintiffs are not able to allege sufficient similarities between the *Holinka* case and the remaining eight cases to warrant a joint trial. As demonstrated below, individual issues overwhelmingly predominate in the *Holinka* case and the remaining eight cases, thus making a joint trial inappropriate. Indeed, specifically as to the Lab Supply Defendants, requiring a joint

trial of the *Holinka* matter would improperly place the purported considerations of convenience and economy over the constitutional protections of due process and the right to a fair trial. *See Malcolm*, 995 F.2d at 352 ("[H]ere, the maelstrom of facts, figures, and witnesses...was likely to lead to jury confusion."); *Bender v. Underwood*, 93 A.D.2d at 748 ("[U]nder the circumstances of this case, the resulting and cumulative prejudice to [the defendant] by permitting the jury in one trial to determine the multiple claims...at issue here, far outweighs the benefit derived from the conduct of a joint trial. In addition to the potential for resulting prejudice, of further relevance on the issue is the possibility of confusion for the jury."). Accordingly, this Court should deny plaintiffs' motion for a joint trial of these matters, and should further sever the *Holinka* matter for individual trial.

### A.  There Are No Common Questions of Fact Between These Cases

In *Ballard*, the Supreme Court of Monroe County, New York, declined to consolidate four groups of asbestos cases even when all plaintiffs shared a common work site. *Ballard*, 744 N.Y.S.2d at 307. The multiple plaintiffs here, on the other hand, cannot even argue the existence of a common work site. As with the individual plaintiffs' cases in *Ballard*, these cases should not be consolidated for a joint trial. A review of the basic factors considered by the *Ballard* court and in the *Malcolm* case relied upon by plaintiffs highlights the numerous factual disparities between these cases and the impropriety of a joint trial.

#### 1. Common Worksite

There is not a single worksite common to all, or even a few, of the plaintiffs in these nine cases. Plaintiffs admit that they were not exposed at one common worksite, but attempt to obscure the truth by claiming that many were exposed to the same types of products at similar types of job sites and then refering to construction sites -- even though Dr. Holinka does not claim to have worked anywhere near a construction site. (*See* Affirmation of Thomas

Comerford, hereinafter referred to as "Comerford Aff," ¶ 18). Again, plaintiffs only contention of common worksites is that many of the plaintiffs were allegedly exposed to asbestos at similar "types" of jobsites. Plaintiffs also admit that the plaintiffs all had different job titles. *See id.*

The facts of *Holinka* are strikingly different than the more common asbestos exposure cases. Plaintiff Holinka had absolutely nothing to do with construction or installation of boiler and/or insulation materials. In fact, during his entire time period of alleged exposure, Dr. Holinka was either a medical laboratory technician, a full-time student studying chemistry or related sciences, or a scientist researching reproductive medicine and writing articles. He was never at any construction sites and was never responsible for installation of any asbestos containing products. Instead, Dr. Holinka alleges exposure to only two types of allegedly asbestos-containing laboratory products that he used during his tenure as a technician, student and researcher at no fewer than *eleven* separate locations: Bunsen burner pads and heat-resistant mittens.

Dr. Holinka alleges to have used those products at the following eleven locations:

- United States Army, Fort Sam Houston in Texas; January to February, 1957;
- United States Army, 98 General Hospital in Germany; March 1957 to July 1959;
- Booth Memorial Hospital, Queens, New York; Late 1959 until early 1960;
- Research laboratory, University of California, Berkley; Spring 1960 to mid-1962, and January to August 1964;
- Undergraduate laboratories, University of California; January 1960 to Summer 1962;

7

- Hunter College, New York; Fall 1962 until Spring 1963;
- Graduate research laboratory, University of California Berkley; August 1964 until August 1966;
- SUNY Stony Brook: August 1971 until July 1974;
- Columbia University; August 1971 until July 1974;
- University of Southern California at Los Angeles; August 1974 until July 1977; and
- Mt. Sinai Hospital School of Medicine: August 1977 until July 1989

(*See* Dadika Aff., ¶ 6)

As admitted by plaintiffs, none of the other plaintiffs in the proposed trial group share any of Plaintiff Holinka's laboratory jobsites. (*See* Comerford Aff., ¶¶ 7-15). Indeed, not only is there a lack of commonality of worksites between the individual plaintiffs in these matters, but there are eleven different laboratory locations in the *Holinka* matter alone. As such, the proof in each case will require a separate, unique, and detailed description of these relevant sites, including the jobs the plaintiffs/decedents performed there. Since these worksites go to the very heart of each plaintiffs' case – *i.e.*, where, when and how each plaintiff was exposed – the lack of any similarity will be keenly felt by defendants and quite possibly lost on any jury. Nor will any judicial economy be realized when the lengthiest proof in these cases – the very facts surrounding alleged asbestos exposure – will need to be separately presented for each plaintiff. Clearly, the plaintiffs in the eight other matters pending before this Court – who include one flooring installer, three plumbers, one fire door installer, one mechanic, one general contractor, and one sheet metal worker -- are entirely unrelated to Dr. Holinka's alleged exposure to

asbestos from laboratory products while employed and studying in the academic research industry.

Therefore to deny this case a separate, individual trial would make for an unduly lengthy and overwhelming trial, which would unnecessarily confuse and frustrate the jury and prejudice the Lab Supply Defendants.

2. <u>Similar Occupation</u>

Plaintiffs fail to establish similarities between the plaintiffs' occupations, and admit that plaintiffs all had different job titles. (*See* Comerford Aff. ¶¶ 7-15). Each job performed by plaintiffs has distinct work routines and practices that must be explained in order to understand each plaintiff's alleged exposure to asbestos. Alleged exposure to asbestos from residential renovations, mechanical work on automobiles, cleaning of boilers, and work as a fireman in the U.S. Navy, for example, are all distinct activities requiring unique skills. As explained above, the detailed proof that will be required to show how each of these plaintiffs performed his respective craft, and how he was allegedly exposed to asbestos as a result, will require significant time. Since none of the plaintiffs even practiced the same trade, they should not be joined for trial.

Further, Plaintiff Holinka is uniquely different from the other plaintiffs. As discussed above, Dr. Holinka spent his entire career as either a laboratory technician, a student in a laboratory, or a research scientist. Clearly, his positions as technician, student, and researcher are by no stretch of the imagination akin to the physical, manual labor of a plumber, sheet metal worker, or contractor.

3. <u>Similar Time of Exposure</u>

In addition to dissimilar worksites and occupations, the plaintiffs in these nine different matters do not share a similar time period of exposure. This issue was addressed in *Malcolm*, a case heavily relied upon by plaintiffs in support of their motion to consolidate.

In *Malcolm*, the Second Circuit Court of Appeals reversed the district court's decision to consolidate forty-eight asbestos cases. *See* 995 F.2d at 354. In finding that the district court erred, the *Malcolm* Court addressed whether the plaintiffs there shared similar times of exposure. *Id.* at 351. Importantly, the *Malcolm* court did not blindly equate a mere overlap of time as satisfying this prong as plaintiffs attempt to do here. *Id.* Instead, the Second Circuit reversed the district court's prior determination, in part, because of the sheer enormity of the time frames involved:

> The time frame that the jury was required to consider was enormous: a period involving exposures in intervals that began as early as the 1940's and ended as late as the 1970's. While some plaintiffs suffered asbestos exposure over periods of up to 30 years, others had much shorter periods of exposure, undercutting the benefit of efficiency, and increasing the likelihood of prejudice, particularly concerning "state-of-the-art" evidence.

*Id.*

Here, the same enormity of time of exposure is present as was in *Malcolm*. The alleged exposures in the proposed trial group start as early as 1946 (*Nacht*) and end potentially as late as 2006 (*Helfand*). (*See* Dadika Aff., ¶¶ 11 & 16; *see also* Exh. B, T146:2 to 148:15). This six decade span of time is even greater than the time period referred to as "enormous" by the *Malcolm* Court. In addition, the alleged exposure periods range from approximately 15 years (*Bianco*) to almost 50 years (*Helfand*). (*See* Comerford Aff., ¶ 7; *see also* Dadika Aff., ¶¶ 11 &

16). As such, the very case relied upon by plaintiffs actually supports the proposition that this Court should deny their motion to consolidate these matters.

4. <u>Living and Deceased Plaintiffs</u>

As articulated in the Comerford Affirmation, there are five living and four deceased plaintiffs. Despite plaintiffs' contention to the contrary, this fact further evidences the suitability of separate trials for each case. Once again, *Malcolm*, the very case cited by plaintiffs in support of their motion to consolidate these matters for a joint trial, supports the position that asbestos cases with both living and dead plaintiffs should not be consolidated. In reversing the consolidation order of the trial court, the Second Circuit commented upon the clear likelihood of prejudice to try such cases jointly:

> Some victims in this case were still living during trial. Others had already died . . . . The significance of this factor is evident. The presence of wrongful death claims and personal injury actions in a consolidated trial is somewhat troublesome . . . . The dead plaintiffs may present the jury with a powerful demonstration of the fate that awaits those claimants who are still living.

*Id.* at 351-52 (internal citations and internal quotations omitted). Here, the mix of both living and dead plaintiffs in this consolidation motion undoubtedly carries the same concern for undue influence upon the jury. As such, this factor weighs in favor of severing these actions for trial, and this Court should deny the plaintiffs' motion to consolidate.

5. <u>Status of Discovery</u>

An additional factor that balances particularly in favor of severing these actions for trial is the status of discovery. In *Holinka*, plaintiffs have not yet deposed the corporate representatives of Fisher, Baxter, VWR, and Univar, and discovery deadlines extend through August. Indeed, the only deposition that has taken place at all is that of Plaintiff Holinka. Key depositions of fact witnesses and experts have yet to be set. To allow the *Holinka* case to

proceed to trial when material depositions regarding plaintiff's alleged exposure are unconcluded would be unfair and prejudicial to the Lab Supply Defendants.

In addition, plaintiffs' counsel represented to this Court several different times during the June 15, 2007 case management conference before this Court that *Holinka* "was not as far along" as the other eight matters. Therefore, by Plaintiff's own admissions before this Court, the state of discovery as to *Holinka*, which is admittedly not as far along as the other matters, clearly weighs against consolidating *Holinka* with the other eight cases.

### 6. Representation by Same Counsel

Despite plaintiffs' claims to the contrary, there are *not* numerous defendants who are common in two or more cases. (*See* Comerford Aff. at ¶ 16). The Lab Supply Defendants are not involved in any of the other eight cases in the proposed trial group. (*See* Dadika Aff., ¶ 4). In addition, counsel for ManorCare, Baxter, VWR, and Univar do not represent any other defendants in the proposed trial group. (*See* Dadika Aff., ¶ 8) According to the lists of remaining defendants circulated by Weitz & Luxenberg at the June 15, 2007 case management conference, there are over forty separate defendants remaining in these cases. (*See* Dadika Aff., Exh. A). This will create a situation where counsel for these defendants would be present in court for days, likely weeks, of testimony completely unrelated to their respective clients and this case. More importantly, the ability of a jury to distinguish between the defenses presented by over forty defendants will most certainly lead to jury confusion and prejudice to the Lab Supply Defendants.

### 7. Balance of Factors

A careful review of the factors this Court must consider for consolidation demonstrates a great disparity between these nine cases. To try these cases together would be to deny the Lab

Supply Defendants their right to have the individual cases against them heard by a fair and impartial jury. The *Holinka* matter is unique because it involves the use of laboratory products in research facilities, which is clearly different from the construction and insulation products at issue in the other cases. To preserve their constitutional right to a fair trial and prevent substantial prejudice, the Lab Supply Defendants respectfully request that this Court deny plaintiffs' motion for a joint trial.

B. **The Presence of Negligence Claims and the Lack of Judicial Economy Render These Cases Inappropriate for a Joint Trial**

In addition to the complete lack of commonality among the cases pursuant to the *Ballard/Malcolm* factors, a joint trial is especially inappropriate here given that plaintiffs are pursuing negligence claims. To establish negligence, a plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985). By its very nature, claims of negligence require individualized proofs as to each of its elements.

For example, whether the Lab Supply Defendants owed a duty to Dr. Holinka -- and whether such a duty (if one existed) may have been breached -- will depend on the particular circumstances of Dr. Holinka's individual case. Some of the individualized inquiries will require the jury to determine what Dr. Holinka actually knew about the risks associated with asbestos at the time and place of his alleged exposure to asbestos; what, if anything, should the Lab Supply Defendants have known about those risks at the time; and whether Dr. Holinka's position as a scientific researcher imposed upon him a heightened awareness of the potential dangers of asbestos at any point in his career. Such inquiries will focus on, among other things, the nature of Dr. Holinka's work; the specific working environment of his occupational sites; the duration

and extent that Dr. Holinka allegedly worked with lab products; whether the state of medical knowledge put the Lab Supply Defendants on notice of a risk specifically to Dr. Holinka; and whether the Lab Supply Defendants could have done anything to prevent Dr. Holinka's alleged mesothelioma.

New York courts – including the First Department – have routinely rejected ordering joint trials in cases involving negligence claims because of the highly individualized inquiries that must be made as to each plaintiff on fundamental issues such as the "extent of any breach of duty." *Bender*, 93 A.D.2d at 748, 461 N.Y.S.2d at 302; *see DeAngelis v. New York University Medical Center*, 738 N.Y.S.2d 671, 671 (1st Dep't 2002) (finding that plaintiffs' medical malpractice claims were properly severed due to the "predominance of differing facts" among cases); *Soule v. Norton*, 299 A.D.2d 827, 750 N.Y.S.2d 692, 694 (4th Dep't 2002) (finding that a joint trial was inappropriate where "individual issues predominated"); *Abbondandolo v. Hitzig*, 282 A.D.2d 224, 225, 724 N.Y.S.2d 26 (1st Dep't 2001). Accordingly, this Court should also deny plaintiffs' motion to jointly try the *Holinka* case with eight different cases. *Holinka* warrants a separate and individual trial.

As there are no common issues of fact, judicial economy would not be furthered by having a joint trial of these cases. On the contrary, a joint trial would dramatically lengthen the trial of all cases by adding weeks of extraneous testimony and scores of irrelevant exhibits. In view of those facts, plaintiffs' motivation for seeking a joint trial is clear: Plaintiffs desire a joint trial not to further the legitimate interests of judicial economy and administration, but rather, simply to benefit from the cumulative and prejudicial effect on the jury of hearing evidence concerning distinct and unrelated personal injury claims. *See Korren v. Eli Lilly & Co.*, 150 Misc. 2d 429, 431, 568 N.Y.S.2d 670, 672 (Sup. Ct. N.Y. Co. 1990) (stating that "presentation of

the numerous plaintiffs' claims before a single jury would also tend to unfairly bolster the case against defendants in an impermissibly prejudicial manner.").

Notably, even where joint trials have been ordered, several appellate courts have warned that "efficiency cannot be permitted to prevail at the expense of justice. The obligation of the courts to deliver justice is paramount, and it may not be scrapped for the benefit of cheaper and more rapid dispositions." *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated and remanded on other grounds*, 518 U.S. 1031 (1996); *see also In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d at 853 (stating that "[t]he systematic urge to aggregate litigation must not be allowed to trump our dedication to individual justice.") Given the highly individualized nature of plaintiffs' negligence claims and the proofs applicable to those claims, a joint trial here would neither further judicial economy nor any other legitimate interest. Instead, a joint trial of the *Holinka* matter with the remaining eight cases would necessarily be done at the expense of justice and due process for the Lab Supply Defendants.

In sum, if these cases were tried together, a jury would have to consider nine plaintiffs who claim exposure to products allegedly made or distributed by over forty different defendants, each of whom worked in multiple different professions, and at a litany of different worksites, with completely different types of alleged asbestos exposures, over the course of five decades. Given the high likelihood of confusion that a jury would have in keeping such a morass of information straight during the introduction of weeks of irrelevant evidence, the Lab Supply Defendants would sustain extreme prejudice. *See Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 465 (S.D.N.Y. 1977) (acknowledging that fairness to defendants "would be impeded by the introduction of voluminous irrelevant evidence" in the event consolidation were ordered).

## II. THIS COURT SHOULD GRANT SEVERANCE

This Court should sever the *Holinka* case from the remaining eight cases because under CPLR §603 the Lab Supply Defendants would be prejudiced by a joint trial. The rule governing severance provides that:

> In furtherance of convenience or to avoid prejudice the court may order a severance of claims, or may order a separate trial of any claim, or of any separate issue. The court may order the trial of any claim or issue prior to the trial of the others.

CPLR §603.

The absence of any common issues of fact among these cases and the unfair prejudice that would result to the Lab Supply Defendants if these cases were tried together, as set forth herein, compel severance of this case. *See Ballard*, 744 N.Y.S.2d at 306 ("[S]everance, like consolidation, is generally a matter of judicial discretion, and dependent upon commonality of issues."); *Hickson v. Mt. Sinai Medical Center*, 87 A.D.2d 527 (1st Dept. 1982) ("Court may direct a severance of claims in furtherance of convenience or to avoid prejudice."). Here, the Lab Supply Defendants are a significantly different group of defendants than the other defendants in this case.

First, the Lab Supply Defendants are exactly that: mere alleged suppliers of laboratory products, not the manufacturers of the products at issue in this matter. Second, the alleged use of laboratory research equipment (*i.e.*, Bunsen burner pads and heat-resistant mittens) by Dr. Holinka is vastly different than the installation, construction, or use of products such as insulation, sheet metal, or boiler products. Lumping Bunsen burner pads and heat-resistant mittens in with construction products would prejudice the Lab Supply Defendants. Lastly, the physical environment in which laboratory products are normally used (*i.e.* the pristine environment of a laboratory research facility), is diametrically different than a construction-

based environment in which the majority of the other plaintiffs allege exposure to asbestos containing materials and, accordingly, will require a host of different potential exposure theories.

## CONCLUSION

Based on the foregoing, Defendants ManorCare Health Services, Inc., Fisher Scientific International Inc., Baxter Healthcare Corporation, and VWR International, Inc. and Univar USA Inc. respectfully request that the Court deny plaintiffs' request for a joint trial; sever the *Holinka* action from the *Bianco, Director, Felten, Helfand, Nacht, Ritzer, Saccomano,* and *Sheppard* actions; and for such other and further relief as this Court may deem just and proper.

Dated: July 16, 2007
New York, New York

Respectfully submitted,

| | |
|---|---|
| REED SMITH LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, New Jersey 0850<br>(609) 987-0050<br>Attorneys for Defendant<br>ManorCare Health Services, Inc.<br><br>By: _____<br>Greg A. Dadika | DRINKER BIDDLE & REATH LLP<br>140 Broadway, 38th Floor<br>New York, New York 10005<br>(212) 248-3140<br>Attorneys for Defendant<br>Baxter Healthcare Corporation<br><br>By: _____<br>Daniel B. Carroll |
| HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP<br>40 Paterson Street<br>New Brunswick, New Jersey 08901<br>(732) 545-4717<br>Attorneys for Defendant<br>Fisher Scientific International Inc.<br><br>By: _____<br>Kristy Kjulina Lyons | MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.<br>530 Saw Mill River Road<br>Elmsford, NY 10523<br>Attorneys for Defendant<br>VWR International, Inc. and Univar USA Inc.<br><br>By: _____<br>Carol M. Tempesta, Esq. |

To:

Weitz & Luxenberg
*Attorneys for Plaintiffs*