

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------- x
                                                      :
In Re: NEW YORK CITY ASBESTOS LITIGATION      :    Hon. Joan Madden
                                                      :    (Part 11)
                                                      :
---------------------------------------------------------------- x
This Document Relates To:                             :
                                                      :
THE FOLLOWING PLAINTIFFS FROM THE WEITZ      :
& LUXENBERG MAY 2007 NYCAL *IN EXTREMIS*      :
CLUSTER:                                              :    **AFFIRMATION OF GREG A.**
                                                      :    **DADIKA, ESQ. IN OPPOSITION**
FRANK BIANCO (Index No. 11546-06)             :    **TO PLAINTIFFS' MOTION FOR A**
JAMES DIRECTOR (Index No. 115923-06)          :    **JOINT TRIAL**
KARL FELTEN (Index No. 114005-06)             :
HARVEY HELFAND (Index No. 117176-06)          :
CHRISTIAN HOLINKA(Index No. 114120-06)        :
JACK NACHT (Index No. 114274-06)              :
FREDERICK RITZER (Index No. 11328-06)         :
JOSEPH SACCOMANO (Index No. 113299-06)        :
ROBERT SHEPPARD (Index No. 117513-06)         :
                                                      :
---------------------------------------------------------------- x

GREG A. DADIKA, ESQ. an attorney duly admitted to practice law before the Courts

of this State, affirms, under the penalties of perjury pursuant to CPLR R. 2106, that the following

statements are true, except for those made upon information and belief, which we believes to be

true:

1.      Defendants ManorCare Health Services, Inc. (alleged to be a successor in interest

to Central Scientific Company, a division of Cenco, Inc.) ("ManorCare"), Fisher Scientific

International Inc. ("Fisher"), Baxter Healthcare, Inc. (alleged to be a successor in interest to

American Hospital Supply Corp. and American Scientific Products) ("Baxter") and VWR

International, Inc. ("VWR") and Univar USA Inc. ("Univar") (collectively, the "Lab Supply

Defendants") submit this affirmation in support of their opposition to plaintiffs' motion for a

joint trial pursuant to CPLR §602(a). The Lab Supply Defendants are seeking an Order denying

plaintiffs' request for a joint trial of the *Bianco, Director, Felten, Helfand, Holinka, Nacht,*

*Ritzer*, *Saccomano* and *Sheppard* cases; for an Order severing the *Holinka* case for a separate trial from the *Director, Felton, Helfand, Nacht, Ritzer, Saccomano* and *Sheppard* cases; and for such other and further relief as this Court may deem just and proper.

2.　　The within Affirmation has been prepared upon information and belief, based upon the files for these matters maintained in my office, which I believe to be true and accurate.

3.　　The nine above-captioned cases are part of the May 2007 *In Extremis* trial group, established pursuant to the Case Management Order for the New York City Asbestos Litigation. According to the lists of remaining defendants circulated by Weitz & Luxenberg at the June 15, 2007 case management conference, there are over forty separate defendants remaining in these cases. (*See* **Exhibit** A attached hereto).

4.　　The Lab Supply Defendants are defendants in only the *Holinka* case.

5.　　On June 25, 2007, by order to show cause, plaintiffs' counsel moved this Court for a joint trial of all nine of the above-captioned cases.

6.　　Plaintiff Christian Holinka was diagnosed with mesothelioma in September 2006. He is still alive. He submitted Responses to Interrogatories and testified on three different occasions in an individually filed law suit in which he alleged asbestos-related injuries. His interrogatories and deposition transcripts allege that he was exposed while performing laboratory research and graduate studies in the various colleges and universities in New York and California from 1956 to 1989. He alleges exposure to asbestos from Bunsen burner pads and heat mittens. Generally, he testified that Van Waters & Rogers, Fisher Scientific, American Scientific and Cenco were suppliers of laboratory products during the time period that he worked at some of his job sites. Specifically, Dr. Holinka alleges to have used products at the following eleven locations:

- United States Army, Fort Sam Houston in Texas; January to February, 1957;

- United States Army, 98 General Hospital in Germany; March 1957 to July 1959;

- Booth Memorial Hospital, Queens, New York; Late 1959 until early 1960;

- Research laboratory, University of California, Berkley; Spring 1960 to mid-1962, and January to August 1964;

- Undergraduate laboratories, University of California; January 1960 to Summer 1962;

- Hunter College, New York; Fall 1962 until Spring 1963;

- Graduate research laboratory, University of California Berkley; August 1964 until August 1966;

- SUNY Stony Brook: August 1971 until July 1974;

- Columbia University; August 1971 until July 1974;

- University of Southern California at Los Angeles; August 1974 until July 1977; and

- Mt. Sinai Hospital School of Medicine: August 1977 until July 1989

7.     Dr. Holinka's case presents unique exposures because they allegedly occurred in a laboratory environment, not in a construction or installation based environment.  As such, Dr. Holinka's case is not only unique to the May 2007 In-Extremis cluster, it is unique to the New York City asbestos litigation.

8.     ManorCare, Fisher, Baxter, VWR and Univar are defendants only in the *Holinka* matter, and are not named in any of the other cases that plaintiff seeks to consolidate before this

Court. In addition, counsel for ManorCare, Baxter, VWR and Univar do not represent any other defendants in the proposed trial group.

9.      As asserted in plaintiffs' Affirmation in support of this motion, Frank Bianco is deceased. He was exposed while in the US Navy from 1955 to 1959 and while working as a residential plumber from 1960 to 1972. He alleges exposure to boilers, pumps and valves. He was exposed on the USS Intrepid and then at various residences.

10.     Similarly, plaintiffs contend that James Director is deceased. He was exposed to wood fire doors and joint compound from 1969 to 1976. His exposure sites range from public schools to hospitals to powerhouses.

11.     Plaintiffs also affirm that Frederick Ritzer is deceased. He was a lifetime plumber who alleges exposure beginning in or about 1957. His exposure sites include many commercial buildings in the NY metropolitan area. He alleges exposure to rope, valves, packing and gaskets.

12.     Joseph Saccomano is deceased. He was exposed as a sheet metal worker from 1962 until 1983, and as a home inspector thereafter. He alleges exposure to pipe insulation, pumps valves, boilers, tiles, roofing and siding. His exposure sites range from powerhouses to airports to hospitals.

13.     According to plaintiffs, Jack Nacht is alive. Plaintiffs contend that Mr. Nacht was exposed through his activities as owner of a retail flooring company from 1946 to 1977. He alleges bystander exposure to flooring products at commercial and residential jobsites in Long Island and Queens, as well as from asbestos-containing pipe covering related to the boiler in the basement of his store.

14.     Similarly, Robert Sheppard is alive. Plaintiffs contend that Mr. Sherpard was exposed to friction products, building electrical equipment and ceiling tile. He was exposed to

friction products at his residences, in the United States military, as well as while working in the recording industry.

15.     Karl Felten is alive. Based upon plaintiffs' affirmation in support, Mr. Felton was exposed while working in the boiler room/power plant of Mt. Sinai Hospital from 1958 to 1997. Mr. Felton's exposures range from asbestos cement to pipe covering, gaskets, boilers, air conditioning units, chillers, turbines and pumps.

16.     As to Harvey Helfand, plaintiffs assert that he is alive. He was exposed as a typesetter in the 1950s and while involved in construction work between 1951 and 1970s. While working as a type setter, he alleges exposure to linotype machine and while in the construction field, joint plaster, ceiling tile and floor tile. Importantly, Plaintiff Helfand testified at his deposition that his alleged exposure continued into the year 2006. (*See* **Exhibit B** attached hereto).

17.     There are several issues that are specific to the *Holinka* case that support defendant's position that it should not be tried in conjunction with the other cases in this group, but should each be tried separately.

18.     First, the *Holinka* matter was assigned to this Court with the specific condition from the Special Master that it could not be scheduled for trial prior to August 2007, due to certain outstanding discovery issues between the parties. (*See* **Exhibit C** attached hereto).

19.     Those outstanding discovery issues were raised by counsel with Your Honor during the status conference on Friday, June 15, 2007, at which time Plaintiff's counsel acknowledged that the *Holinka* matter could not go to trial prior to August. As indicated in that conference, the parties have agreed to an extended discovery schedule as follows:

July 5, 2007:  Deposition of Dr. Strauchen to have been completed; however, plaintiffs have still not yet provided transcripts of Dr. Strauchen's prior testimony.

July 18, 2007: Deadline for Defendants to serve deposition notices for plaintiff's fact witnesses; Defendants to serve fact witness lists; and Independent Medical Exam of plaintiff to be completed;

July 30, 2007:  Defendants to serve expert witness reports; and

August 1, 2007:  Defendants to serve exhibit and expert witness lists.

20.    In addition, and as more fully detailed in the attached Memorandum of Law, the diverse nature of the plaintiffs' respective professions, the multitude of the exposure sites, the expansive times period involved, the various diseases from which the plaintiff and decedents suffered, and the disparity of the types and sources of alleged asbestos exposure require that these cases be tried separately.  Trying the *Holinka* case with the other eight cases will be highly prejudicial to the Lab Supply Defendants.

**WHEREFORE**, the Laboratory Supply Defendants respectfully request an Order pursuant to CPLR § 602(a) denying plaintiffs' request for a joint trial; an Order pursuant to CPLR § 603 severing the cases for separate trial; and for such other severing the *Holinka* case for a separate trial from the *Director, Felton, Helfand, Nacht, Ritzer, Saccomano, Bianco* and *Sheppard* cases and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 16, 2007

Greg A. Dadika

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 0850
(609) 987-0050
Attorneys for Defendant
ManorCare Health Services, Inc.

Exhibit A

# MAY 2007 – HON. MADDEN TRIAL GROUP

| NAME | STATUS & OCCUPATION | EXPERTS | REMAINING DEFS. |
|---|---|---|---|
| FRANK BIANCO<br><br>File #: 203268<br><br>Index # 115546-06 | MAY 2007<br><br>DECEASED -- MESO<br><br>ESTATE REP: CATHARINA (WIFE)<br><br>DOB: 1/6/38<br><br>DOD: 11/23/06    AGE AT DEATH: 68<br><br><u>Exposure:</u><br>• 1955-59: FIREMAN; USS INTREPID, BNY<br><br>• 1960-1970'S: RESIDENTIAL SITES | Path - POHL<br><br>Pulm - ROTHMAN | A.O. SMITH<br>AMER. STANDARD<br>AMCHEM<br>BELL & GOSSETT<br>BLACKMAN<br>BURNHAM<br>CLEAVER BROOKS<br>CRANE CO.<br>FAIRBANKS CO.<br>GOULDS<br>MANSFIELD<br>O.I.<br>PEERLESS<br>SID HARVEY<br>SUPERIOR<br>UNION CARBIDE<br>WEIL McLAIN |
| JAMES DIRECTOR<br><br>File #:203327<br><br>Index # 115923-06 | May 2007<br><br>DECEASED -- MESO<br><br>ESTATE REP:  Pending Estate Set Up<br><br>DOB: 4/10/54<br><br>DOD: 5/18/07    AGE AT DEATH: 53<br><br><u>Exposure:</u><br>• mid 1960's to 1980's:  CARPENTER;<br>DIRECTOR DOOR INDUSTRIES INC., (FAMILY<br>BUSINESS)--VARIOUS NYC HOSPITALS,<br>EDUCATIONAL & RESIDENTIAL FACILITIES;<br>SHOREHAM PWHS. | Path - Gil<br><br>Pulm - Moline | ALGOMA<br>AMCHEM<br>BLACKMAN<br>KAISER<br>THAN<br>UNION CARBIDE<br>WESTINGHOUSE |

| | | Path - / Pulm - | |
|---|---|---|---|
| **KARL FELTEN**<br>File #: 203219<br>Index #: 114005-06 | May 2007<br>LIVING -- MESO<br>ESTATE REP: N/A<br>DOB: 4/19/32<br>DOD: N/A    AGE: 75<br><br>**Exposure:**<br>• 1953: MECHANIC; MT. SINAI HOSPITAL (Machine Shop)<br><br>• 1954-58: MECHANIC; U.S. AIRFORCE (Germany)<br><br>• 1958-1991: MT. SINAI HOSPITAL (Power Plant & Engine Room) | Path - GIL<br><br>Pulm -<br><br>KRELLENSTEIN | AMCHEM<br>A.W. CHESTERTON<br>BELL & GOSSETT<br>BYRON JACKSON<br>CARRIER<br>COMPUDYNE<br>CRANE CO.<br>ERIE CITY/ZURN<br>GOODYEAR<br>GOULDS<br>MORSE DIESEL<br>O.I.<br>UNION CARBIDE<br>WESTINGHOUSE<br>YORK |
| **HARVEY HELFAND**<br>File #: 203394<br>Index #: 117176-06 | May 2007<br>LIVING -- MESO<br>ESTATE REP: N/A<br>DOB: 11/1/35<br>DOD: N/A    AGE: 71<br><br>**Exposure:**<br>• 1950's - 2006:<br>PRINTER APPRENTICE/PRESSMAN; UNITED OSSET CORP., RAMAPO LITHOGRAPH, MUREE PRES, SERVICE OFFSET, H&H MULTICOLOR, SPECTRUM PRINTING<br><br>•???-???: RESIDENTIAL CONSTRUCTION IN & AROUND NYC AREA | Path - DIKMAN<br><br>Pulm -<br><br>SCHACTER | AMCHEM<br>AMTICO<br>CERTAINTEED<br>HEIDELBERG<br>KAISER<br>KENTILE<br>MANNINGTON<br>O.I.<br>UNION CARBIDE |

| | | Path - STRAUCHEN | AMER. SCIENTIFIC<br>AMCHEM<br>CENCO<br>FISCHER SCIENTIFIC<br>O.I.<br>UNION CARBIDE<br>VWR |
|---|---|---|---|
| **CHRISTIAN HOLINKA**<br>File #: 203330<br>Index #: 114120-06 | May 2007<br>LIVING -- MESO<br>ESTATE REP: N/A<br>DOB: 7/7/37<br>DOD: N/A    AGE: 69<br><br>**Exposure:**<br>• 1959-1960: LAB TECHNICIAN; NY HOSPITAL CTR OF QUEENS<br>• 1960-1966: CHEMIST; UC BERKELEY (Physiology Research Lab)<br>• 1971-1974: CHEMIST; COLUMBIA UNIV, COLUMBIA PRESBYTERIAN HOSP.; SUNY STONYBROOK (Biological Science Lab)<br>• 1974-1977: CHEMIST; USC (Biological Lab), Los Angeles, CA<br>• 1977-1989: CHEMIST; MT. SINAI SCHOOL OF MEDICINE | Pulm - MOLINE | |
| **JACK NACHT**<br>File #: 203331<br>Index #: 114274-06 | May 2007<br>LIVING -- MESO<br>ESTATE REP: N/A<br>DOB: 4/3/23<br>DOD: N/A    AGE: 84<br><br>**Exposure:**<br>• 1946-1997: Dee-Jay Carpet; Self Employed | Path - STRAUCHEN<br><br>Pulm - SALISBURY | AMCHEM<br>AMTCO<br>AZROCK<br>GOODRICH<br>KENTILE<br>MANNINGTON<br>O.I.<br>UNION CARBIDE |

| | | Path - GIL | AMCHEM |
|---|---|---|---|
| **FREDERICK RITZER** | **May 2007** | | CRANE CO. |
| File #: 203263 | DECEASED - MESO | | FAIRBANKS CO. |
| | | Pulm - | HERCULES |
| Index #: 111328-06 | ESTATE REP: BARBARA W. RITZER (WIFE) | | O.I. |
| | | SCHACTER | UNION CARBIDE |
| | DOB: 5/1/39 | | |
| | DOD: 9/4/06    AGE: 67 | | |
| | **Exposure:** | | |
| | • 1957-2006: PLUMBER/PIPEFITTER EXXON BLDG, PORT AUTHORITY BUS TERM, WTC, BELLEVUE HOSPITAL, HBO BLDG, TRUMP PROJECTS, PARKER TOWERS, HUNTER COLLEGE, YANKEE STADIUM et al., | | |
| | • 1966: STEAMFITTER: BUDWEISER PLANT, NEWARK, NJ | | |
| | | Path - ZWANG | A.O. SMITH |
| **JOSEPH SACCOMANO** | **May 2007** | | AMER. STANDARD |
| File #: 203354 | DECEASED - MESO | | AMCHEM |
| | | Pulm - | BELL & GOSSETT |
| Index #: 113299-06 | ESTATE REP: DENISE NAGY (CHILD) | | BURNHAM |
| | | MOLINE | CARRIER |
| | DOB: 3/17/37 | | CERTAINTEED |
| | DOD: 11/28/06    AGE: 69 | | CON EDISON |
| | **Exposure:** | | CRANE CO. |
| | • 1962-1983: JOURNEYMAN/SHEETMETAL WORKER NORTHPORT, ASTORIA, 14TH St. PWHS, RAVENSWOOD, WTC, NYC HOSPITALS - INCL., SLOAN KETTERING, NYU, KINGSBRIDGE VA HOSPITAL (BRONX, NY), & TRUMP TOWERS, JFK AIRPORT, LINCOLN CTR. | | DUNKIRK |
| | | | KENTILE |
| | | | LILCO |
| | • 1983-1996: BUILDING INSPECTOR: VARIOUS RESIDENTIAL & COMMERCIAL BLDGS, BROOKHAVEN, NY | | UNION CARBIDE |
| | | | WEIL McLAIN |

| ROBERT M. SHEPPARD | May 2007 | Path - | AMCHEM |
|---|---|---|---|
| File #: 203436 | LIVING - MESO | DIKMAN | 3M |
| Index #: 117513-06 | | Pulm - | SQUARE D |
| | ESTATE REP: N/A | SCHACTER | UNION CARBIDE |
| | DOB: 8/16/58 | | |
| | DOD: N/A    AGE: 48 | Econ – | |
| | | BRIAN P. | |
| | Exposure: | SULLIVAN | |
| | • 1978: WELDER/MAINTAINENCE STAR DYNAMIC CORP., 100 OUTWATER LANE, GARFIELD, NJ | | |
| | • 1980: WELDER/MAINTAINENCE AEROLITE ELEC. CORP., 2207 SUMMIT AVE, UNION, NJ | | |
| | • 1982-1983 & 1985-1987: ENGINEER; RPM STUDIOS/A&R STUDIOS | | |

Exhibit B

Helfand v. Asbestos
January 29, 2007

Harvey Helfand
II



**Page 126**

```
 1            SUPREME COURT:  ALL COUNTIES
 2            WITHIN THE STATE OF NEW YORK
 3
 4   IN RE:  NEW YORK CITY        :
     ASBESTOS LITIGATION          :
                                  : DEPOSITION UPON
 5   This Document Applies To:    : ORAL EXAMINATION
                                  :      OF
 6   HARVEY HELFAND               : HARVEY HELFAND
                                  : (VOLUME II)
 7   -----------------------------:
 8
 9
10        T R A N S C R I P T of the deposition of
11   HARVEY HELFAND, called for Oral Examination in the above
12   entitled action, said deposition being taken pursuant to
13   Rules governing Civil Practice in the Courts of New York,
14   by and before KERRY D. HALPERN, a Notary Public and
15   Shorthand Reporter of the State of New York, at the
16   residence of Mr. Helfand, 19 Birmingham Lane, Jamesburg,
17   New Jersey 08831, on Monday, January 29, 2007, commencing
18   at 11:15 a.m.
19
20
21
22
              Priority-One Court Reporting Services
23                    899 Manor Road
                 Staten Island, New York 10314
24                    (718) 983-1234
25
```

**Page 127**

```
 1   A P P E A R A N C E S:
 2   FOR THE PLAINTIFF:
 3   WEITZ & LUXENBERG, P.C.
     BY:  DAVID CHANDLER, ESQ.
 4   180 Maiden Lane
     17th Floor
 5   New York, New York 10038
 6
     FOR THE DEFENDANT ROBERT A. KEASBEY:
 7
     WEINER LESNIAK LLP
 8   BY:  MATTHEW R. STRAUS, ESQ.
     888 Veterans Memorial Highway
 9   Hauppauge, New York 11788
10
     FOR THE DEFENDANT CBS:
11
     MALABY, CARLISLE & BRADLEY, LLC
12   BY:  EVA WAYNE, ESQ.
     150 Broadway
13   New York, New York 10038
14
     FOR THE DEFENDANT INGERSOLL RAND:
15
     PEHLIVANIAN, BRAATEN & PASCARELLA, LLC:
16   BY:  MICHELE MITTLEMAN, ESQ.
17   2430 Route 34
     Manasquan, New Jersey 08736
18
19   FOR THE DEFENDANT MANNINGTON MILLS:
20   HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
     BY:  JOHN T. FOJUT, ESQ.
21   40 Paterson Street
     Box 480
22   New Brunswick, New Jersey 08903
23
24
25
```

**Page 125**

```
 1        IT IS HEREBY STIPULATED AND AGREED
 2   by and between the attorneys for the respective parties
 3   hereto that filing, sealing and certification of the
 4   within Examination Before Trial be waived; that all
 5   objections, except as to form, are reserved to the time
 6   of trial.
 7        IT IS FURTHER STIPULATED AND AGREED
 8   that the transcript may be signed before any Notary
 9   Public with the same force and effect as if signed before
10   a Clerk or Judge of the Court.
11        IT IS FURTHER STIPULATED AND AGREED
12   that the within examination may be utilized for all
13   purposes as provided by the CPLR and Part 221 of the
14   Uniform Rules for the Conduct of Depositions.
15        IT IS FURTHER STIPULATED AND AGREED
16   that all rights provided to all parties by the CPLR shall
17   not be deemed waived and the appropriate sections of the
18   CPLR shall be controlling with respect thereto.
19        IT IS FURTHER STIPULATED AND AGREED by and
20   between the attorneys for the respective parties hereto
21   that a copy of this Examination shall be furnished,
22   without charge, to the attorney representing the witness
23   testifying herein.
24
25
```

**Page 127**

```
 1   FOR THE DEFENDANT HEIDELBERG USA, INC.:
 2   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
     BY:  CHRISTINE MONTENEGRO, ESQ.
 3   1633 Broadway
     22nd Floor
 4   New York, New York 10019
 5
     FOR THE DEFENDANT KENTILE FLOORS, INC.:
 6
     HARRIS BEACH PLLC
 7   BY:  SARA MURPHY, ESQ.
     805 Third Avenue
 8   20th Floor
     New York, New York 10022
 9
     FOR THE DEFENDANT KAISER GYPSUM:
10
11   DeCICCO, GIBBONS & McNAMARA, P.C.
     BY:  MICHAEL J. SWEENEY, ESQ.
12   14 East 38th Street
     New York, New York 10016
13
14
     FOR THE DEFENDANT HARRIS:
15
     HOLLAND & KNIGHT, LLP
16   BY:  RICHARD MENCHINI, ESQ.
     195 Broadway, 25th Floor
17   New York, New York 10007
18
     FOR THE DEFENDANT GOODRICH COMPANY:
19
     SMITH STRATTON, WISE, HELTER & BRENNAN, LLP
20   BY:  OMAR CHAVEZ, ESQ.
     2 Research Way
21   Princeton, New Jersey 08540
22
23
24
25
```

1 (Pages 124 to 127)

6e7515fc-3489-4c11-8c83-4267d9829841

Helfand v. Asbestos
January 29, 2007

Harvey Helfand
II

---

**Page 128**

| | |
|---|---|
| 1 | FOR THE DEFENDANT GENERAL ELECTRIC: |
| | FOR THE DEFENDANT FOSTER WHEELER: |
| 2 | |
| 3 | SEDGWICK, DETERT, MORAN & ARNOLD, P.C. |
| | BY:  DENNIS VEGA, ESQ. |
| 4 | 3 Gateway Center |
| | 12th Floor |
| | Newark, New Jersey 07102 |
| 5 | |
| 6 | FOR THE DEFENDANT AMERICAN BILTRITE: |
| 7 | KUROWSKI, BAILEY & SHULTZ, LLC |
| | BY:  ROBERT C. ANDERSON, ESQ. |
| 8 | 24 Bronze Pointe |
| | Swansea, Illinois 62226 |
| 9 | |
| 10 | FOR THE DEFENDANT GEORGIA PACIFIC: |
| 11 | MARKS, O'NEILL, O'BRIEN AND COURTNEY, P.C. |
| | BY:  RACHAEL SNYDER, ESQ. |
| 12 | Cooper River West |
| | 6981 N. Park Drive, Suite 300 |
| 13 | Pennsauken, New Jersey 08110 |
| 14 | |
| 15 | FOR THE DEFENDANT ANCHEN: |
| | FOR THE DEFENDANT CERTAINTEED: |
| | FOR THE DEFENDANT UNION CARBIDE: |
| 16 | |
| 17 | ANDERSON, KILL & OLICK, P.C. |
| | BY:  SANDRA STEINMAN, ESQ. |
| 18 | 1251 Avenue of the Americas |
| | New York, New York 10020-1182 |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

---

**Page 130**

(blank, lines 1–25)

---

**Page 129**

I N D E X

WITNESS:  HARVEY HELFAND

| EXAMINATION | PAGE |
|---|---|
| MS. WAYNE | 131 |
| MS. MONTENEGRO | 162 |
| MR. ANDERSON | 196 |
| MR. FOJUT | 229 |
| MS. MURPHY | 236 |

EXHIBITS:

| NUMBER | DEFENDANT'S DESCRIPTION | PAGE |
|---|---|---|

QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:
    PAGE LINE
    None

INFORMATION TO BE SUPPLIED:
    PAGE LINE
    164-4

---

**Page 131**

MOVE TO STRIKE:
    PAGE LINE
    213-3
    213-6
    213-14
    232-2
    251-16

MARK FOR RULING:
    PAGE LINE
    None

---

2 (Pages 128 to 131)

6e7515fc-3489-4c11-8c83-4267d9829841

Helfand v. Asbestos
January 29, 2007

Harvey Helfand
II

---

Page 132

1               HARVEY HELFAND,
2          having first been duly sworn, was
3          examined and testified as follows:
4
5               EXAMINATION
6
7    BY MS. WAYNE:
8          Q.    Good morning, sir.
9          A.    Good morning.
10         Q.    We met last week.  My name is Eva Wayne.
11   I am from the law firm of Malaby, Carlisle & Bradley, and
12   I will be asking you some more questions today.
13         A.    Okay.
14         Q.    After I am finished, some of the other
15   attorneys in the room may have some additional questions
16   for you.
17               Before we get started, I just want to
18   review a couple of the rules for today's deposition.
19         A.    Okay.
20         Q.    If you don't understand any question
21   that I ask you, please tell me that, and I will rephrase
22   the question for you.  If you answer my question, I am
23   going to assume that you understood it.
24               Do you understand that direction, sir?
25         A.    Yes.

---

Page 133

1          Q.    Also, I ask you to verbalize all your
2    answers.  The court reporter needs to take everything
3    down.
4          A.    Okay.
5          Q.    If you need a break at any time, please
6    let either David or myself know and you can have as many
7    breaks as you need throughout the day today.
8          A.    Thank you.
9          Q.    For our purposes here today, I don't
10   know is a perfectly acceptable answer.  If you don't know
11   the answer to anything that I ask you, please tell me
12   that and we will move on to the next question, okay?
13         A.    Okay.
14         Q.    Do you understand those instructions,
15   sir?
16         A.    Yes.
17         Q.    Did you take your blood pressure
18   medication this morning?
19         A.    Yes, I did.
20         Q.    Did you take your Prilosec this morning?
21         A.    Yes, I did.
22         Q.    Did you take your folic acid this
23   morning?
24         A.    Yes, I did.
25         Q.    Did you take your, I believe it is,

---

Page 134

1    Metoprolol --
2          A.    Yes, I did.
3          Q.    -- this morning?
4                Did you take Paxil this morning?
5          A.    Yes, I did.
6          Q.    Are there any other medications that you
7    have taken today that I didn't just mention?
8          A.    Yes.
9          Q.    What medication?
10         A.    Do you want the name or just tell you
11   what it is.  It is a steroid.
12         Q.    If you know the name, tell me the name,
13   but if you don't tell me what it's for.
14         A.    It's just a steroid.  I take it the day
15   before I go for chemo, which I am going to tomorrow, so I
16   take a steroid, Dexamethasone, something like that.  I
17   don't know exactly what it is.
18         Q.    Do you take any additional medication
19   other than that steroid this morning?
20         A.    No, ma'am.
21         Q.    Will you be taking your Flomax later
22   today?
23         A.    Yes, I will.
24         Q.    Did you take any pain medications today?
25         A.    No, I didn't.

---

Page 135

1          Q.    Do you believe that any of the medicines
2    that you have taken will affect your ability to testify
3    in any way?
4          A.    No.  I do not.
5          Q.    Other than speaking with your attorney,
6    which I don't want to know anything about, did you do
7    anything else to prepare for today's deposition?
8          A.    No.  I did not.
9          Q.    Did you look at any documents?
10         A.    No.  I did not.
11         Q.    Did you look at any pictures?
12         A.    No.  I did not.
13         Q.    I want to take you back to your work
14   history.  That's where we are going to pick up today.
15         A.    Okay.
16         Q.    I believe last time you said that you
17   worked for a company by the name of Triple M.  Is that
18   correct?
19         A.    That is correct.
20         Q.    Where were they located?
21         A.    I think the address is 229 West 29th
22   Street, Manhattan.
23         Q.    What year or years did you work for
24   Triple M?
25         A.    After Ross.  I don't remember what the

---

3 (Pages 132 to 135)

Page 144

1    A.    Yes.  Peter Mandelkern (phonetic).  He's
2  a principal.
3            Do you want all of them?
4    Q.    Just list them, please?
5    A.    Karen Targof (phonetic), again, another
6  principal.
7    Q.    Okay?
8    A.    Herb Ruder (phonetic), Mark Siegel, Lori
9  Nordstrom.  I have to think about this, Elizabeth Conti.
10  I think that is it.
11    Q.    Okay.
12            How long had you planned to continue
13  working?
14    A.    Until I died.
15    Q.    Did you have any plans for retirement at
16  any point?
17    A.    No.
18    Q.    Your Answers to Interrogatories reflect
19  that you did residential construction in and around the
20  New York City area.
21            Is this work that you did during a
22  specific time period?
23    A.    Various.  For all these jobs, certain
24  dates that I gave you in hindsight, you know, they may
25  not be exactly accurate because between a job here and

Page 145

1  there I might have taken off.  I don't remember which
2  period, you know, which jobs.  But, I have taken off,
3  like, two years, and I have done home improvements, and I
4  have done home improvements within the times that I was
5  working.  Home improvements, I did it not only for the
6  extra money, but I did it because I really love to do it.
7  It was my pleasure.  So, I would do a lot of jobs.  I
8  didn't basically -- you know, I didn't have a specific
9  time.
10    Q.    Do you recall the names of any of your
11  employers that you did home improvement work for?
12    A.    Employers?
13    Q.    Uh-hmm.
14    A.    No.  I didn't do -- I never -- I never
15  did a home improvement job for any of my employers for
16  money.  In other words, if I had -- well, even at
17  Spectrum, if I worked at Spectrum, I know they had very,
18  very poor tables, you know, work facilities, so I built
19  tables.
20    Q.    Let me ask the question in a different
21  way, then.
22            Can you list for me any of the job site
23  locations where you did any improvement-type work?
24    A.    No.
25    Q.    Did you do this home improvement work --

Page 146

1  withdrawn.
2            Do you recall the first decade you
3  started to do this home improvement work?
4    A.    I started to do home improvement work
5  when I was about 15-years old.
6    Q.    When is the last time you did any of
7  this type of work?
8    A.    Maybe a year ago.
9    Q.    I just want to make sure that I
10  understand what you are saying.
11            You can't recall any specific job site
12  locations where you did this work.  Is that correct?
13    A.    Correct.
14    Q.    As you sit here today, you can't
15  remember any of the people that you did this work for or
16  any of the employers that you did this work for.  Is that
17  correct?
18    A.    Well, when you said "employers," I took
19  for granted you meant people that I was working for at
20  the time.
21    Q.    Well, I am asking you.  I am just trying
22  to find out --
23    A.    No.  I really don't know.  I don't know.
24  I could tell you what I did the last year or, you know,
25  two years ago or, you know -- that I could tell you.

Page 147

1  But, you know, going back, I don't really remember.
2    Q.    What type of work would you do?
3    A.    I would do basements, kitchens,
4  renovations --
5            (Interruption at door.)
6            MS. WAYNE:  Off the record.
7            (A short recess was taken.)
8    Q.    Sir, I had asked you what type of work
9  you did and I believe you said you did basements,
10  kitchens, renovations.
11            Did you do any other type of work?
12    A.    Paint.  I don't know.  Just general
13  contracting, not major contracting.  You know, I didn't
14  put additions on houses, but other than that.  I did
15  demolition, you know, cleaning out.  I told you,
16  finishing basements.
17    Q.    Was this basically all renovation work
18  that you did?
19    A.    Yes.
20    Q.    Was any of it new construction?
21    A.    No.  They were all old, you know,
22  ripping down the old stuff and modernizing it.
23    Q.    Was this done in residential locations?
24    A.    99 percent of it was, yes.
25    Q.    What was the other one percent?  What

6 (Pages 144 to 147)

Helfand v. Asbestos
January 29, 2007

Harvey Helfand
II

**Page 148**

1 was the location?
2     A.    I did a little work in somebody's
3 factory, something like that.
4     Q.    So, one percent would be commercial
5 locations?
6     A.    Yeah.
7     Q.    Would it be pretty much the same type of
8 work in the commercial locations?
9     A.    Yes.
10     Q.    Do you believe you were exposed to
11 asbestos in the course of doing any of this work?
12     A.    Positively.
13     Q.    Did you personally handle any
14 asbestos-containing products?
15     A.    Yes.
16     Q.    What products did you personally handle?
17     A.    Well, I was always exposed to
18 pipecovering because, you know, boiler wraps, pipe
19 coverings, old ceilings. You know, the Celotex ceilings,
20 Armstrong. Not only did I put up myself, but the stuff
21 that was there that we ripped down, so I know that, you
22 know -- now, I know it. In fact, when you rip it down,
23 you know, it gets dusty, dirty. That's what -- I guess
24 that's what just did me in.
25     Q.    The pipecovering products, did you

**Page 149**

1 personally handle that product?
2     A.    Partially, yes.
3     Q.    And you said pipe covering and boiler
4 wraps.
5     Are those two separate products or is
6 that the same product?
7     A.    I don't know the consistency of what the
8 product is. All I know is, like, if I redid a job and I
9 had to remove the pipe wraps, you know, the -- that would
10 be it, that's asbestos. I know now. Again, like a
11 boiler wrap. When I say "a boiler wrap," it's the cast
12 around the boiler and the pipes. You know, it's like a
13 cast on your foot. Again, I didn't know what it was
14 then. I just ripped it.
15     Q.    The pipecovering, was that material
16 already in place?
17     A.    Yes.
18     Q.    Did you know what the brand name, trade
19 name or manufacturer name of that pipecovering product
20 was?
21     A.    I really don't know.
22     Q.    Did you ever have to install new
23 pipecovering?
24     A.    Later on. You know, I am going back to
25 the beginning of my so-called career. Towards the end of

**Page 150**

1 my career or midway through my career, I put
2 pipecoverings on, but not asbestos. You know, we would
3 be running pipes and just cover it with a plastic or
4 whatever the hell it is made of. I don't know what it is
5 made of.
6     Q.    What did the old pipecovering look like?
7     A.    The old pipecovering looked like -- it
8 looked like a cast. Sometimes it had the strap around
9 it. Other times, it was just the plastic cast.
10     Q.    What color was it?
11     A.    I guess it was white. I remember white.
12 You know, it could have been beige. I really don't know.
13 White is as I remember it, and half the time it was,
14 like, a hundred years old and it was dirty. So, as far
15 as I know, it was white.
16     Q.    The boiler wrap product, do you know
17 what the brand name, trade name or manufacturer name of
18 what that product was?
19     A.    I have not a clue.
20     Q.    What did it look like?
21     A.    Again, it looked like somebody took clay
22 or plaster and packed the boiler.
23     Q.    Was it sort of a molded-on product?
24     A.    Molded-on, you mean smooth?
25     Q.    Not necessarily smooth, but --

**Page 151**

1 withdrawn.
2     What color was it?
3     A.    What color was it?
4     I think, again, it was light colored. I
5 don't know. I would have to say white. I couldn't swear
6 to it, beige, white, like, a lightish color.
7     Q.    Did you ever have to personally handle
8 that product?
9     A.    Yes.
10     Q.    What did you do with it?
11     A.    Broke it up. You know, I had to break
12 it up to take -- like, if we had.to remove a boiler or
13 something or remove certain portions of it to remodel, I
14 had to break up that portion.
15     Q.    You said that you were exposed to
16 asbestos as a result of old ceilings.
17     Specifically, what about the old ceiling
18 are you referring to?
19     A.    Well, many times I had to rip down a
20 ceiling that was leaking. You know, it was
21 deteriorating. It was breaking apart. I had to rip that
22 dawn to replace it, which is you know, very dirty, and
23 putting up new ceilings. Even putting up new ceilings,
24 you put up a Celotex or an Armstrong ceiling and you have
25 got to cut them.

7 (Pages 148 to 151)

Helfand v. Asbestos
January 29, 2007

Harvey Helfand
II

Page 256

1        REPORTER'S CERTIFICATE
2
3        I, Kerry D. Halpern, Shorthand Reporter,
4    certify;
5        That the foregoing proceedings were taken
6    before me at the time and place therein set forth, at
7    which time the witness was put under oath by me;
8        That the testimony of the witness and all of
9    the objections made at the time of the examination were
10   recorded stenographically by me and were thereafter
11   transcribed;
12       That the foregoing is a true and correct
13   transcript of my shorthand notes so taken.
14       I further certify that I am not a relative or
15   employee of any attorney or of any of the parties, nor
16   financially interested in the action.
17       I declare under penalty of perjury under the
18   laws of the State of New York that the foregoing is true
19   and correct.
20       Dated this 29th day of January, 2007.
21
22
23       KERRY D. HALPERN, Shorthand Reporter
24
25

Page 258

1    REPORTER'S CERTIFICATION OF CERTIFIED COPY
2
3        I, KERRY D. HALPERN, Shorthand Reporter in the
4    State of New York, certify that the foregoing pages 124
5    through 256, constitute a true and correct copy of the
6    original deposition of HARVEY HELFAND, taken on January
7    29, 2007.
8        I declare under the penalty of perjury under
9    the laws of the State of New York that the foregoing is
10   true and correct.
11       Dated the 29th day of January, 2007.
12
13
14       KERRY D. HALPERN, Shorthand Reporter
15
16
17
18
19
20
21
22
23
24
25

Page 257

1    STATE OF              )
2    COUNTY OF            ) SS.
3
4
5        I, the undersigned, declare under penalty of
6    perjury that I have read the foregoing transcript, and I
7    have made any corrections, additions, or deletions that I
8    was desirous of making; that the foregoing is a true and
9    correct transcript of my testimony contained therein.
10
11
12   EXECUTED this _____ day of _____, 2007, at
13   _____,  _____.
              City          State
14
15
16
           WITNESS:
17               HARVEY HELFAND
18
19
20
21
22
23
24
25

34 (Pages 256 to 258)

Exhibit C

From: Laraine Brokaw [pacheco18@comcast.net]
Sent: Monday, June 04, 2007 11:54 AM

Subject: Trial Assignments

Because of time constraints for Tuesday's Designation Conference, Judge Freedman has asked me to notify all attorneys of trial assignments by email.

Weltz May 2007 Mesothelioma cases to Judge Madden Status Conference June 15, 2 pm

Bianco
Director
Felton
Helfand
Holinka – case may not be tried until August 2007 Nachi Ritzer Saccamano Sheppard

Weltz May 2007 Lung Cancer cases to Judge York (date TBA) Alexander Sherman

I HAVE INVESTIGATED EVERY ALLEGED DISCOVERY ISSUE AND I BELIEVE DISCOVERY IS LARGELY COMPLETE OR CAN BE COMPLETED WITHIN A SHORT TIME. FEEL FREE TO RAISE ANY ADDITIONAL ISSUES WITH THE TRIAL JUDGE.

Early & Strauss May 2007 cases to Judge Freedman Date TBA

Cohen
Kimball
Litherland

Early & Strauss August 06 and February 07 FIFO cases to Judge Freedman Date TBA

Belluck & Fox May 2007 cases to Judge Kornreich Status Conference June 15, 10 am

Corbin, Elaine
Craney, Daniel
Holmes, Roger
Horsham, Donald J.
O'Brien, William
Puleo, Benjamin
Ringel, Isidore
Saronka, Alfred R.
Soria, Michael R.
Valentine, Robert


BY THIS EMAIL I AM ASKING EARLY & STRAUSS, BELLUCK & FOX AND WEITZ & LUXENBERG TO PROVIDE THE FULL NAME AND INDEX NUMBERS OF ALL REFERENCED CASES TO TOM SCHIEL SO THAT HE MAY ARRANGE FOR IMMEDIATE TRANSFER OF THE CASES


NOTE: FOR FUTURE CLUSTERS, JUDGE FREEDMAN PLANS TO ASSIGN CASES TO JUDGES ACCORDING TO THE SCHEDULE SET FORTH IN THE CMO -- MAY CASES IN MAY, NOVEMBER CASES IN NOVEMBER, RATHER THAN WAIT FOR THE DESIGNATION CONFERENCE A MONTH LATER. THIS WILL HELP THE MANY DEFENDANTS WHO TELL ME THAT THEY ARE UNABLE TO GET ANY AUTHORITY TO SETTLE UNTIL THE CASE IS ASSIGNED TO A JUDGE. PLAN TO COMPLETE YOUR DISCOVERY ACCORDINGLY.