SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x
                                                               :
In Re: NEW YORK CITY ASBESTOS LITIGATION                       :  Hon. Joan Madden
                                                               :  (Part 11)
---------------------------------------------------------------x
This Document Relates To:                                      :  Index No. 114120-06
                                                               :
CHRISTIAN HOLINKA,                                             :
                                                               :
    Plaintiff                                                 :
                                                               :
  -against-                                                     :
                                                               :
A.W. CHESTERTON COMPANY, et al.,                               :
                                                               :
    Defendants.                                               :
                                                               :
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF THE LABORATORY SUPPLY DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S EXPERTS, DRS. MOLINE AND STRAUCHEN, FROM TESTIFYING THAT THE BUNSEN BURNER PADS AND HEAT MITTENS AT ISSUE CAUSED PLAINTIFF'S MESOTHELIOMA

Defendants Baxter Healthcare Corporation (alleged to be a successor in interest to American Hospital Supply Corp. and American Scientific Products) ("Baxter"), ManorCare Health Services, Inc. (alleged to be a successor in interest to Central Scientific Company, a division of Cenco, Inc.) ("ManorCare"), Fisher Scientific International Inc. ("Fisher"), VWR International, Inc. ("VWR") and Univar USA Inc. ("Univar") (collectively, "Defendants") respectfully submit this memorandum of law in support of their joint motion *in limine* to preclude two of Plaintiff's experts, Dr. Jacqueline Moline and Dr. James Strauchen, from offering any testimony that the Bunsen burner pads and heat mittens at issue caused Plaintiff's mesothelioma. This Court should grant Defendants' motion *in limine* because the only evidence in the record is that the levels of asbestos fibers to which Plaintiff would have been exposed during his career as a result of using pads and mittens were insufficient to cause mesothelioma.

## **PRELIMINARY STATEMENT**

In this products liability case, plaintiff Christian Holinka ("Plaintiff") alleges that Defendants[1] (or their alleged respective predecessors) supplied Bunsen burner pads and heat-resistant mittens to various laboratories in which Plaintiff studied, researched, and/or worked over a thirty year period. Plaintiff claims that his exposure to asbestos fibers from those two products caused him to develop mesothelioma. As with any toxic tort based products liability case, Plaintiff must prove that he was exposed to a sufficient level of asbestos to cause his alleged illness, more commonly referred to as "specific causation." *See Parker v. Mobil Oil Corp.*, 7 N.Y. 3d 434, 448, 857 N.E.2d 1114, 1120-21, 824 N.Y.S. 2d 584 (2006).

In support of his allegations here, Plaintiff has produced two experts, Drs. Moline and Strauchen, both of whom have authored reports that baldly conclude that Plaintiff's exposure to asbestos contained within the pads and mittens he used during his career caused Plaintiff to develop mesothelioma. Despite attempting to offer specific causation testimony regarding the asbestos fibers allegedly contained in the pads and mittens at issue, neither expert offers any opinion as to the actual or estimated levels of asbestos exposure that Plaintiff likely would have sustained when he used those pads and mittens. Dr. Moline's and Dr. Strauchen's failure to opine regarding the levels of asbestos exposure to which Plaintiff likely would have been exposed during his career is no oversight. Plaintiff's counsel has advised that Drs. Moline and Strauchen will not testify regarding fiber release from asbestos-containing pads and mittens.

---

[1] However, Univar USA Inc. contends that it is not a successor to the lab supply business of Van Waters & Rogers.

As such, the only evidence regarding plaintiff's exposure levels is the opinion of Defendants' industrial hygiene expert, Robert Adams. Mr. Adams has submitted a scientifically reliable report demonstrating that the level of asbestos fibers to which Plaintiff would have been exposed during his alleged use of Bunsen burner pads and mittens would be well below ambient environmental levels and, thus, could not cause mesothelioma. As such, Mr. Adams' testimony is the only competent testimony on the issue of specific causation, and therefore, Plaintiff has no ability to prove that his use of the products at issue specifically caused his mesothelioma. Such a glaring shortcoming renders both Plaintiff's experts' conclusions unreliable, and both experts should be precluded from rending an opinion on specific causation related to the pads and mittens at issue.

This Court should preclude Dr. Strauchen and Dr. Moline from testifying that the pads and mittens at issue caused Plaintiff's mesothelioma because the only credible evidence contained in the record is that the levels of asbestos to which Plaintiff would have been exposed during his career as a result of using pads and mittens was insufficient to cause mesothelioma. Without being able to properly counter such testimony, Plaintiff's expert opinions regarding causation in this matter are nothing more than mere guesswork and speculation.

## STATEMENT OF FACTS AND ISSUES

In this matter, Plaintiff has offered two experts, Drs. Strauchen and Moline, who seek to offer opinions that Plaintiff's exposure to Bunsen burner pads and mittens caused his mesothelioma. (*See* Affirmation of Greg A. Dadika, Esq. ("Dadika Aff."), Exhs. A & B). Dr. Jacqueline Moline is a physician who specializes in occupational and environmental medicine. (*See id.*, Exh. C). She also has a background related to internal medicine. (*See id.*) Throughout her career, Dr. Moline has taught classes and programs focused upon occupational,

environmental, and internal medicine. (*See id.*) As far as can be discerned from the credentials provided by Plaintiff, Dr. Moline has no experience or training in industrial hygiene or in conducting experiments or research so as to determine the level of asbestos generated through the use of any type of asbestos containing product, and more specifically through the ordinary use of laboratory products. Nonetheless, Dr. Moline opines in this matter that "Dr. Holinka's mesothelioma is a result of his exposures to asbestos while working in a variety of laboratories, where he had exposure to asbestos containing pads and mittens." (*See id.*, Exh A, p. 3).

Dr. Strauchen is a pathologist at Mt. Sinai School of Medicine. (*See id.*, Exh. D). In addition to his background in pathology, Dr. Strauchen has board certifications in internal medicine, oncology, and hematology. (*See id.*) Further, his academic background similarly focuses on pathology and internal medicine. (*See id.*) Dr. Strauchen apparently does not have any background in industrial hygiene or in conducting experiments or research so as to determine the level of asbestos generated through the use of any type of asbestos containing product, and more specifically through the ordinary use of laboratory products. Despite this, Dr. Strauchen baldly opines that Plaintiff's mesothelioma was caused by his "history of occupational asbestos exposure as indicated in his deposition testimony . . . ." (*See id.*, Exh. B, p. 3).

The deposition testimony relied upon to support the opinions that Plaintiff's mesothelioma was caused by exposure to Bunsen burner pads and mittens is minimal. When asked to describe how he believed he was exposed to asbestos through his use of Bunsen burner pads, Plaintiff testified that "[t]he asbestos gradually becomes brittle due to the high heat and the heat moves the air really *and one would expect* that dust particles would be generated." (*See* Dadika Aff., Exh. E, Excerpts from Transcript Volume II of Deposition of Christian Holinka ("2T"), 2T15:20-13) (emphasis added). Plaintiff repeated the same general, generic testimony

regarding the creation of an unspecified level of "dust" by the Bunsen burner pads for the other locations in which he had been schooled and/or worked. (*See id.*, 2T27:16-19 (stating that pads at University of California at Berkeley became brittle and generated "dust"); *see also* 2T37:11-13 (stating that pads used in chemistry and physiology classes at Berkeley generated dust); 2T68:6-9 (stating that when heated, pads "emitted dust.")). Similarly, as to the mittens, Plaintiff once again stated that heat would have a deteriorating effect upon the mittens, which he believes caused "dust" and "debris" to be released from the mittens. (*See id.*, 2T171:17 to 172:8). Importantly, other than his generic references to the creation of "dust" through his routine use of the pads and mittens, at no time did Plaintiff specifically articulate or quantify the level of "dust" he claims was created by those pads.

Based, in part, upon scientific studies and Plaintiff's testimony, Defendants have provided the expert report of Robert Adams, a certified industrial hygienist. Mr. Adams opines, among other things, that Plaintiff's exposure to asbestos fibers through his use of Bunsen burner pads and mittens would have been no higher than ambient or background exposure levels as commonly seen within urban environments, and would have been well below NIOSH and OSHA limits. (*See* Dadika Aff., Exh. F). As such, the only competent evidence contained within the record on the issue of specific causation is the report of Defendants' expert, Mr. Adams, who indicates that due to the minimal level of asbestos fiber exposure released by a Bunsen burner pad and mittens in their ordinary use, Plaintiff's mesothelioma could not have resulted from his use of those products. (*See id.*)

## LEGAL ARGUMENT

I. **THIS COURT SHOULD PRECLUDE DR. MOLINE AND DR. STRAUCHEN FROM TESTIFYING AS TO SPECIFIC CAUSATION BECAUSE THE ONLY COMPETENT EVIDENCE IN THE RECORD DEMONSTRATES THAT PLAINTIFF'S LEVEL OF EXPOSURE TO ASBESTOS THROUGH THE PADS AND MITTENS COULD NOT HAVE CAUSED HIS MESOTHELIOMA**

A. **The *Frye* Standard**

Although the admissibility of expert evidence is left to the sound discretion of the trial court, *People v. Brown*, 97 N.Y.2d 500, 769 N.E.2d 1266, 743 N.Y.S.2d 374 (2002), New York Courts have adopted the standard set forth in *Frye v. United States* regarding the admissibility of expert evidence. In *Frye*, the Court set forth the following rule governing the admissibility of expert testimony:

> [O]pinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject-matter so far partakes of a science, art, or trade as to require a previous habit or experience or study in it, in order to acquire a knowledge of it. When the question involved does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge, then the opinions of witnesses skilled in that particular science, art, or trade to which the question relates are admissible in evidence.

*Frye v. United States*, 54 App. D.C. 46, 293 F. 1013, 1014 (D.C. Cir. 1923).

The standard set forth in *Frye* was adopted by the New York Court of Appeals in *People v. Wesley*, which stated in relevant part, that "[t]he long-recognized rule of *Frye* . . . is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance' in its specified field. *People v. Wesley*, 83 N.Y.2d 417, 633 N.E.2d 451, 611 N.Y.S.2d 97 (1994).

### B.   Establishing Causation Under New York Law

"It is well established that an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)." *Parker v. Mobil Oil Corp.*, 7 N.Y. 3d 434, 448, 857 N.E.2d 1114, 1120-21, 824 N.Y.S. 2d 584 (2006). While it is not necessary for a causation expert to quantify precise exposure levels, *see id.*, an expert testifying as to causation in a toxic tort matter must objectively establish a proper "scientific expression of [the plaintiff's] exposure level." *See id.* at 449, 857 N.E. 2d at 1122. General, subjective, and conclusory assertions of excessive exposure are insufficient to meet this burden. *See id.* Therefore, while it is not always necessary to establish precise exposure levels, in accordance with *Frye* the expert must demonstrate that the method by which he or she established causation is generally accepted in the scientific community. *Id.* at 448; 857 N.E.2d at 1121.

### C.   The Evidence in the Record Cannot Support the Opinion that Plaintiff was Exposed to a Level of Asbestos From Pads and Mittens Sufficient to Cause Mesothelioma

This Court should preclude Drs. Strauchen and Moline from testifying as to specific causation because they make no effort to establish a "scientific expression" of plaintiff's exposure level. The only competent evidence in the record regarding plaintiff's exposure level is the opinion of Defendants' expert Robert Adams – which Plaintiff does not refute – who establishes that Plaintiff's level of asbestos fiber exposure through the routine use of pads and mittens was below the ambient exposure associated with urban environments and, thus, could not have been the cause of his mesothelioma.

The lack of proper causation testimony was recently addressed by the New York Court of Appeals in *Parker*, which affirmed the dismissal of a toxic tort complaint for the plaintiff's failure to present proper specific causation evidence. In *Parker*, the plaintiff, who was a gasoline attendant for two decades, alleged that exposure to benzene contained within gasoline products to which he was exposed caused him to develop acute myelogenous leukemia ("AML"). *See* 7 N.Y. 3d at 442, 857 N.E.2d at 1116. As noted by the *Parker* Court, there was no dispute between the parties of the carcinogenic tendencies of benzene. *Id.*

At trial, the defendants moved to preclude the plaintiff's expert testimony on the issue of medical causation as scientifically unreliable under *Frye*. *Id.* at 442; 857 N.E.2d at 1117. Specifically, the defendants argued that low levels of benzene exposure from gasoline service work were below the necessary threshold dose levels to cause AML. *Id.* at 443; 857 N.E.2d at 1117. In opposition to the motion, the plaintiff argued that the fact that benzene exposure can cause leukemia is not novel science, and that there was a mere difference of opinion in the scientific community as to what level of exposure causes leukemia. *Id.* at 444; 857 N.E.2d at 1118. The trial court denied the defendants' motion. On appeal, the Appellate Division reversed the decision of the trial court and dismissed Plaintiff's complaint. *Id.* at 446; 857 N.E.2d at 1119. The Court of Appeals affirmed the dismissal by the Appellate Division. *Id.*

In affirming the Appellate Division's decision, the Court of Appeals held that while precise levels of exposure do not need to be established to prove causation, a plaintiff's causation expert must quantify exposure levels in a method that is generally accepted within the scientific community. *Id.* at 448; 857 N.E.2d at 1121. According to the Court of Appeals, an expert can establish the dosage at which a substance is toxic through a number of possible methods such as: (i) establishing the exact level of exposure sustained by a plaintiff; (ii) establishing the intensity

of exposure; (iii) estimating the exposure through the use of mathematical modeling; or (iv) by qualitatively comparing the exposure levels of the subjects of other studies to the plaintiff, provided that the expert can show how the plaintiff's levels related to those other subjects. *See id.* at 449; 857 N.E.2d at 1121.

Despite acknowledging myriad possibilities of establishing a methodology to demonstrate specific causation, the Court of Appeals nonetheless affirmed the dismissal. In doing so, the Court of Appeals found that plaintiff's experts failed to demonstrate that exposure to benzene as a component of gasoline caused the plaintiff's AML. *Id.* at 449; 857 N.E.2d at 1121. Further, the *Parker* Court rejected the expert's opinions because they contained general, conclusory assertions of excess exposure without proper factual or scientific support. *See id.* As such, mere statements that the plaintiff was exposed to "excessive" or "frequent" amounts of gasoline could not be characterized as a proper scientific expression of exposure level required to prove specific causation. *Id.* at 449; 857 N.E.2d at 1121-22.

In following the *Parker* decision, this Court should bar Drs. Moline and Strauchen from testifying as to specific causation because their opinions are fatally flawed. Relying solely on Plaintiff's testimony that his use of asbestos-containing pads and mittens generated some "dust," Plaintiff's experts leap to the conclusion that his "occupational exposure" caused his mesothelioma. They make no effort to quantify plaintiff's level of exposure to asbestos. In fact, the only evidence in the record on this issue is the opinion of Defendants' expert Robert Adams, who concludes that plaintiff's exposure to chrysotile asbestos from the use of pads and mittens would have been well below what is required to cause mesothelioma. Dr. Moline's and Dr. Strauchen's failure to establish a "scientific expression" of Plaintiff's exposure level flies in the face of New York precedent. As *Parker* demonstrates, such "general, subjective and conclusory

assertions," based solely on Plaintiff's deposition testimony are "plainly insufficient to establish causation." *Id.* at 449; 857 N.E.2d at 1121.

Accordingly, this Court should preclude Dr. Moline and Dr. Strauchen from testifying as to specific causation because they fail to establish through generally-accepted scientific means that Plaintiff was exposed to sufficient levels of Chrysotile asbestos to cause mesothelioma.

## CONCLUSION

Based upon the foregoing case law and legal analysis, this Court should grant Defendants' motion *in limine* to bar Plaintiff's experts, Drs. Moline and Strauchen, from testifying as to specific causation because they make no "scientific expression" of Plaintiff's exposure level with which to establish that he was exposed to sufficient levels of Chrysotile asbestos to cause mesothelioma. To the contrary, the only evidence on this issue is the opinion of Defendants' industrial hygiene expert, Robert Adams, who concludes that the levels of asbestos fibers to which Plaintiff would have been exposed during his career as a result of using Bunsen burner pads and heat-resistant mittens were insufficient to cause mesothelioma.

Dated: August 22, 2007
New York, New York

Respectfully submitted,

| DRINKER BIDDLE & REATH LLP<br>140 Broadway, 39th Floor<br>New York, New York 10005<br>(212) 284-3140<br>Attorneys for Defendant<br>Baxter Healthcare Corporation<br><br>By: _____<br>Daniel B. Carroll | REED SMITH LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, New Jersey 0850<br>(609) 987-0050<br>Attorneys for Defendant<br>ManorCare Health Services, Inc.<br><br>By: _____<br>Greg A. Dadika |
| --- | --- |
| HOAGLAND, LONGO, MORAN,<br>DUNST & DOUKAS, LLP<br>40 Paterson Street<br>New Brunswick, New Jersey 08901<br>(732) 545-4717<br>Attorneys for Defendant<br>Fisher Scientific International Inc.<br><br>By: _____<br>Kristy Kulina-Lyons | MARKS, O'NEILL, O'BRIEN &<br>COURTNEY, P.C.<br>530 Saw Mill River Road<br>Elmsford, NY 10523<br>Attorneys for Defendant<br>VWR International, Inc. and Univar USA Inc.<br><br>By: _____<br>Carol M. Tempesta, Esq. |