SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------- x
                                                                  :
In Re: NEW YORK CITY ASBESTOS LITIGATION   :   Hon. Joan Madden
                                                                  :   (Part 11)
----------------------------------------------------------------- x
This Document Relates To:                          :   Index No. 114120/06
                                                                  :
CHRISTIAN HOLINKA,                              :
                                                                  :
    Plaintiff                                           :
                                                                  :
  -against-                                                  :
                                                                  :
A.W. CHESTERTON COMPANY, et al.,       :
                                                                  :
    Defendants.                                        :
                                                                  :
----------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF EPIDEMIOLOGICAL STUDIES INVOLVING DIFFERENT TYPES OF ASBESTOS OR GREATER LEVELS OF EXPOSURE.**

Defendants Baxter Healthcare Corporation (alleged to be a successor in interest to American Hospital Supply Corp. and American Scientific Products) ("Baxter"), ManorCare Health Services, Inc. (alleged to be a successor in interest to Central Scientific Company, a division of Cenco, Inc.) ("ManorCare"), Fisher Scientific International Inc. ("Fisher"), VWR International, Inc. ("VWR") and Univar USA Inc. ("Univar") (collectively, "Defendants") respectfully submit this memorandum of law in support of their joint motion *in limine* to preclude plaintiff Christian Holinka ("Plaintiff") from introducing evidence of epidemiological studies regarding an increased risk of mesothelioma from asbestos unless Plaintiff establishes that he was exposed to similar or greater amounts of the same type of asbestos.

SFI\388017\5

Plaintiff claims he developed mesothelioma as a result of using asbestos-containing Bunsen burner pads and heat-resistant mittens. Assuming the pads and mittens plaintiff used actually contained asbestos, plaintiff would have been exposed to intermittent and low doses of chrysotile asbestos. Unlike amphibole asbestos, the risk associate with Chrysotile asbestos (if any) is minimal. Only those persons exposed to high doses of Chrysotile for long periods of time, such as asbestos miners, are at risk of developing mesothelioma – and even then the likely cause is the presence of amphibole fibers in the raw Chrysotile asbestos.

Defendants anticipate that Plaintiff will rely on epidemiological studies involving people who were exposed to amphibole asbestos or to high doses of chrysotile fibers for extended periods of time to show that asbestos can cause mesothelioma. Such studies are not sufficiently tied to facts of this case to be relevant. Plaintiff should, therefore, be precluded from introducing evidence of any epidemiological studies regarding the risks associates with asbestos unless he first establishes that he was exposed to the same type of fibers and that his level of exposure was similar or greater.

## BACKGROUND

Plaintiff claims he developed mesothelioma from using Bunsen burner pads and heat-resistant mittens in the laboratories where he studied, researched, and worked, during a 24-year period between 1960 and 1989. (*Deposition of Christian Holinka*, dated February 22, 2007 ("*Plaintiff Dep. Vol. II*"), attached as Exhibit D to *Affirmation of Timothy J. Fraser, Esq.*, dated August 21, 2007 ("*Fraser Aff.*"), at 71:7-17, 80:16 – 81:3, 93:8-14, 95:7-12, 100:25 – 101:4, 107:15-25, 112:5-12, 122:9-16, 133:4-7, 138:16-23 & 151:8-15.) According to Plaintiff, Bunsen burner pads are wire mesh squares, measuring approximately five inches on each side. The pads have heat resistant cores, which are circular and measure approximately three inches in diameter and only a few millimeters thick. (*Plaintiff Dep. Vol. II* at 73:17 – 64:12.) The pads are used to distribute the heat of a Bunsen burner flame when warming solutions in glass beakers and flasks; the glassware is placed on the pad and over the Bunsen burner. (*Id.* at 71:13-15.) Heat-resistant mittens are similar to oven mitts. (*Id.* at 76:10 – 77:3.) According to Plaintiff, the mittens are used to handle hot glassware in laboratories. (*Deposition of Christian Holinka*, dated March 1, 2007 ("*Plaintiff Dep. Vol. III*"), attached as Exhibit E to *Fraser Aff.*, at 317:18-21.)

Assuming *arguendo* that the Bunsen burner pads and heat-resistant mittens contained asbestos, they would have been made of Chrysotile – not the amphibole asbestos typically associated with insulation. (*Expert Report of Robert C. Adams, MS, CIH, CSP*, dated July 18, 2007 ("*Adams Report*"), attached as Exhibit A to *Fraser Aff.*, at 6.) Chrysotile fibers are unique in that they are soft, curled and more soluble; as a result, they are less likely to be retained in the lung (if inhaled) with a half life of only weeks or months. (*Id.* at 5.) In contrast, amphiboles (which include actinolite, amosite, anthophyllite, crocidolite and tremolite) are sharp, stiff and less soluble; they have a half life in the lung of 20 to 40 years. (*Id.*) As a result, the risk of

mesothelioma from exposure to amphibole asbestos far exceeds the risk (if any) from Chrysotile; the risk differential between crocidolite and Chrsotile is estimated to be 500:1. (*Expert Report of Kenneth A. Mundt, Ph.D.*, dated July 30, 2007 ("*Mundt Report*"), attached as Exhibit B to *Fraser Aff., at 8.*)

The risk of mesothelioma from exposure to low concentrations of chrysotile fibers is insignificant (if any). (*Adams Report* at 6.) In fact, heavy exposure to processed chrysotile is not associated with an increased risk of mesothelioma. (*Mundt Report* at 9.) It is only those who are exposed to extremely high doses of raw chrysotile (e.g. asbestos miners) who are at an increased risk for mesothelioma – and there is evidence that this risk derives from the contamination by amphibole fibers. (*Id.*)

Plaintiff, on the other hand, would have been exposed to intermittent, low doses of chrysotile. The asbestos fibers in both products would have been encapsulated, significantly limiting the exposure. (*Adams Report* at 12; *Expert Report of Sheldon H. Rabinovitz, Ph.D., C.I.H.*, dated July 30, 2007 ("*Rabinovitz Report*"), attached as Exhibit C to *Fraser Aff., at 6.*) The Bunsen burner pads bind the fibers within a solid matrix that is integrated into the wire mesh. (*Adams Report* at 12.) As for the mittens, the chrysotile fibers would have been woven into the fabric. (*Rabinovitz Report* at 6.) Because the fibers would not have been friable, plaintiff's exposure would have been minimal. It is estimated that Plaintiff's total exposure to asbestos fibers from his use of Bunsen burner pads and Heat-resistant mittens would have been less than the ambient exposure associated with urban environments. (*Adams Report* at 13.)

## **LEGAL ARGUMENT**

This case is unique. Plaintiff was exposed (if at all) to low doses of Chrysotile. He should be precluded from introducing evidence of epidemiological studies involving people who were exposed to amphibole asbestos or high doses of chrysotile.

Epidemiological studies can establish general causation. They are, however, "without evidentiary significance if the injured person cannot show that the exposure or dose levels were comparable to or greater than those in the studies." *Borg-Warner Corp. v. Flores*, __ S.W.3d __, 50 Tex. Supp. Ct. J. 851 (Tex. 2007) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720-21 (Tex. 1997)) ("*Havner*"); *see also In re Allied Chem. Corp.*, __ S.W.3d __, 50 Tex. Supp. Ct. J. 888 ("Claimants must have an expert who can answer why a study is reliable, and how the plaintiff's exposure is similar to that of the study's subjects."). The reason is plain: if the plaintiff is unable to prove that his exposure equals or exceeds that of the study's subjects, it is a matter of pure conjecture and speculation to extrapolate the study's results to show the cause of the plaintiff's injury:

> To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk. A claimant must show that he or she is similar to those in the studies. This would include proof that the injured person was exposed to the same substance, *that the exposure or dose levels were comparable to or greater than those in the studies*, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study.

*Havner, supra,* 953 S.W.2d at 720 (citing Melissa Moore Thompson, *Causal Inference in Epidemiology: Implications for Toxic Tort Litigation*, 71 N.C. L.Rev. 247, at 286-88 (1992)) (emphasis added).

For example, in *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426, 1431-32 (9th Cir. 1991), the Ninth Circuit excluded evidence based on studies of asbestos dust in industrial plants to establish that the level of exposure in defendant's plant where there was no showing of sufficient similarity between defendant's plant and those studied to conclude the level of exposure (and therefore risk) would have been the same. Also, in *Textron Inc. v. Barber-Colman Company*, 903 F. Supp. 1558 (W.D.N.C. 1995), the Western District of North Carolina held that the testimony of plaintiff's expert was not reliable because the epidemiological studies upon which he relied were not sufficiently tied to the facts of the case.

The New York courts likewise require that litigants to show that the epidemiological studies upon which they rely fit the facts of the case at bar. In *Parker v. Mobil Oil Corp.* the New York Court of Appeals affirmed the dismissal of the plaintiff's claims because he had failed to show that his exposure exceeded that of the subjects in the epidemiological study on which Plaintiff relied:

> The experts, although undoubtedly highly qualified in their respective fields, failed to demonstrate that exposure to benzene as a component of gasoline caused Parker's [disease]. Dr. Goldstein's general, subjective and conclusory assertion-based on Parker's deposition testimony-that Parker had "far more exposure to benzene than did the refinery workers in the epidemiological studies" is plainly insufficient to establish causation. *It neither states the level of the refinery workers' exposure, nor specifies how Parker's exposure exceeded it, thus lacking in epidemiologic evidence to support the claim.*

*Parker v. Mobil Oil Corp.*, N.Y.3d 434, 857 N.E.2d 1114 (N.Y. 2006) (emphasis added).

This Court should therefore, exclude evidence of epidemiological studies regarding an increased risk for mesothelioma from asbestos unless Plaintiff establishes first that he was exposed to a similar of greater levels of the same type of asbestos as the study's subjects. *See Id.* at 449 ("Comparison to the exposure levels of subjects of other studies could be helpful *provided*

*that* the expert made a specific comparison sufficient to show how the plaintiff's exposure level related to those of the other subjects.") If Plaintiff is unable to show that his epidemiological studies fit the facts of this case, they are not relevant and should be excluded because they are likely to mislead the jury. *See People v. Scarola*, 71 N.Y.2d 769, 732, 530 N.Y.S.2d 83, 525 N.E.2d 728 (1988) (holding that evidence is not relevant unless it has any tendency in reason to prove the existence of any material fact and that even relevant evidence may be excluded of "its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury").

## CONCLUSION

For the reasons stated above, Defendants respectfully requests that the Court grant this motion *in limine* to exclude evidence of epidemiological studies regarding an increased risk of mesothelioma from asbestos unless Plaintiff has established that he was exposed to similar or greater amounts of the same type of asbestos.

*Dated*: August 21, 2007
New York, New York

Respectfully submitted,

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP<br>140 Broadway, 39th Floor<br>New York, New York 10005<br>(212) 284-3140<br>Attorneys for Defendant<br>Baxter Healthcare Corporation<br><br>By: _____<br>Daniel B. Carroll | REED SMITH LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, New Jersey 0850<br>(609) 987-0050<br>Attorneys for Defendant<br>ManorCare Health Services, Inc.<br><br>By: _____<br>Greg A. Dadika |
| HOAGLAND, LONGO, MORAN, DUNST<br>& DOUKAS, LLP<br>40 Paterson Street<br>New Brunswick, New Jersey 08901<br>(732) 545-4717<br>Attorneys for Defendant<br>Fisher Scientific International Inc.<br><br>By: _____<br>Kristy Kulina Lyons | MARKS, O'NEILL, O'BRIEN &<br>COURTNEY, P.C.<br>530 Saw Mill River Road<br>Elmsford, NY 10523<br>Attorneys for Defendant<br>VWR International, Inc. and Univar USA Inc.<br><br>By: _____<br>Carol M. Tempesta, Esq. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

NYCAL
I.A.S. Part 39

Index No. 114120-06

---

IN RE: NEW YORK CITY
ASBESTOS LITIGATION

------------------------------------

CHRISTIAN F. HOLINKA,

              Plaintiff,

-against-

A.W. CHESTERTON COMPANY, et al.,

              Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION *IN LIMINE* TO PRECLUDE PLAINITFF FROM
INTRODUCING EVIDENCE OF EPIDEMIOLOGICAL STUDIES
INVOLVING DIFFERENT TYPES OF ASBESTOS OR GREATER
LEVELS OF EXPSOURES**

---

DRINKER BIDDLE & REATH LLP
140 Broadway, 39th Floor
New York, New York 10005-1116
(212) 248-3140

Attorneys for Defendant, BAXTER HEALTHCARE, INC.