SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CATHARINA BIANCO, as Executrix for the Estate of FRANK BIANCO, and CATHARINA BIANCO, Individually, | I.A.S. Part 11 (Madden, J.)<br><br>Index No. 115546-06 |
| Plaintiff, | **AFFIRMATION OF SANDRA K. STEINMAN IN SUPPORT** |
| - against - | **OF UNION CARBIDE CHEMICALS AND PLASTICS** |
| A.O. SMITH WATER PRODUCTS CO., et al., | **COMPANY, INC.'S MOTION** |
| Defendants. | ***IN LIMINE*** |

This document relates to

| | |
|---|---|
| Frank Bianco | Index No. 115546-06 |
| Karl Felten | Index No. 114005-06 |
| Christian Holinka | Index No. 114120-06 |
| Frederick Ritzer | Index No. 111328-06 |
| Joseph Saccomano | Index No. 113299-06 |

SANDRA K. STEINMAN, an attorney duly admitted to practice before the courts of this state, affirms the following to be true under penalties of perjury:

1.    I am an attorney with the law firm Anderson Kill & Olick, P.C., counsel in the above-captioned action for defendant Union Carbide Chemicals and Plastics Company, Inc. I am fully familiar with the facts and circumstances set forth herein.

2.    I respectfully submit this affirmation in support of Union Carbide Chemicals and Plastics Company, Inc.'s motion *in limine* for an order seeking to Exclude Evidence of the Health Conditions or Medical Records of any Union Carbide King City Asbestos Workers without Testimony From a Qualified Medical Expert That the Health Condition is Related to Asbestos Exposure, together with such other and further relief as the Court deems just and proper.

3.    Attached hereto as Exhibit A are true and correct copies of letters by physicians who administered a medical monitoring program of King City asbestos workers confirming the absence of asbestos-related disease among Calidria workers dated June 12, 1984, February 19, 1988, July 31, 1989 and May 26, 1992.

4.    Based on all pleadings herein and argument to be made before this Court, Union Carbide Chemicals and Plastics Company, Inc.'s motion should be granted in its entirety.

WHEREFORE, Union Carbide Chemicals and Plastics Company, Inc. respectfully requests that this Court issue an Order granting Union Carbide Chemicals and Plastics Company, Inc.'s motion *in limine*, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 22, 2007

ANDERSON KILL & OLICK, P.C.

By: _____
Sandra K. Steinman
1251 Avenue of the Americas
New York, New York  10020-1182
(212) 278-1000

Attorneys for Union Carbide Chemicals and Plastics Company, Inc.

# EXHIBIT A

# SOUTHERN MONTEREY COUNTY MEDICAL GROUP
### (A PROFESSIONAL CORPORATION)

12 June 1984

**210 CANAL STREET**
**KING CITY, CALIFORNIA 93830**
**Telephone 385-3471**

**P.O. BOX 247 — 101 MAPLE**
**GREENFIELD, CALIFORNIA 93927**
**Telephone 674-3593**

**FAMILY PRACTICE**
Allan L. Fisher, M.D.

**FAMILY PRACTICE**
**OBSTETRICS & PEDIATRICS**
Jose S. Cruz, M.D.
Bruce D. Greenberg, M.D.
Robert C. Hostetler, M.D.
Duane F. Hyde, M.D.
Roy H. Schindelheim, M.D.

**GENERAL SURGERY**
Rolando A. Fernanos, M.D.

**VISITING CONSULTANTS**
AUDIOLOGY
CARDIOLOGY
DERMATOLOGY
INTERNAL MEDICINE
OPHTHALMOLOGY
ORTHOPEDIC SURGERY
OTOLARYNGOLOGY
PODIATRY
UROLOGY

**FAMILY NURSE PRACTITIONERS**
Alice A. Gaunt, R.N., F.N.P.
Betty H. Orali, R.N., F.N.P.

**ADMINISTRATION**
Helen Poole

Dear John Myers:

You have asked me to review the results of the medical surveillance program of Union Carbide's Calidria asbestos mine and mill workers, conducted by the Southern Monterey County Medical Group under my supervision. I have examined the records and my conclusions are discussed below.

The program has been in existence since 1963, when the King City asbestos operations first started. About 450 workers have been included in the program overall, with about 20 workers having been employed at least 15 years during the period since 1963.

Throughout this 21 year period, the program has consisted of the following elements:

Initial examinations including: medical history, physical examination, audiogram, chest x-ray, PA and lateral, routine count, and urine.

Annual examinations including: all of the above, plus an electrocardiogram of those over 40 years of age.

Termination examinations including:  all procedures that are listed in the above initial exam.

In addition, the program has included annual pulmonary function tests, including vital capacity and FEV 1 since 1972, and annual sputum cytology since 1980.

Because the program has been in existence for only 21 years, and because of its limited size, it is too soon to determine definitely whether asbestos-related disease may occur in this population. Nevertheless, since the program began, we have identified no case of asbestos-related disease; nor have we detected any early clinical symptoms such as radiological changes, shortness of breath, or rales. One exception was a worker, a smoker, who had some shortness of breath and decreased pulmonary functions. That worker's x-rays were subsequently referred for special examination by Mount Sinai, and Dr. Irving Selikoff concluded that his condition was not related to asbestos. Subsequent examinations of this worker have shown no progressive deterioration.

I hope this letter serves your needs. If you have any specific questions, I would be most happy to

UCASB00481844



Page 2
6/12/84
John Myers


try to answer them.

Sincerely,

*Duane F. Hyde, M. D./ao*

DUANE F. HYDE, M.D.

DFH/ao

UCASB00481845



## SOUTHERN MONTEREY COUNTY MEDICAL GROUP
### (A PROFESSIONAL CORPORATION)

210 CANAL STREET
KING CITY, CALIFORNIA 93930
Telephone 385-5471

P.O. BOX 247 — 806 MAPLE
GREENFIELD, CALIFORNIA 93927
Telephone 674-5593

**FAMILY PRACTICE**
Allen L. Fisher, M.D.

**FAMILY PRACTICE
OBSTETRICS & PEDIATRICS**
Bruce D. Greenberg, M.D.
Duane F. Hyde, M.D.
Roy H. Schindelheim, M.D.

**GENERAL SURGERY**
Rolando A. Fernando, M.D.

**MARRIAGE & FAMILY COUNSELING**
Richard A. McCombs, M.A.

**VISITING CONSULTANTS**
Allergy
Audiology
Cardiology
Dermatology
Endocrinology
  & Metabolism
Internal Medicine
Ophthalmology
Orthopedics
Otolaryngology
Pain Management
Pathology
Pediatrics
Podiatry
Selective Cosmetic
  Surgery
Urology

**FAMILY NURSE PRACTITIONERS**
Alice A. Gaunt, R.N., F.N.P.
Betty H. Ortell, R.N., F.N.P.

**ANCILLARY MEDICAL SERVICES**
Physical Therapy
Clinical Laboratory
Thermography

**ADMINISTRATION**
Helen Poole

February 19, 1988

Mr. John L. Myers
KCAC, Inc.
P. O. Box K
King City, CA  93930

Dear John:

This is in response to your request for me to update my June 12, 1984 letter concerning the results of the medical surveillance program of your Calidria asbestos mine and mill workers. This program has been in existence since 1963, when the King City asbestos operations started, and has been conducted by the Southern Monterey County Medical Group under my supervision. I have examined my records and my conclusions are discussed below.

Overall, about 450 workers have been included in the program, with about 25 workers having been employed 15 or more years during the period since 1963.

Throughout this 25 year period, the program has consisted of the following elements:

Initial Examination: medical history, physical examination, audiogram, chest x-ray (PA and lateral), routine blood count, and urinalysis.

Annual Examination: all of the above plus an electrocardiogram for those over 40 years of age.

Termination Examination: same as Initial Examination.

In addition, the program has included annual pulmonary function tests (vital capacity and FEV 1) since 1972, annual sputum cytology from 1980 to 1983, and annual stool guaiac test from 1981.

Because the program has been in existence for only 25 years and because of its limited population size, it is too soon to determine definitely whether or not asbestos-related disease may occur. Nevertheless, since the program began, we have identified no case of asbestos-related disease; nor have we detected any



DEFENDANT'S EXHIBIT UCC-444

Mr. John L. Myers
Page Two
February 19, 1988

early clinical symptoms such as radiological changes,
shortness of breath, or rales. There was one worker,
a smoker, who had some shortness of breath and de-
creased pulmonary functions. His x-rays were subse-
quently referred for special examination by Mount
Sinai and Dr. Selikoff concluded that his condition
was not asbestos-related. Subsequent examinations
of this worker have shown no progressive deteriora-
tion.

I hope this letter serves your needs. If you have
any specific questions, I would be most happy to try
to answer them.

Sincerely,

Duane F. Hyde, M.D.

/llg

UCASB00879603

## SOUTHERN MONTEREY COUNTY MEDICAL GROUP
### (A PROFESSIONAL CORPORATION)

210 CANAL STREET
KING CITY, CALIFORNIA 93930
Telephone (408) 385-5471

P.O. BOX 247 — 806 MAPLE
GREENFIELD, CALIFORNIA 93927
Telephone (408) 674-5593

**FAMILY PRACTICE**
Duane F. Hyde, M.D.

**FAMILY PRACTICE
OBSTETRICS & PEDIATRICS**
Bruce D. Greenberg, M.D.
Roy H. Schindelheim, M.D.

**GENERAL SURGERY**
Rolando A. Fernando, M.D.

**OPTOMETRY**
Mike Tomlin, O.D.

**VISITING CONSULTANTS**
Allergy
Audiology
Cardiology
Dermatology
Gastroenterology
Internal Medicine
Neurology
Ophthalmology
Orthopedics
Pathology
Pediatrics
Podiatry
Selective Cosmetic
   Surgery
Urology
Vascular Surgery

**FAMILY NURSE PRACTITIONERS**
Alice A. Gaunt, R.N., F.N.P.
Betty H. Orrell, R.N., F.N.P.

**ADMINISTRATION**
Helen Poole

July 31, 1989

Mr. John L. Myers
KCAC, Inc.
P. O. Box K
King City, CA  93930

Dear John:

This is in response to your request for me to update my February 19, 1988 letter concerning the results of the medical surveillance program of your Caldria asbestos mine and mill workers.  This program has been in existence since 1963, when the King City asbestos operations started, and has been conducted by the Southern Monterey County Medical Group under my supervision.  I have examined my records and my conclusions are discussed below.

Overall, about 450 workers have been included in the program, with about 25 workers having been employed 15 or more years during the period since 1963.

Throughout this period, the program has consisted of the following elements:

Initial Examination:  medical history, physical examination, audio gram, chest x-ray (PA and lateral), routine blood count, and urinalysis.

Annual Examination:  all of the above plus an electrocardiogram for those over 40 years of age.

Termination Examination:  same as Initial Examination.

In addition, the program has included annual pulmonary function tests (vital capacity and FEV 1) since 1972, annual sputum cytology from 1980 to 1983, and annual stool guaiac test from 1981.

Because the program has been in existence for only 26 years and because of its limited population size, it is too soon to determine definitely whether or not asbestos-related disease may occur.  Nevertheless, since the program began, we have identified no case of asbestos-related disease; nor have we detected any



UCASB02867056

Mr. John L. Myers
Page Two
July 31, 1989

early clinical symptoms such as radiological changes,
shortness of breath, or rales. There was one worker,
a smoker, who had some shortness of breath and de-
creased pulmonary functions. His X-rays were subse-
quently referred for special examination by Mount
Sinai and Dr. Selikoff concluded that his condition
was not asbestos-related. Subsequent examinations
of this worker have shown no progressive deteriora-
tion.

I hope this letter serves your needs. If you have
any specific questions, I would be most happy to try
to answer them.

Sincerely,

Duane F. Hyde, M.D.

/jg

UCASB02867057

**S.A. KUMAR, M.D., F.A.C.E.P.**
Diplomate American Board of
Internal Medicine and Emergency Medicine
400 CANAL STREET
KING CITY, CA 93930
(408) 385-4400

May 26, 1992

Mr. John L. Myers
KCAC, Inc.
P.O. Box K
King City, CA 93930

Dear Mr. Myers:

This is in response to your request for me to update the results of the medical surveillance program for your Calidria asbestos mine and mill workers. This program has been in existence since 1963, when the King City asbestos operations started, and was conducted by the Southern Monterey County Medical Group under the supervision of Dr. D.F. Hyde until his retirement in 1989. He has sent you letters similar to this on February 19, 1988 and July 31, 1989. Your program has been under my supervision since February 1990 and my conclusions are discussed below.

Overall, about 450 workers have been included in the program, with about 30 workers having been employed 15 or more years during the period since 1963.

Since the program began we have identified no case of asbestos related disease; nor have we detected any early clinical symptoms such as radiological changes, shortness of breath, or rales.

Because the program has a limited population size and time of existence it cannot be concluded that no disease may occur in the future; however, the results to date indicate that your short fiber chrysotile asbestos fibers have caused no asbestos related disease at this time.

Several of your workers are heavy smokers and I have suggested to them several different options available to quit smoking.

Please let me know if you have any questions or require additional information.

Very truly yours,

S.K. Ashokkumar, M.D.

SKA:mg

UCASB02867055

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CATHARINA BIANCO, as Executrix for the Estate of FRANK BIANCO, and CATHARINA BIANCO, Individually,<br><br>Plaintiff,<br><br>- against -<br><br>A.O. SMITH WATER PRODUCTS CO., et al.,<br><br>Defendants. | I.A.S. Part 11 (Madden, J.)<br><br>Index No. 115546-06<br><br>**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE HEALTH CONDITIONS OR MEDICAL RECORDS OF ANY UNION CARBIDE KING CITY ASBESTOS WORKERS WITHOUT TESTIMONY FROM A QUALIFIED MEDICAL EXPERT THAT THE HEALTH CONDITION IS RELATED TO ASBESTOS EXPOSURE** |

This document relates to

| | |
|---|---|
| Frank Bianco | Index No. 115546-06 |
| Karl Felten | Index No. 114005-06 |
| Christian Holinka | Index No. 114120-06 |
| Frederick Ritzer | Index No. 111328-06 |
| Joseph Saccomano | Index No. 113299-06 |

Defendant Union Carbide Corporation (hereinafter "Union Carbide")

moves this Court for an *in limine* order prohibiting Plaintiffs from presenting, referring to,

or offering evidence, whether through testimony, medical records, or other documents,

regarding assertions of certain alleged asbestos-related health conditions among former

Union Carbide or KCAC, Inc. ("KCAC") Calidria asbestos workers.[1]  Such assertions are

---

[1]     At this time, there has been no identification of products containing Union Carbide's Calidria asbestos in any of the five cases represented by the above-styled caption. It is on this basis that Union Carbide submits this consolidated motion *in limine*.  However, should Plaintiffs offer evidence of product identification that could implicate Union Carbide's Calidria asbestos in any of the five (5) cases, Union Carbide reserves the right to oppose the consolidation of said cases at that time.

advanced without qualified expert medical testimony linking any alleged asbestos-related disease to exposure from Calidria asbestos, and are therefore, neither competent nor relevant.

## I.    INTRODUCTION

Union Carbide mined, milled, and sold raw asbestos fiber. The type of asbestos that Union Carbide sold was called "Calidria" asbestos, which referred to the fact that it was mined from the New Idria Serpentine Deposit in California. Union Carbide was in the business of selling Calidria asbestos from 1963-1985, when Union Carbide sold its Calidria operations to a third-party, KCAC.

One of Union Carbide's defenses in this case rests on scientific evidence that establishes that Calidria asbestos has unique physical and chemical properties. Because of these distinctive attributes, Calidria does not present the same risk of asbestos-related disease as other forms of asbestos. This evidence is supported by, among other things, the fact that none of the workers at Union Carbide's or KCAC's Calidria operations has been diagnosed by his or her physician with an asbestos-related disease.

The absence of a single case of asbestos-related disease is of even greater significance because of the medical monitoring program that first Union Carbide and then KCAC conducted during the respective periods that they operated the King City plant. All workers at the King City plant received periodic medical examinations, including chest x-rays and pulmonary function tests, which Union Carbide and KCAC financed. These examinations were part of a comprehensive medical monitoring program conducted by outside physicians. Union Carbide was an industry leader in

terms of worker safety and established its program voluntarily, before OSHA and California OSHA promulgated regulations that required such programs for asbestos workers.

The medical monitoring program was in effect for nearly forty years until KCAC closed the King City mill in 2002. Union Carbide documents reflect that throughout the course of the medical monitoring program, none of its workers was diagnosed with an asbestos-related disease although they were exposed to Calidria asbestos every day. Physicians who administered the medical monitoring program sent a number of periodic reports to John Myers, a former Union Carbide and KCAC employee, confirming the absence of asbestos related-disease among the Calidria workers. These letters, written in 1984, 1988, 1989 and 1992, are attached to the Affirmation of Sandra K. Steinman, dated August 22, 2007 and filed contemporaneously herewith, as Exhibit A. Mr. Myers retired from KCAC in 1993.

## II.   ARGUMENT

The physicians who conducted the medical monitoring program consistently concluded that no Calidria worker had an asbestos-related disease, and no evidence exists that a Calidria worker was ever diagnosed with such a disease by his or her own personal physician. Nevertheless, Union Carbide anticipates that Plaintiffs may attempt to create the misleading impression that there were cases of asbestos-related disease, specifically asbestosis and/or lung cancer, among the Calidria workers by taking isolated medical records and documents out of the context of particular workers' complete occupational and medical histories.

NYDOCS1-870282.1

3

**A.    Evidence Of The Health Conditions Of Former Union Carbide Or KCAC Workers Is Not Probative Where It Is Founded On Non-Expert Testimony.**

The diagnosis of asbestosis is a complex one and requires a medical doctor to analyze and interpret several different types of medical examinations, including chest radiographs, pulmonary function testing, general physical examinations, and evaluations of a patient's occupational history.  The doctor must consider all of these tests when he or she determines whether there was sufficient exposure to asbestos (dose) and sufficient time since first exposure (latency) to justify attributing a suspected lung condition to asbestos exposure.  Many of the symptoms and findings associated with asbestosis, such as findings of pulmonary fibrosis and restrictive lung function, are also associated with many other non-asbestos conditions.

Under these circumstances, the Court should not permit Plaintiffs to rely on isolated and incomplete suggestions of potential asbestos-related disease among Calidria workers that does not meet established medical criteria.  Plaintiffs cannot demonstrate, to a reasonable degree of medical certainty, that the presence of asbestos-related disease in any individual worker is attributable to Calidria exposure.  In order to establish a medical diagnosis or demonstrate medical causation, Plaintiffs must present at least some qualified expert testimony since complex scientific issues of this type are beyond the range of understanding of the ordinary fact-finder.  See De Long v. County of Erie, 60 N.Y.2d 296, 307, 457 N.E.2d 717 (1983) ("expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror").  Without competent expert testimony, evidence purporting to show a relationship between Calidria asbestos and a disease in a King City worker is not probative of the issue of causation because a

lay witness is not competent to give testimony regarding such issues, nor can a jury draw conclusions concerning such issues simply on the basis of "common sense or common experience." See, e.g., Acosta v. New York, 67 Misc. 2d 756, 324 N.Y.S.2d 137 (1971) (discussing the history and necessity of expert medical testimony in New York courts).[2]

Plaintiffs have not disclosed any expert witnesses who will testify about the medical conditions of workers at the King City mill and thus cannot provide any lay opinion testimony on that subject.

## B. Admitting Non-Expert Testimony Regarding The Health Conditions Of Former Union Carbide Or KCAC Workers Would Be Unduly Prejudicial To Union Carbide

Even if evidence regarding the health conditions of former Union Carbide or KCAC workers were probative, it would be inadmissible because it would create undue prejudice to Union Carbide and lead the jury to an unsupported medical conclusion. See People v. Davis, 43 N.Y.2d 17, 27, 371 N.E.2d 456 (1977) ("even if the evidence is proximately relevant, it may be rejected if its probative value is outweighed by the danger that its admission would prolong the trial to an unreasonable extent without any corresponding advantage; or would confuse the main issue and mislead the jury; or unfairly surprise a party; or create substantial danger of undue prejudice to one of the parties" ) (internal citations omitted).

Here, evidence of this type would mislead the jury by guiding it to the unfounded conclusion that King City workers were diagnosed with or suffered from

---

[2]      Although the Acosta court recognized that there are circumstances where expert testimony is unnecessary due to the doctrine of res ipsa loquitor, but characterized the doctrine as "rare". Thus, the nature of testimony that Union Carbide seeks to exclude in limine is not within the rare area of exception envisioned by the Acosta court.

asbestos-related diseases even though no expert medical evidence supports such an assertion. This prejudice only would be compounded when jurors, almost inevitably, will assume that the workers incurred their injuries from the King City experiences. The final link in this prejudiced claim of unsupported assumptions would occur when jurors assume that because the King City workers suffered injuries supposedly caused by Calidria, Plaintiff's disease likewise must have had the same cause.

C.    **Evidence Regarding The Health Conditions Of Former Union Carbide Or KCAC Workers Would Add No Probative Value And Will Consume Unnecessary Time By Requiring The Court To Hold Several "Mini-Trials."**

Detailed evidence of King City workers' particularized health conditions would undoubtedly result in a series of time-consuming "mini-trials" over the medical conditions of these individuals. The parties would have to present evidence to establish the presence or lack of an asbestos-related disease for each worker whose health condition is placed in issue. This process would require extensive expert testimony as to each worker's medical condition (including interpretation of chest radiographs, pulmonary function testing, and physical examinations), as well as additional testimony on the subject of whether each worker had sufficient asbestos exposure to cause the alleged disease (including evidence of dose and latency). These mini-trials could take several weeks, if not months, to complete. The Court's time and resources, as well as that of the jury, would be wasted on these ancillary proceedings that would have no bearing on the final outcome of the case because, as shown above, they have no probative value.

This Court has the authority to exclude distracting and unnecessarily time-consuming evidence. See People v. Davis, 43 N.Y.2d 17, 27, 371 N.E.2d 456 (1977).

Plaintiffs here should not be permitted to put on a series of "trials within a trial" by introducing evidence of King City workers' health.

Even if the Court does permit Plaintiffs to even proffer evidence about the health of King City workers, at the very least Plaintiffs must first prove that such evidence would be highly probative by first laying a proper foundation - outside the presence of the jury - that each such worker experienced asbestos-related health conditions from exposure to Calidria asbestos to a reasonable degree of medical certainty by a competent medical expert witness (which has not been disclosed).

III.    **CONCLUSION**

For the reasons set forth above and based on the authorities cited herein, Union Carbide respectfully requests that this Court grant its motion *in limine* to preclude evidence regarding asbestos-related health conditions or medical records of any of the Union Carbide King City workers without testimony of a qualified medical expert that the health condition was in all reasonable medical probability related to asbestos exposure. Union Carbide also asks the Court to order Plaintiffs' counsel to so inform his respective witnesses, and to instruct such witnesses to follow the Court's instructions.

Dated: New York, New York
     August 22, 2007

Respectfully submitted,

ANDERSON KILL & OLICK, P.C.

Judith A. Yavitz
Sandra K. Steinman

1251 Avenue of the Americas
New York, New York 10020
(212) 278-1000

Attorneys for Union Carbide Chemicals and Plastics Company, Inc.