SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
IN RE: NEW YORK CITY ASBESTOS LITIGATION :    NYCAL
-----------------------------------------------------------------X    I.A.S. Part 11

This Document Relates To: :

CHRISTIAN HOLINKA, et al., :    Index No. 114120-06

              Plaintiff(s), :

   -against- :

A.W. CHESTERTON COMPANY, et al., :

             Defendants. :
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO THE LAB SUPPLY DEFENDANTS MOTIONS *IN LIMINE* TO 1) PRECLUDE PLAINTIFFS' EXPERTS DRS. MOLINE AND STRAUCHEN FROM TESTIFYING, AND 2) TO PRECLUDE PLAINTIFFS FROM INTRODUCING EVIDENCE REGARDING EPIDEMIOLOGICAL EVIDENCE

### PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in opposition to Defendants Baxter Healthcare Corporation, ManorCare Health Services, Inc., Fisher Scientific International, Inc., VWR International, Inc., and Univar USA Inc. (collectively, the "Defendants") motions *in limine* to 1) preclude Plaintiffs' experts, Dr. Jacqueline Moline and Dr. James Strauchen, from offering any testimony that the Bunsen burner pads and heat mittens at issue caused Plaintiff Christian Holinka's mesothelioma, and 2) to preclude Plaintiffs' experts from introducing evidence of epidemiological studies regarding an increased risk of mesothelioma from asbestos.

To the uninitiated, the arguments contained within Defendants moving papers to preclude Plaintiffs experts Moline and Strauchen from testifying and further, to preclude



Z-OPERA-5

those experts from introducing epidemiological evidence in support of their positions, might appear legitimate. Upon close scrutiny, however, the arguments Defendants martial in support of their positions are so critically flawed, both on a fair <u>reading of the law in the State of New York</u> and on a <u>fair reading of the facts in this case</u>, that Defendants motions must be denied.

## INTRODUCTION

*Defendants Improperly Dismiss Plaintiffs Expert Reports Via Propagation Of A False "Quantification" Causation Standard All The While Substituting Their Own Expert Whose Report Falsely Quantifies Exposure Dose!*

First, this memorandum specifically refutes Defendants' contention that Plaintiffs' experts cannot, as a matter of law, offer expert testimony that the chrysotile asbestos released from Defendants asbestos-containing products, i.e. Bunsen burner pads and heat mittens, and breathed in by Mr. Holinka, were substantial contributing factors to Plaintiff's mesothelioma. To accomplish their goal, Defendants have engaged in a clever, albeit illegitimate, sleight-of-hand. Specifically, Defendants first seek to dismiss Drs. Moline and Strauchen's expert reports as conclusory on the basis that they fail to "<u>quantify</u> the level of 'dust'" emitted from the products used, relying exclusively on the causation standard discussed in the non-asbestos, benzine case, <u>Parker v. Mobil Oil Corporation</u>, 16 A.D.3d 648, 793 N.Y.S.2d 434 (2nd Dept. 2005). Once having dismissed Plaintiffs expert reports, Defendants then proceed to substitute those reports with Defendants' own industrial hygienist expert, Robert Adams, who has issued a report-not surprisingly- coming to the opposite conclusion. At this point, Defendants sleight-of-hand substitution strategy employed in their moving papers comes undone. What Defendants fail to inform the Court is fatal to their goal: more particularly, that <u>Robert</u>

2

Adams expert report regarding Christian Holinka is a classic, unadulterated "dose reconstruction"—essentially a work of historical fiction, not based in science and not based on evidence in the case—that effectively "manufactures" the so-desired quantification of Mr. Holinka's exposure out of thin air, and further, is the subject of a Frye preclusion motion *in limine* filed by Plaintiffs in this very case.[1] In short, Defendants cannot have it both ways, on the one hand dismissing Plaintiffs expert reports by propounding a false "quantification" causation standard while substituting a report that itself falsely quantifies exposure dose on the other. This Court should not, and cannot allow Defense counsel's improper labeling and dismissal of Plaintiffs experts methodology as "junk science" to be replaced with a Defense-issued expert report itself riddled with previously rejected and ridiculed dose reconstruction methodology.

In addition, Defendants motion to preclude Drs. Moline and Strauchen represents nothing more than another attempt by a defendant in an asbestos-related exposure case to preclude Plaintiffs' expert testimony through the legal vehicle of requesting a Frye hearing. Significantly, Defendants can point to no New York court having ruled in its' or any other Defendants', favor to date. Plaintiffs response is simple and succinct: citation to the First Department decision directly on point, Lustenring v. A.C. & S., Inc., 13 A.D.3d 69, 70 786 N.Y.S.2d 20, 21 (1st Dept. 2004), which held that "Defendant's factual

---

[1] See "Plaintiffs' Memorandum of Law in Support of Their Motion, Pursuant to Frye v. United States, and *in Limine*, 1) to Preclude the Novel, Unscientific, Not Generally-Accepted, Litigation-Based, Previously Excluded Asbestos 'Dose Reconstruction'/'Exposure Assessment' Analyses and All Testimony Related Thereto, and 2) to Preclude the Case-Specific Reports and Related Testimony of Drs. Rabinovitz and Weinberg Specifically as Improper" dated and filed with the Court, August 21, 2007 (Mr. Adams report is a fine example of a dose-reconstruction utilizing the dose reconstruction terms and concepts of "time-weighted average (TWA)," "cumulative exposure metrics," "fiber-years/cc," and "lifetime cumulative exposure," plugging in estimated exposure times to various asbestos products, only to conclude (surprise!) that "there was no substantial asbestos exposure in Dr. Holinka's academic and professional career to explain the development of his pleural mesothelioma." A close reading reveals the report as just a complicated way of cloaking Mr. Adam's opinion, absent actual exposure data, that Plaintiff Holinka's exposure to chrysotile asbestos emitted from Bunsen burners and mittens did not cause his mesothelioma).

3

disagreement with plaintiffs' causation theory did not require a Frye hearing." The very clear ruling in Lustenring further highlights the frivolous nature of Defendants motion *in limine*[2] (see § I infra).

### Defendants Attempt to "Backdoor" The Discredited "Chrysotile Defense" Via Insistence On Epidemiological Studies Is Without Merit

Second, this memorandum specifically refutes Defendants' contention that Plaintiffs' experts cannot, as a matter of law, introduce epidemiological studies regarding an increase risk of mesothelioma from asbestos involving different types of asbestos or greater levels of exposure. Defendants moving papers are riddled with scientifically unsubstantiated claims[3] all of which indicate application of the now classically discredited low dose chrysotile asbestos defense. In contradistinction to Defendants unsubstantiated claims, it is generally accepted, in the scientific community, that chrysotile asbestos can cause mesothelioma. This has been the case for some years. It is also generally accepted in the scientific community that each exposure to respirable asbestos fibers contributes to a cumulative risk of mesothelioma, and that it is impossible

---

[2] Similarly, we cite to Wiegman v. A.C.& S., Inc., 2005 NY Slip Op 10215 (1st Dept. December 29, 2005) wherein the New York State Supreme Court Appellate Division First Department upheld the denial of various defendants request for a Frye hearing in the context of an appeal of a verdict for the plaintiff in a Frye welding rod case. Most importantly, the Court found absolutely no merit in defendants' claim for a Frye hearing, specifically finding that due to the legitimate debate between the parties experts as to causation issues, there was, in turn, no "novel" scientific theories at issue:

Defendants-appellants' claim that a Frye hearing should have been held is without merit. The link between asbestos and disease is well documented, and the parties merely differed as to whether the asbestos contained in this particular product could be released in respirable form so as to cause disease. Since the parties argued over causation, no novel scientific technique or application of science was at issue, and a Frye hearing was not warranted (Gayle v. Port Auth. Of [*2] N.Y. and N.J., 6 AD3d 183 [2004]).

Wiegman, Slip Op 10215 at 2.

[3] See Defendants Memo of Law, e.g. p.2: "Only those persons exposed to high doses of Chrysotile for long periods of time…are at risk of developing mesothelioma," p.4: "The risk of mesothelioma from exposure to low concentrations of chrysotile fibers is insignificant (if any)," and p.4: "Because the fibers would not have been friable, plaintiff's exposure would have been minimal")

4

to attribute a case of mesothelioma to any one specific exposure. This is not new information. Defendants motion here is merely an attempt to "backdoor" the time worn "chrysotile defense" which is without merit and goes against the great weight of independent, reliable scientific evidence and against the opinions of major world health organizations.

Furthermore, experts almost unanimously agree that ALL types of asbestos, including chrysotile, cause mesothelioma. Numerous reliable scientific studies, including epidemiologic studies, which document with a Standardized Mortality Ratio ("SMR") of greater than 2.0 (or more than a doubling of the risk with a 95% confidence level), the causal relationship between chrysotile asbestos and mesothelioma. However, epidemiologic studies are not the only reliable scientific studies utilized for determining disease causation, especially for a "signature disease" such as mesothelioma, for which there is only one known cause: asbestos exposure. Other types of studies, such as pathological (or cellular), toxicological and case studies and reports have also documented that chrysotile causes mesothelioma. Independent researchers and scientists rely upon these other types of underlying methodologies to establish research outcomes. In fact, the law in New York does not require plaintiffs' experts to rely upon epidemiologic studies. With this type of disease, where there is often direct physical evidence of causation by asbestos, case studies, case reports, pathological review and other types of methodologies are equally reliable. Moving Defendants' deliberate strategy to prematurely foreclose jury considerations of causation should be rejected.[4] (see § II infra).

---

[4] We note as well the strategy of the asbestos defense bar in this litigation appears to be one of "judicial shopping" on the issue; to repeatedly request such relief from the court hoping that one judge sooner or

### *Defendants Request For Relief Regarding The Proper Standard For Causation Evidence Effectively Amounts To Summary Judgment*

Third, the relief requested in the Defendants motions *in limine* here, in reality, effectively makes them summary judgment motions. As it is Defendants claim that Plaintiffs' causation evidence should be precluded, Defendants are essentially moving for summary judgment pursuant to C.P.L.R. § 3212, on ground that the Plaintiffs cannot prove causation. As the Court is aware, this is impermissible procedure as the time for summary judgment has passed and the Court can easily exercise its option to deny these motions on this basis as well. Certainly, the Court is under no obligation to rule on summary judgment motions improperly re-packaged in the form of *in limine* motions (**see** § III <u>**infra**</u>).

---

later will review the evidence differently and thereby set down unjustified precedent. The following "Practice Pointer" appears to sum up defendants' strategy nicely:

> When arguing against the admission of expert testimony derived from a given scientific technique, counsel may find it effective to present any available evidence that casts doubt on the reliability of the technique, even if the court in question has previously made reliability determinations based solely on the consensus of scientists. Thus, under certain circumstances it may be possible to convince the court that the technique, although accepted by courts in prior cases, is of such doubtful reliability in practice as to call into question its actual or continued acceptance in the scientific community. Under some circumstances, it may be appropriate for counsel to contend that the scientific technique at issue, although accepted or reliable as a means of identifying or determining certain things, is inadequate to support the specific conclusions drawn from it by the expert witness, and that the expert's testimony is thus inadmissible.

Daniel A. Klein, Reliability of Scientific Technique and its Acceptance Within Scientific Community as Affecting Admissibility, at Federal Trial, of Expert Testimony as to Result of Test or Study Based on such Technique—Modern Cases, 105 ALR Fed. 299.

## STATEMENT OF FACTS

### *A Seventy-Year Old Career Chemist Suffering From Mesothelioma*

Mr. Christian Holinka, a chemist, is a seventy-year old man living with mesothelioma. Mr. Holinka was diagnosed with mesothelioma on August 23, 2006, after nearly three liters of fluid were discovered in his right thoracic cavity. Over the past year, Mr. Holinka has been forced to endure three surgical procedures and numerous rounds of chemotherapy to help keep him alive. Before his diagnosis with mesothelioma, Mr. Holinka was an otherwise healthy person, a non-smoker with normal liver and kidney function, no metabolic impairments such as diabetes, of average weight with no other cardiovascular risk factors. In addition to Mr. Holinka's mesothelioma diagnosis, CT scans also revealed evidence of pleural plaques on his lungs.

### *Thirty-Year Exposure To Dust Emitted From*
### *Bunsen Burner Covers And Asbestos Heat Mittens*

Mr. Holinka described using asbestos-containing mittens and Bunsen burner covers regularly and frequently for thirty years beginning in 1959 until approximately 1989. See Holinka Discovery Deposition Transcripts, Vols. I-III (relevant pages attached hereto as **Exhibit A**). With regard to asbestos mittens, Mr. Holinka testified that he was exposed to <u>dust</u> when the mittens were disintegrated by the heat. Id. at 317. With regard to asbestos Bunsen burner covers, Mr. Holinka testified that the covers would become <u>brittle and dusty</u> after being subjected to the burner's high heat and flame. Id. at 316. Mr. Holinka identified four suppliers of these products: VWR, American Scientific, Fisher Scientific, and Central Scientific, the four defendants in this case.

### *Thirty-Year Exposure At Six Work-Sites*

Mr. Holinka was exposed to asbestos-containing products while working as a chemist at a variety of work-sites over his thirty year career, including the Mt. Sinai School of Medicine, the University of Southern California, Columbia Presbyterian Hospital, SUNY Stony Brook, the University of California, Berkley, and Booth Memorial Hospital. Between 1959 and 1960, for approximately 3 ½ months, Mr. Holinka worked full time as a lab technician at the NY Hospital Medical Center of Queens (called Booth Memorial at the time). Here, Mr. Holinka was exposed to asbestos from Bunsen burner pads and heat mittens that were used to handle the hot glass work from drying ovens. See Exhibit A, 71-72. Between 1960 and 1966, Mr. Holinka was a student at University of California, Berkeley. Id. at 80-81. As a student between 1960 and 1962, and then as an employee between 1963-1964, he was exposed to asbestos Bunsen burner covers and mittens while working at a research lab in the physiology department. Id. Between 1971 and 1974, Mr. Holinka worked at Columbia Presbyterian Hospital where he was exposed to asbestos again from the Bunsen burner covers and asbestos insulated mittens. Id. at 133-134. Additionally during this time, Mr. Holinka was also exposed to asbestos Bunsen burner covers and asbestos mittens while studying for his Ph.D. at SUNY Stony Brook. Id. at 120-122. Between 1974 and 1977, Mr. Holinka worked at the University of Southern California where he was exposed to asbestos from Bunsen burner covers and asbestos insulated mittens which he personally used. Id. at 138. Finally, Mr. Holinka started working at the Mt. Sinai School of Medicine in August of 1977. Id. at 149. He testified that he was exposed to asbestos at Mt. Sinai from asbestos Bunsen burner pads and asbestos mittens. Id. at 150, 158-159,

213. Specifically, he identified Fisher Scientific, VWR, American Scientific, and Centrl
Scientific as the manufacturers of the asbestos products he was exposed to at this
location. Id. at 154. Mr. Holinka further recalled seeing Mt. Sinai ordering forms which
specified VWR and Fisher Scientific as well as observing catalogues from all four
Defendants present inside the lab. Id. at 154, 216.

## ARGUMENT

### POINT I

### DEFENDANT MISSTATES THE STANDARD OF EVIDENCE NECESSARY FOR AN EXPERT TO INFER CAUSATION IN AN ASBESTOS CASE IN NEW YORK

**Moving Defendants' Motions *in Limine* Must Be Denied Because Under New York Law the Presence of Visible Chrysotile-Containing Dust at a Work Site, Generated by Disturbing "Encapsulated" Products, is Sufficient Evidence for a Physician to Testify that the Product was a Substantial Factor in Causing Plaintiff's Mesothelioma**

The moving Defendants' briefs relies almost exclusively on Parker v. Mobil Oil Corporation, 16 A.D.3d 648, 793 N.Y.S2d 434 (2nd 2005) to support their contention that Plaintiffs expert testimony is inadmissible under the Frye standard.  This is not appropriate.  Parker dealt with a highly speculative, scientifically unstudied alleged nexus between exposure to unspecified quantities benzene and acute myelogenous leukemia.

In the present case, Plaintiff suffered from a "signature disease," a disease which has only one known cause.  The fact that he suffered from mesothelioma was, in and of itself, proof that he was injuriously exposed to asbestos fibers.  No such condition existed in Parker.  Simply put, benzene is not asbestos and leukemia is not mesothelioma.  They are neither legally nor logically analogous.

The proper, controlling precedent on this issue is Lustenring v. AC&S, Inc., 13 A.D.3rd 69, 2004 N.Y. Slip Op. 08961 (1st Dept. 2004)(attached hereto as **Exhibit B**).  In that case, the plaintiff was exposed to chrysotile asbestos by virtue of his work with gaskets and packing.  Just like moving Defendants' Bunsen burner pads and mittens, the packing and gasket material was manufactured with chrysotile asbestos.  Just like Mr. Holinka, the plaintiffs working with the material at issue in Lustenring created asbestos-

10

containing dust. The First Department held that a Frye hearing was not necessary because testimony by a plaintiff regarding visible dust from an asbestos-containing product provides a sufficient basis for a medical expert to testify that the product was a substantial factor in causing the mesothelioma. The Lustenring Court held, in relevant part:

> .....the evidence showed that both plaintiffs worked all day for long periods in clouds of dust raised specifically by the manipulation and crushing of Defendants' packing and gaskets, which were made with asbestos. Valid expert testimony indicated that such dust, raised from asbestos products and not just from industrial air in general, necessarily contain enough asbestos to cause mesothelioma. Defendants' factual disagreement with plaintiff's causation theory did not require a Frye hearing (see Gayle v. Port Autho. of N.Y. & N.J., 6 A.D.3d 183 (2004)). The evidence also supported the verdict that defendant did not sustain its burden of showing that negligence by nonparty defendants was a significant cause of plaintiffs' injuries.

Id.

The same "chrysotile argument" raised by moving Defendants in this case was rejected in post-trial motions and appeal of the Caruolo case. In Caruolo, defendant John Crane (manufacturer of chrysotile asbestos) argued that plaintiff's expert in occupational health (Dr. Steven Markowitz) should not have been permitted to testify as to the issue of causation because he did not rely on specific fiber release testing of John Crane's product. Caruolo v. AC&S, Inc., 1999 WL 147740 (S.D.N.Y. 1999). In rejecting this argument, the Court cited several cases in which the exact same argument has been rejected:

> [T]he very argument Crane advances here has failed before. In In re Joint Eastern and Southern District Asbestos Litigation ["McPadden"], 798 F.Supp. 925 (E. &

11

> S.D.N.Y.1992), *rev'd on other grounds*, 995 F.2d 343 (2d Cir.1993), the court rejected Crane's objection "that no expert testimony demonstrated that Crane's type of products released significant quantities of respirable fibers." Id. at 931. As in the present case, "witnesses who worked with Crane's type of product testified to the release of large quantities of dust under actual working conditions." Id. The court therefore concluded that "[t]he jury had the right to choose to believe the plaintiff's characterization of the evidence on this point." Id.

Caruolo, 1999 WL 147740 at *5 (emphasis added).

After the denial of its post-trial motions in Caruolo, John Crane's argument was rejected on appeal to the Second Circuit. Caruolo v. John Crane, Inc., 226 F.3d 46, 52-54 (2d Cir. 2000). The Court pointed out possible deficiencies in Dr. Markowitz's testimony but held that these issues went to the weight of the evidence rather than admissibility. The Court's opinion emphasized the evidence establishing that visible dust was released when Mr. Caruolo used John Crane asbestos-containing gasket material. With respect to the absence of fiber-release testing, the Court found that Dr. Markowitz's testimony was proper, even though he "could point to no studies measuring asbestos released from products manufactured by Crane. . . ." Caruolo, 226 F.3d at 53 (emphasis original).

The presence of visible dust emanating from an asbestos-containing product has always furnished an adequate foundation for an expert to conclude that the use of such product was a substantial factor in causing the plaintiff's asbestos disease. Indeed, in Johnson v. Celotex Corporation, 899 F.2d 1281 (2d Cir. 1990), the Court did not even refer to expert testimony (much less fiber release evidence) in finding that plaintiff's evidence of visible dust was sufficient to conclude that "proximate cause existed and that the jury's verdict must be upheld." Id., at 1286-87. As here, the testimony by Mr. Holinka demonstrates that he had regular and constant exposure to asbestos-containing

dust (See Statement of Facts supra); see also In re New York Asbestos Litig., 847 F.Supp. 1086, 1094 (S.D.N.Y.1994) (finding that plaintiff presented sufficient evidence that: pipe contained asbestos, that dust was created when pipe was handled, and that plaintiff breathed dust; such evidence was sufficient in establishing plaintiff's exposure to respirable asbestos fibers, even without expert testimony); aff'd in part, vacated in part on other grounds sub nom. Consorti v. Armstrong World Indus. Inc., 72 F.3d 1003 (2d Cir.1995), vacated and remanded sub nom. Consorti v. Breidenstein-Corning Fiberglas Corp., 518 U.S. 1031 (1996).

Moving Defendants' request for a Frye hearing—presumably to test the scientific viability of the methods utilized by Plaintiffs' experts to come to their conclusions—is in reality nothing more than a previously argued and rejected attempt to change well-established New York law. In short, a jury should make the ultimate decision on whether visible dust emanating from moving Defendants' asbestos-containing products were substantial factors in causing Mr. Holinka's mesothelioma. Pursuant to the New York Pattern Jury Instruction 1:190, it is the jury's responsibility to weigh the Defendant's arguments as to the strength or weakness of the experts' opinions.[5]

---

[5] See Comment to PJI 1:190 at 131 et seq. for commentary and case law addressing the admissibility of expert testimony at trial.

## POINT II

### EPIDEMIOLOGICAL STUDIES ARE NOT REQUIRED IN ORDER FOR SCIENTIFIC CAUSATION EVIDENCE TO BE ADMISSIBLE OR IN ORDER TO ESTABLISH CAUSATION IN ALL TOXIC TORT CASES

**Moving Defendants Motions *in Limine* Must be Denied Because It is Well Settled New York Law that Specific Epidemiological Reports are Not Necessary in Cases Where Workers Allege that Their Mesothelioma was Partially Caused by Chrysotile-Containing Materials**

Moving Defendants appear to rely almost exclusively on their misreading of Parker for the proposition that plaintiff's testimony does not rise to the Frye standard. Defendants' assertions to the effect that Parker requires an assessment of specific causation on a probability basis is grounded in their inaccurate reading of the decision. Specifically, one prong of the methodology which the plaintiff in Parker claimed to have employed required "the establishment of specific causation by demonstrating the probability that the toxin caused the particular plaintiff's illness, which involves weighing the possibility of other causes of the illness." Parker, supra at 437. As discussed in Point I of this Memo of Law, Plaintiffs are not obligated to employ the specific methodology described in Parker.

None of the cases cited by the moving Defendants hold, or stand for the proposition, that epidemiological studies are required to establish causation in all toxic tort cases. In fact, contrary to moving Defendants' assertion, several courts have not required the proof or expert testimony concerning causation in toxic tort cases to be supported by epidemiological studies establishing a cause-effect relationship in all toxic tort cases. See Christophersen v. Allied-Signal Corporation, 902 F.2d 362 (5th Cir. 1990); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 980 (4th Cir. 1987); Wells v. Ortho Pharmaceutical Corp., 788 F.2d 741, 745 (11th Cir.); Ferebee v. Chevron Chem.

14

Co., 736 F.2d 1529, 1535-36 (C.D.A.C. 1984). In fact, in Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307 (CA 5, 1989) which involved a Bendectin case where, similar to all of the aforementioned cases cited by the defendant, the nexus between Bendectin and the plaintiff's child's birth defects was scientifically unproven, although the court held that epidemiological studies were required in that particular case, because the link was not proven, the court also specifically declined to hold that "epidemiological proof is a necessary element in all toxic tort cases." Id. at 313.

In finding that epidemiological proof is not required in all toxic tort cases, these courts have recognized that neither Daubert nor Frye restricts expert testimony to opinions that are based solely on epidemiological data. Daubert, and Frye merely require that expert testimony be both relevant and reliable, and courts are clearly vested with discretion to determine the admissibility of expert testimony. Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378 (4th Cir. 1995); See also People v. Lee, 96 N.Y.2d 157, 726 N.Y.S.2d 361 (2001). Under Daubert, and Frye, epidemiological studies are not required to prove causation, as long as the methodologies employed by the expert in reaching his or her conclusion are reliable and sound. See Benedi, supra at 1384. Courts in New York and elsewhere have held that any objections to the evidence on which the expert's testimony is based, including lack of epidemiological studies, goes to the weight of the evidence, not its admissibility. See Benedi, supra; Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 266 (2nd Cir. 2002); McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2nd Cir. 1995) (Ct. affirmed the district court's admission of medical expert testimony despite the fact that the expert could not point to a single piece of medical literature that specifically supported the expert's opinion); Zuchowicz v. U.S., 140 F.3d

381, 387 (2nd Cir. 1998); Stanley Tulchin Assoc., Inc., 2002 WL 31466800, *4 (N.Y. Sup. Ct. 2002); City of Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir. 1987) (asbestos case brought by city against W.R. Grace after Grace used building materials containing asbestos in constructing city's city hall building. Court held expert testimony that even very low levels of asbestos could cause serious harm even in absence of epidemiological studies where methodologies used were sound); See also In re: Phenylpropanolamine (PPA) Products Liability Litigation, 289 F.Supp.2d 1230, 1240 (W.D. Wash. 2003); Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002); Kennedy v. Collagen Corp., 161 F.3d 1226 (9th Cir. 1998);  Christophersen v. Allied-Signal Corp., 902 F.2d 362, 367 (5th Cir. 1990).  As always, vigorous cross-examination can be used to allow the jury to weigh any possible defects in the evidence.

In addition, Courts have held scientific causation evidence admissible in toxic tort cases, including asbestos cases, despite the lack of epidemiological evidence, where the link between the disease at issue and causal agent at issue was found to be well-recognized in the scientific and medical literature, and where, *inter alia*, the medical expert's opinion was based on scientific and medical literature and studies which reinforced the validity of the expert's methodology and theory. See Kennedy v. Collagen Corp., 161 F.3d 1226 (9th Cir. 1998); Klima v. Volkswagen of America, 2003 WL 22172417 (Cal.App. 1 Dist. 2003).

Kilma, involved an action brought by a plaintiff against manufactures of asbestos-containing friction products.  The plaintiff sustained primarily bystander exposure to asbestos-containing brake products through her father's work on the family's vehicles. The defendants in that case argued that the opinion of the plaintiff's experts should be

disregarded because it was not based on any epidemiological studies. Id. at *8. The Court held that the opinion evidence should not be disregarded despite the lack of epidemiological studies where the medical experts testified that they formed their opinions in part in reliance on published and peer-reviewed "bystander exposure" studies showing an incidence of otherwise unexplained mesothelioma among individuals such as the plaintiff who sustained bystander exposure to asbestos. Id. at *9. In so holding the court stated in relevant part:

> This is not a case in which the nexus between the disease and its alleged causative agent is scientifically unproven. The causal link between mesothelioma and asbestos is well recognized in the literature and studies suggesting that low levels of exposure can create a risk of diseases are well known among experts in the field.

Id. at *9.

See also Kennedy, supra (medical expert's opinion that collagen caused autoimmune disorders such as type suffered by plaintiff held admissible despite lack of epidemiological or animal studies where expert based opinion on medical studies which reinforced validity of his methodology).

It should be further noted that non-epidemiological lines of evidence such as case reports, textbook treatises, animal studies, drug reports, drug, analogies, etc. are frequently utilized by experts in rendering scientific opinions, and under both Daubert and Frye, should be considered by the court in assessing the reliability of those opinions. See, e.g. Kennedy, supra and Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1124-25 (9th Cir. 1994) (upholding trial court's admission of expert testimony based on, inter alia, clinical experience and studies, medical literature, and general scientific knowledge about drug's properties established by animal studies and biophysical data). In fact, courts have

held that in considering non-epidemiological evidence relied upon by a party's expert, sheer volume of case reports and case series associating the disease at issue with the causal agent at issue is significant. In re Phenylpropanolamine (PPA) Products Liability Litigation, 289 F.Supp.2d 1230,1242 (W.D. Washington 2003); see also Daubert, 509 U.S. at 594 ("Widespread acceptance can be an important factor in ruling particular evidence admissible[.]").

All of the above clearly shows that epidemiological evidence is only required to establish causation in cases where the link between the subject disease and causal agent at issue is scientifically unproven. Thus, Plaintiffs' scientific causation evidence should not be excluded to the extent it is not based on any epidemiological evidence.

## POINT III

### AS A MATTER OF LAW, THE COURT IS UNDER NO OBLIGATION TO RULE ON SUMMARY JUDGMENT MOTIONS IMPROPERLY RE-PACKAGED AS *IN LIMINE* MOTIONS

#### It is The Moving Defendants' That Bear the Burden of Proving That Their Asbestos-Containing Products Could Not Have Contributed To Plaintiffs Mesothelioma

While normally it is the Plaintiffs' burden to prove causation in a products liability case, since moving Defendants claim that Plaintiffs' causation evidence should be precluded because they allege that the Plaintiffs have not put forth any epidemiological studies to support their allegations, moving Defendants are essentially moving for summary judgment pursuant to CPLR 3212, on grounds that the Plaintiffs cannot prove causation. CPLR 3212 squarely places the burden of proof upon the defendant. It is well-established that upon a motion for summary judgment in a toxic exposure case, the burden is on the defendant "in the first instance" to establish that its product could not have contributed to the causation of the injury of the plaintiff. Takas v. Asbestospray Corp., 255 A.D.2d 1002, 679 N.Y.S.2d 777 (4th Dept. 1998), citing Reid v. Georgia-Pacific Corp., 212 A.D.2d 462, 622 N.Y.S. 2d 946 (1st Dept. 1995). Only if the defendant makes a prima facie showing that its product could not have contributed to the causation of a plaintiffs' injury must a plaintiff then allege facts to prove Defendants' liability. See Comeau v. W.R. Grace, 216 A.D.2d 79, 628 N.Y.S.2d 73 (1st Dept. 1995). As shown below, the moving Defendants have not done this by alleging that epidemiological studies are required in order for scientific causation evidence to be admissible. Moreover, "[t]he question of product identification is largely a question of

fact." Weitzman v. Eagle-Picher Industries, 144 Misc.2d 42, 47, 542 N.Y.S.2d 118, 122 (N.Y. Sup. Ct. 1989).

The Court of Appeals has recently restated the long-standing principle that "the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court." People v. Lee, 96 N.Y.2d 157, 726 N.Y.S.2d 361 (2001). There are currently two standards for the judicial determination of the admissibility of expert testimony: The first is the Frye standard set forth in the landmark decision of Frye v. United States, 293 F. 1013 (D.C.Cir. 1923). The second is the Daubert standard, set forth by the United States Supreme Court in Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), and codified in the current Rule 702 of the Federal Rules of Evidence.

In this state the determination of whether expert testimony is admissible has traditionally been evaluated under the Frye standard. Stanley Tulchin Assoc., Inc. v. Grossman, 2002 WL 31466800, *2 (N.Y.Sup. 2002). Under Frye, "expert testimony must be based upon scientific principle or procedure which has been sufficiently established to have gained general acceptance in the particular field where it belongs." People v. Wernick, 89 N.Y.2d 111, 115, 651 N.Y.S.2d 392, 394 (1996)(internal quotation marks and citations omitted). Novel scientific evidence in particular requires a determination as to its reliability under the Frye test. Id. at 115-116.

In Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 U.S. C. Ct. 2786, the United States Supreme Court abandoned the strict Frye test in favor of a new approach. Daubert established that, faced with a proffer of expert testimony, the trial judge, in making the initial determination whether to admit the evidence, must determine whether the expert's testimony reflects (1) "scientific knowledge," and (2) will assist the

trier of fact to understand or determine a material fact at issue. 509 U.S. at 592. The

Supreme Court held in Daubert that expert testimony must be both relevant and reliable

in order to be admissible, and set forth four factors to be utilized by a trial court in

determining whether to admit expert testimony. See Id. at 593-94. The trial court has

broad discretion under Daubert in the manner in which it determines reliability in light of

the particular facts and circumstances of the particular case. Under Daubert, the trial

judge is assigned the role of "gatekeeper" and is charged with ensuring that an expert's

testimony rests on both a reliable foundation and is "relevant to the task at hand."

Stanley Tulchin Assoc., Inc. v. Grossman, 2002 WL 346680 (N.Y. Sup. 2002), citing,

Daubert, supra, at 597. "[C]ourts in the Second Circuit have stressed that liberality and

flexibility are required in evaluating qualifications and should be the rule in applying the

Daubert factors, finding that:

> [a]ttacks relating to faults in the expert's methodology and
> **lack of textual authority** for the opinion are all **improper**
> criteria for advancing a motion [to preclude expert
> testimony, [such criteria] go to the weight and credibility
> …[D]isputes as to the strength of [the witnesses']
> credentials, faults in his use of differential etiology as a
> methodology, *or lack of textual authority* for his opinion
> goes to the weight, not the admissibility, of testimony.

Stanley Tulchin Assoc., Inc., 2002 WL 31466800, *4 (N.Y. Sup. Ct. 2002) (emphasis
added).

    In addition, courts applying the Daubert standard have held that: "[a] minor flaw

in an expert's reasoning or a slight modification of an otherwise reliable method will not

render an expert's opinion per se inadmissible. The judge should only exclude the

evidence if the flaw is large enough that the expert lacks good grounds for his or her

conclusions." In re Paoli, 35 F.3d 717, 746 (3rd Cir. 1994). The U.S. Supreme Court has

recognized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking...admissible evidence." Daubert, supra at 596.

There has been "an energized debate" whether New York State courts will unilaterally adopt the Daubert standard as to the admissibility of expert testimony. Stanley Tulchin Assoc., Inc., supra, at *3; People v. Legrand, 196 Misc.2d 179, 747 N.Y.S.2d 733 (N.Y. Sup. Ct. 2002); Hoffman v. Toys-R-Us, 272 A.D.2d 296, 70 N.Y.S.2d 641 (2nd Dept. 1999); and Wahl v. American Honda, 181 Misc.2d 296, 693 N.Y.S.2d 875 (N.Y. Sup. Ct. 1999). Some New York courts have stated that Frye has continued to be applied by courts only in cases where the issue was the reliability and admissibility of novel scientific evidence. Where the proffered evidence is not novel, then the Daubert standard applies. See Wahl v. American Honda, 181 Misc.2d 296, 398, 693 N.Y.S.2d 875, 877 (N.Y. Sup. Ct. 1999) ("where...the evidence is not scientific or not novel, the Frye analysis is not applicable). Arguably, the Daubert standard would apply in this case, since the theory that exposure to asbestos may cause cancer, including, mesothelioma, is not novel or controversial, nor is it a conclusion personal to plaintiffs' expert(s). Nonetheless, the energized debate as to which standard would apply in this case will not be addressed, as the evidence at issue is admissible no matter what standard is used.

It should be noted that both the Daubert and Frye standards for the admissibility of scientific evidence and their requirement of reliability applies to the methodologies employed by the expert in reaching his or her conclusions regarding causation. For example, if a treating physician in one of these cases makes a diagnosis of an asbestos-

related abnormality on the basis of pathologic evidence of the offending substance, his attribution to asbestos exposure would survive a <u>Daubert</u> challenge as a scientifically accepted method of determining causation.  See <u>Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257 (4th Cir. 1999); and <u>Jennings v. Baxter Healthcare Corp.</u>, 152 Orr. App. 421 (1998).  Ultimately, neither <u>Frye</u> nor <u>Daubert</u> require epidemiological studies, much less occupation-specific epidemiological studies, in order for scientific causation opinion evidence to be admissible, especially not in an asbestos case.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request this Honorable Court deny Defendants Motions *in Limine* to 1) preclude Plaintiffs' experts, Dr. Jacqueline Moline and Dr. James Strauchen, from offering any testimony that the Bunsen burner pads and heat mittens at issue caused Plaintiff Christian Holinka's mesothelioma (i.e. cloaked request for a Frye hearing), and 2) to preclude Plaintiffs' experts from introducing evidence of epidemiological studies regarding an increased risk of mesothelioma from asbestos.

Dated: New York, New York
      September 7, 2007

                    Respectfully submitted,

                    WEITZ & LUXENBERG, P.C.
                    180 Maiden Lane, 17th Floor
                    New York, New York 10038
                    (212) 558-5500
                    Attorneys for Plaintiffs

              By: _____
                    Thomas M. Comerford

24